# Exhibit A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ENDORSED
FILED
ALAMEDA COUNTY
JAN 2 5 2016
CLERK OF THE SUPERIOR COURT
By CHERYL CLARK
Deputy

**NOTICE TO DEFENDANT:** SCOTTSDALE INSURANCE COMPANY, and
***(AVISO AL DEMANDADO):*** DOES 1 TO 10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** SUNRISE SPECIALITY
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):*** COMPANY, INC., and ROBERT WEINSTEIN

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
1225 Fallon Street
Oakland, California 94612

CASE NUMBER: *(Número del Caso):* 16801461

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Alan L. Martini, SB No. 77316 408.288.9700 408.295.9900
SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN
1033 Willow Street
San Jose, CA 95125

DATE: JAN 2 5 2016 Clerk, by CHERYL CLARK, Deputy
*(Fecha)* *(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

NOTICE TO THE PERSON SERVED: You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: Scottsdale Insurance Company

under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☒ by personal delivery on *(date)*: 2/23/16

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465

Legal Solutions Plus

Alan L. Martini SB#77316
SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN
A Professional Corporation
1033 Willow Street
San Jose, CA 95125
(408) 288-9700
Fax: (408) 295-9900
Email: amartini@smtlaw.com

Attorneys for Plaintiffs
SUNRISE SPECIALTY COMPANY, INC., and
ROBERT WEINSTEIN

ENDORSED
FILED
ALAMEDA COUNTY
JAN 25 2016
CLERK OF THE SUPERIOR COURT
By CHERYL CLARK Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

SUNRISE SPECIALTY COMPANY, INC., and ROBERT WEINSTEIN,

Plaintiffs,

v.

SCOTTSDALE INSURANCE COMPANY, and DOES 1 TO 10, inclusive,

Defendants.

No. RG 16801461

COMPLAINT FOR BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

Amount Demanded Exceeds $10,000

Plaintiffs SUNRISE SPECIALTY COMPANY, INC. and ROBERT WEINSTEIN allege as follows:

1. Plaintiff SUNRISE SPECIALTY COMPANY, INC. ("SUNRISE") is a California corporation licensed to do business in the State of California. Plaintiff SUNRISE is a resident of the State of California, County of Alameda.

2. Plaintiff ROBERT WEINSTEIN ("WEINSTEIN") is an individual residing in the State of California, County of Alameda.

3. At all material times herein alleged, defendant SCOTTSDALE INSURANCE COMPANY ("SCOTTSDALE") is a foreign insurer existing under the laws of the State of Ohio with its main office in Scottsdale, Arizona. Plaintiffs are informed and believe and thereon allege that defendant SCOTTSDALE does business in the State of California by issuing and delivering

BY FAX

policies of insurance to residence of the State of California through surplus line brokers pursuant to Insurance Code section 1760, et seq.

4. Plaintiffs are unaware of the true identity nature and capacity of each of the defendants designated herein as a Doe. Plaintiffs are informed and believe and thereon allege that each of the defendants designated herein as a Doe is in some manner responsible for the damages and injuries as are alleged in this Complaint. Upon learning the true identity, nature and capacity of the Doe defendants, plaintiffs will amend their Complaint to allege their true names and capacities.

5. Plaintiffs are informed and believe and thereon allege that at all material times herein alleged, the defendants, and each of them, were the agents, servants and employees of the other defendants, and each of them.

6. On or about May 7, 2014, plaintiff SUNRISE purchased a policy described as a "Business and Management Indemnity Policy" from the defendants, and each of them, described as Scottsdale Insurance Company policy no. EKS3128631 ("the Policy"). The Policy had effective dates of coverage of 5/7/2014-5/7/2015. A true and correct copy of the Declarations page and Policy is attached as **Exhibit A** to this Complaint and incorporated herein by reference as though fully set forth at length.

7. Plaintiffs are informed and believe and thereon allege that the Policy was delivered to plaintiff SUNRISE in the State of California, County of Alameda, and that all premiums for the Policy were paid in California.

8. Plaintiff SUNRISE is the named insured under the Policy for "Loss" covered by the Policy.

9. Plaintiff WEINSTEIN is an insured under the Policy by virtue of his being a Director and Officer of SUNRISE.

10. The Policy provides, in part, as follows:

A. INSURING CLAUSES

1. The **Insurer** shall pay the **Loss** of the **Directors and Officers** for which the **Directors and Officers** are not indemnified by the **Company** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the

**Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period.**

2. The **Insurer** shall pay the **Loss** of the **Company** for which the **Company** has indemnified the **Directors and Officers** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period.**

3. The **Insurer** shall pay the **Loss** of the **Company** which the **Company** becomes legally obligated to pay by reason of a **Claim** first made against the **Company** during the **Policy Period** or, if applicable, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period.**

B. **DEFINITIONS**

1. **Claim** means:

a. a written demand against any **Insured** for monetary damages or non-monetary or injunctive relief;

b. a written demand by one or more of the securities holders of the **Company** to bring a civil proceeding against any of the **Directors and Officers** on behalf of the **Company**;

c. a civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

...

3. **Costs, Charges and Expenses** means:

a. reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in defending **Claims** and the premium for appeal, attachment or similar bonds arising out of covered judgments, but with no obligation to furnish such bonds and only for the amount of such judgment that is up to the applicable Limit of Liability; and

b. reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in investigating a written demand, by one or more of the securities holders of the **Company** upon the board of directors or the management board of the **Company**, to bring a civil proceeding against any of the **Directors and Officers** on behalf of the **Company**.

4. **Directors and Officers** means any person who was, now is, or shall become:

a. a duly elected or appointed director, officer, or similar executive of the **Company**, or any member of the management board of the **Company**;

...

5. **Insured** means the **Company** and the **Directors and Officers**.

...

7. **Loss** means damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and **Costs, Charges and Expenses** incurred by **Directors and Officers** under Insuring Clauses 1. or 2. or the **Company** under **Insuring** Clause 3. **Loss** does not include ***

...

9. **Wrongful Act** means any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act allegedly committed or attempted by:

a. any of the **Directors and Officers**, while acting in their capacity as such, or any matter claimed against any **Director and Officer** solely by reason of his or her serving in such capacity;

...

F. **SETTLEMENT AND DEFENSE**

1. It shall be the duty of the **Insurer** and not the duty of the **Insureds** to defend any **Claim**. Such duty shall exist even if any of the allegations are groundless, false or fraudulent. the **Insurer**'s duty to defend any **Claim** shall cease when the Limits of Liability have been exhausted by the payment of **Loss** including **Costs, Charges and Expenses**.

2. The **Insurer** may make investigation it deems necessary, and shall have the right to settle any **Claim**; provided, however, no settlement shall be made without the consent of the **Parent Company**, such consent not to be unreasonably withheld.

...

11. On or about October 10, 2014, Timothy Lenz, Malcolm Smith and Michael Brady, individuals, filed a Complaint in the Superior Court of the State of California, County of Alameda, Case No. RG-14744033, entitled *Timothy Lenz, Malcolm Smith and Michael Brady, individuals, Plaintiffs v. Robert Weinstein, an individual, Sunrise Specialty Co., a California corporation, and*

*Does 1-20, Defendants* (the "Underlying Action"). A true and correct copy of the Complaint in the Underlying Action is attached hereto as **Exhibit B** to this Complaint and incorporated herein by reference.

12. After being served with the Summons and Complaint in the Underlying Action, plaintiffs timely and duly tendered the defense of the Underlying Action to the defendants, and each of them, during the term of the Policy. Defendants subsequently acknowledged receipt of the tender of defense.

13. Plaintiffs are informed and believe and thereon allege that defendants, and each of them, failed to conduct a prompt and complete investigation of the facts and circumstances giving rise to the claim asserted in the underlying action. Subsequently, the defendants, and each of them, denied the tender of the defense. A true and correct copy of the denial of the tender of defense is attached hereto as **Exhibit C** to this Complaint and incorporated herein by reference.

14. Plaintiffs are informed and believe and thereon allege that the defendants, and each of them, failed and refused to:

A. Conduct a prompt, full and complete investigation of the claims in addition to those matters which were alleged in the pleadings filed in the Underlying Action;

B. Defend their insureds from the claims asserted in the Underlying Action;

C. Indemnify their insureds from the claims asserted in the in the Underlying Action;

D. Conduct any investigation after they rejected the tender of defenses and the plaintiffs advised defendants that they had failed to conduct a proper investigation into the circumstances surrounding the claims asserted in the Underlying Action;

E. Advise plaintiffs in a timely manner regarding the status of the claim and the need of the defendants for additional time to respond to the plaintiffs' claim; and,

F. Promptly respond to communications with respect to the claim.

15. The facts alleged in the Underlying Action and the information which was available to the defendant insurer at or about the time of the tender revealed:

A. That there was a potential for liability under the insuring clauses of the

policy in that the Underlying Action potentially claimed a derivative action alleging wrongful acts, as defined in the Policy, of alleged director and officer, Robert WEINSTEIN that was potentially instigated and continued totally independent of, and totally without the solicitation, assistance, active participation of, or intervention of, any insured.

16. Plaintiffs have performed all of their obligations under each of the contracts identified above, except for those obligations which because of the breach by the defendants, or any of them, of their obligations, plaintiffs have been excused or prevented from performing.

17. Plaintiff SUNRISE has indemnified director and officer, Robert WEINSTEIN for costs, charges and expenses incurred in defending the claims made in the Underlying Action, and has also incurred reasonable and necessary legal costs, charges and fees in defending against and investigating the Underlying Action, in an amount to be proved at trial.

**FOR A FIRST AND SEPARATE CAUSE OF ACTION**
**(FOR BREACH OF CONTRACT AND BREACH OF THE DUTY TO DEFEND)**

18. Plaintiffs hereby incorporate by reference each and every allegation contained in paragraphs 1 through 17 as though fully set forth at length.

19. Plaintiffs are informed and believe and thereon allege that defendants, and each of them, breached their obligation under the Policy in the following manner:

A. By delaying in making any determination under all potentially applicable coverages as to whether or not any defense was owed by the defendants, or any of them, to the plaintiffs for the claims arising out of the Underlying Action;

B. By failing to conduct a full and complete investigation into the facts and circumstances of the claims asserted against plaintiffs in the Underlying Action;

C. By failing and refusing to pay the loss of plaintiff SUNRISE and WEINSTEIN for which plaintiff SUNRISE had indemnified its director and officer, plaintiff WEINSTEIN, and which plaintiff WEINSTEIN had become legally obligated to pay to defend the Underlying Action, as well as the defense costs of plaintiff SUNRISE itself, which it also became legally obligated to pay by reason of the claims made against it in the Underlying Action;

D. By failing and refusing to indemnify the plaintiffs from the claims asserted

in the Underlying Action; and,

E. By doing each of the acts or omissions alleged in paragraphs 12 and 13.

20. Plaintiffs are informed and believe that the defendants, and each of them, failed and refused to conduct an investigation into the facts and circumstances of the claims asserted against plaintiffs in the Underlying Action. As a result of the breaches of contract by the defendants, or any of them, to conduct any investigation in the facts and circumstances of the claims asserted against plaintiffs, plaintiffs have been damaged, injured and prejudiced. Plaintiffs were required to retain counsel and defend themselves against the claims asserted against them. Plaintiffs were also forced to enter into a settlement on the a claim which plaintiffs vigorously denied any wrongdoing and/or disputed any liability.

21. As a result of the failure and refusal of the defendants, and any of them, to conduct an investigation, the defendants, and each of them, are estopped from relying upon any subsequently discovered information to support their rejection of plaintiffs' tender of their defense in the Underlying Action.

22. As a result of the failure and refusal of the defendants, or any of them, to conduct an investigation, the defendants, and each of them, are deemed to have waived any obligation on the part of plaintiffs to cooperate with the defendants, and each of them, in defense of the Underlying Action.

23. As a direct and proximate result of the breach by the defendants of their obligations under the Policy, plaintiffs have been damaged as follows:

A. Plaintiff SUNRISE has been required to indemnify its director and officer, plaintiff WEINSTEIN, and WEINSTEIN has incurred costs and fees as well with regard to his defense of the Underlying Action, as well as been required to retain attorneys to defend themselves from the claims asserts and potentially asserted, all in an amount to be proved at the time of the trial;

B. Plaintiffs have been required to enter into and partially pay for a settlement of the claims asserted in the Underlying Action all in an amount to be proved at the time of trial; and,

C. General damages in an amount to be proved at time of trial.

24. Plaintiffs are informed and believe and thereon allege that the denial of benefits, as

alleged in this Complaint, was vexatious and without reasonable cause, as alleged in this Complaint. Pursuant to Insurance Code section 1619, plaintiffs are entitled to reasonable attorney fees incurred in prosecuting this action in an amount to be proved at time of trial.

**FOR A SECOND AND SEPARATE CAUSE OF ACTION**
**(FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING )**

25. Plaintiffs hereby incorporate by reference each and every allegation contained in paragraphs 1 through 24 as though fully set forth at length.

26. Plaintiffs are informed and believe and thereon allege that the defendants, and each of them, breached the implied covenant of good faith and fair dealing arising out of the Policy in the following respects:

A. The defendants, and each of them, unreasonably and without proper cause failed and refused to conduct an investigation into the facts which gave rise to the claims asserted in the Underlying Action;

B. The defendants, and each of them, unreasonably and narrowly interpreted the Policy in a manner calculated to deny benefits due to the plaintiffs under the Policy, including refusing to consider or distinguish cited authority which holds that claims similar to those asserted in the Underlying Action were covered by the comprehensive general liability policies identical to those issued by the defendants;

C. The defendants, and each of them, unreasonably refused to pay for the defense of the Underlying Action; and,

D. The defendants, and each of them, unreasonably refused to pay for the settlement of the Underlying Action.

27. The denial of benefits claimed by plaintiffs under the Policy was done by the defendants without reasonable cause. Defendants knew that a duty to defend was owed to plaintiffs, yet refused to provide such a defense. As a direct and proximate result of the unreasonable conduct of the defendants, and each of them, plaintiffs have been required to retain attorneys to obtain benefits due to it under the Policy. Plaintiffs were also forced to enter into a settlement on a claim which plaintiffs vigorously denied any wrongdoing and/or disputed any liability and subsequently a judgment was entered against plaintiffs when plaintiffs were unable to make payments on the

settlement. Plaintiff WEINSTEIN has suffered emotional distress as a direct result of the conduct of the defendants, and each of them.

28. As a direct result tortious conduct of the defendants, and each of them, plaintiffs were damaged and injured. Plaintiffs are therefore entitled to recover:

A. Reasonable attorney fees incurred by plaintiffs in obtaining Policy benefits in an amount to be proved at time of trial;

B. Plaintiff WEINSTEIN is entitled to an award of general damages as compensation for his emotional distress in an amount that is to be proved at time of trial;

C. the amount of judgment in the Underlying Action, the settlement payments made by plaintiffs, the attorney fees incurred in defending the Underlying Action.

29. The refusal of the defendants, and each of them, to carry out their obligations under the Policy to investigate, defend, indemnify and to promptly communicate their coverage position to their insured, and the acts of their agents were all done with a conscious disregard of the rights of the plaintiffs to receive the benefits due them under the Policy. These acts were done with the knowledge and approval and ratification of the defendants, and each of them. These acts continued even after the plaintiffs protested to the defendants, and plaintiffs were powerless to obtain from the defendants compliance with their obligations, Plaintiffs are therefore entitled to recover punitive damages.

WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as follows:

1. For damages according to proof for breach of contract, including costs of defense incurred by plaintiffs in their defense of the claims in the Underlying Action and the amounts paid in settlement of those claims;

2. For general compensatory damages including, but not limited to, injuries resulting from humiliation, mental anguish and emotional distress according proof;

3. For attorney fees incurred in bringing this action pursuant to Insurance Code section 1619;

4. For attorney fees incurred in obtaining Policy benefits, as provided by law;

5. For prejudgment interest in an amount to be proved at time of trial;

6. For punitive damages in an amount sufficient to deter and make an example of defendants;

7. For costs of suit incurred herein; and

8. For such other and further relief as the Court may deem just and proper.

Dated: January 25, 2016

SHEUERMAN, MARTINI, TABARI ZENERE & GARVIN

By: ______________________
ALAN L. MARTINI
Attorneys for Plaintiffs
SUNRISE SPECIALTY COMPANY, INC., and ROBERT WEINSTEIN

COMPLAINT FOR BREACH OF CONTRACT AND BREACH OF THE COVENANT GOOD FAITH AND FAIR DEALING

10

SCOTTSDALE INSURANCE COMPANY®

A Stock Insurance Company, herein called the Insurer
Home Office:
One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office:
8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675

# BUSINESS AND MANAGEMENT INDEMNITY POLICY DECLARATIONS

THE EMPLOYMENT PRACTICES, DIRECTORS AND OFFICERS AND COMPANY, FIDUCIARY, BUSINESSOWNERS, PRIVACY PLUS, TECHNOLOGY, MEDIA AND PROFESSIONAL SERVICES AND MISCELLANEOUS PROFESSIONAL SERVICES COVERAGE SECTIONS OF THIS POLICY, WHICHEVER ARE APPLICABLE, COVER ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR, IF ELECTED, THE EXTENDED PERIOD AND REPORTED TO THE INSURER PURSUANT TO THE TERMS OF THE RELEVANT COVERAGE SECTION. THE CRIME COVERAGE SECTION, IF APPLICABLE, APPLIES ONLY TO LOSS DISCOVERED DURING THE POLICY PERIOD. PLEASE READ THIS POLICY CAREFULLY.

THE LIMITS OF LIABILITY AVAILABLE TO PAY INSURED LOSS SHALL BE REDUCED BY AMOUNTS INCURRED FOR COSTS, CHARGES AND EXPENSES, UNLESS OTHERWISE PROVIDED HEREIN. AMOUNTS INCURRED FOR COSTS, CHARGES AND EXPENSES AND LOSS SHALL ALSO BE APPLIED AGAINST THE RETENTION AND DEDUCTIBLE AMOUNTS.

TERMS THAT APPEAR IN BOLDFACE TYPE HAVE SPECIAL MEANING. PLEASE REFER TO THE APPROPRIATE DEFINITIONS SECTIONS OF THIS POLICY.

| Item 1. | Parent Company & Mailing Address: | Sunrise Specialty Company, Inc.<br>930 98th Avenue<br>Oakland, CA 94603 | Policy No:<br>Agent No:<br>Renewal No:<br>Agent Name & Mailing Address: | EKS3128831<br>28408<br><br>E-Risk Services, LLC<br>Northwest Professional Center<br>227 US Hwy 206<br>Suite 302<br>Flanders, NJ 07836-9174 |
|---|---|---|---|---|

Principal Address, if different from mailing address:

**Item 2.** Policy Period: From 5/7/2014 to 5/7/2015
12:01 A.M. local time at Principal Address shown above.

**Item 3.** Coverage Section and Limit of Liability

Directors and Officers and Company Coverage Section

1. Limit of Liability:
   a. $1,000,000 aggregate for all Loss, subject to 1.b. and 1.c. immediately below.
   b. $1,000,000 additional aggregate for all Loss under Insuring Clause A.1., subject to 1.c. immediately below.
   c. $2,000,000 maximum aggregate for this Coverage Section
2. Retention:
   a. $0 each Claim under Insuring Clause 1.
   b. $2,500 each Claim under Insuring Clause 2.
   c. $2,500 each Claim under Insuring Clause 3.
3. Continuity Date: 5/7/14

EXHIBIT A

| | | |
|---|---|---|
| Item 4. | Premium: $4,420 | |
| Item 5. | Discovery Period options: | |
| | 1. One (1) year = | 100% of the premium |
| | 2. Two (2) years = | 125% of the premium |
| | 3. Three (3) years = | 150% of the premium |
| | As provided in Section H. of the General Terms and Conditions, only one of the above Discovery Period options may be elected and purchased. | |
| Item 6. | Run-Off Period: | |
| | 1. One (1) year = | 110% of the premium |
| | 2. Two (2) years = | 112% of the premium |
| | 3. Three (3) years = | 115% of the premium |
| | 4. Four (4) years = | 120% of the premium |
| | 5. Five (5) years = | 122% of the premium |
| | 6. Six (6) years = | 125% of the premium |
| | As provided in Section I. of the General Terms and Conditions, only one of the above Run-Off Period options may be elected and purchased. | |
| Item 7. | Forms and Endorsements Effective at Inception of Policy: | |
| | EKS-D-1 (04/08), NOTX0015CA (02/00), NOTS0021CA (07/11), EKS-1 (04/08), EKS-P-1 (04/08), EKS-762 (01/09), EKS-757 (01/09), EKS-6 (04/08), EKS-8 (04/08), EKS-199 (04/08), EKS-14 (01/09), EKS-848 (11/09), EKS-764 (01/09), EKS-16 (04/09), UTS-253-CA (01/97), EKS-202 (04/08), EKS-17 (03/10), EKS-845 (05/09), EKS-783 (01/09), EKS-781 (01/09), EKS-776 (01/09), EKS-21 (04/08), EKS-788 (01/09), EKS-166 (04/08), EKS-37 (04/08), EKS-19 (04/08), UTS-9g (05/86), EKS-50 (04/08), EKS-786 (01/09), NOTS0184CW (1/08) | |
| Item 8. | Notices to Company: | |
| | Notice of Claims to:<br>Scottsdale Indemnity Company<br>Attention: Claims Manager<br>7 World Trade Center, 37th Floor<br>250 Greenwich Street<br>New York, NY 10007<br>FSReportALoss@freedomspecialtyins.com | Other Notices to:<br>Scottsdale Indemnity Company<br>Attention: Claims Manager<br>7 World Trade Center, 37th Floor<br>250 Greenwich Street<br>New York, NY 10007<br>FSReportALoss@freedomspecialtyins.com |

These Declarations, together with the Application, Coverage Sections, General Terms and Conditions, and any written endorsement(s) attached thereto, shall constitute the contract between the Insured and the Insurer.

SCOTTSDALE INSURANCE COMPANY®

# CALIFORNIA SURPLUS LINES NOTICE

NOTICE TO CALIFORNIA INSURED

1. THE INSURANCE POLICY THAT YOU [HAVE PURCHASED] [ARE APPLYING TO PURCHASE] IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NON-ADMITTED" OR "SURPLUS LINE" INSURERS.

2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.

3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4. THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN)INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELE-PHONE NUMBER: 1-800-927-4357. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT

WWW.NAIC.ORG.

5. FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATES DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

6. FOR NON-UNITED STATES (ALIEN) INSURERS, THE IN-SURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

7. CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEBSITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV.

8. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKERS FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.

(California D-2)



A Stock Insurance Company, herein called the Insurer

# BUSINESS AND MANAGEMENT INDEMNITY POLICY

## GENERAL TERMS AND CONDITIONS

In consideration of the payment of premium, in reliance on the **Application** and subject to the Declarations, and terms and conditions of this **Policy**, the **Insurer** and the **Insureds** agree as follows

A. SEVERABILITY OF GENERAL TERMS AND CONDITIONS

These General Terms and Conditions apply to each and every Coverage Section of this **Policy**. The terms and conditions of each Coverage Section apply only to that Coverage Section and shall not be construed to apply to any other Coverage Section.

B. DEFINITIONS

Whenever used in this **Policy**, the terms that appear below in **boldface** type shall have the meanings set forth in this Definitions subsection of the General Terms and Conditions. However, if a term also appears in ***boldface*** type in a particular Coverage Section and is defined in that Coverage Section, that definition shall apply for purposes of that particular Coverage Section. Terms that appear in **boldface** in the General Terms and Conditions but are not defined in this Definitions subsection and are defined in other Coverage Sections of the **Policy** shall have the meanings ascribed to them in those Coverage Sections.

1. **Application** means all applications, including any attachments thereto, and all other information and materials submitted by or on behalf of the **Insureds** to the **Insurer** in connection with the **Insurer** underwriting this **Policy** or any policy of which this **Policy** is a renewal or replacement. All such applications, attachments, information, materials and documents are deemed attached to and incorporated into this **Policy**.

2. **Company** means:

   a. the **Parent Company**; and

   b. any **Subsidiary**,

   and includes any such organization as a debtor-in-possession or the bankruptcy estate of such entity under United States bankruptcy law or an equivalent status under the law of any other jurisdiction.

3. **Discovery Period** means one of the periods described in Item 5. of the Declarations which is elected and purchased pursuant to Section H. below.

4. **Domestic Partner** means any natural person qualifying as a domestic partner under the provision of any applicable federal, state or local law or under the provisions of any formal program established by the **Company**.

5. **Extended Period** means the **Discovery Period** or the **Run-Off Period**, if such provision is elected and purchased pursuant to Sections H. or I. respectively, below.

6. **Insurer** means the insurance company providing this insurance.

7. **Parent Company** means the entity first named in Item 1. of the Declarations.

8. **Policy** means, collectively, the Declarations, the **Application**, this policy form and any endorsements.

9. **Policy Period** means the period from the effective date and hour of the inception of this **Policy** to the **Policy** expiration date and hour as set forth in Item 2. of the Declarations, or its earlier cancellation date and hour, if any.

10. **Run-Off Period** means one of the periods described in Item 6. of the Declarations, which is elected and purchased pursuant to Section I. below.

11. **Subsidiary** means:

    a. any entity of which more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of such entity's directors or managers are owned by the **Parent Company**, directly or indirectly, if such entity:

        i. was so owned on or prior to the inception date of this **Policy**; or

        ii. becomes so owned after the inception date of this **Policy**; and

    b. any joint venture entity in which the **Parent Company**, or an entity described in a. above, has an exact fifty percent (50%) ownership of the interests of such joint venture entity and where, pursuant to a written joint venture agreement, the **Parent Company** or entity described in a. above solely controls the management and operations of such joint venture entity.

12. **Takeover** means:

    a. the acquisition by any person or entity of more than fifty percent (50%) of the outstanding securities of the **Parent Company** representing the present right to vote for the election of directors; or

    b. the merger or consolidation of the **Parent Company** into another entity such that the **Parent Company** is not the surviving entity.

All definitions shall apply equally to the singular and plural forms of the respective words.

C. LIMITS OF LIABILITY, RETENTIONS AND DEDUCTIBLES

1. The Limits of Liability, Retentions and Deductibles for each Coverage Section are separate Limits of Liability, Retentions and Deductibles pertaining only to the Coverage Section for which they are shown. The application of a Retention or Deductible to Loss under one Coverage Section shall not reduce the Retention or Deductible under any other Coverage Section, and no reduction in the Limit of Liability applicable to one Coverage Section shall reduce the Limit of Liability under any other Coverage Section.

2. In the event that any **Claim** is covered, in whole or in part, under two or more Insuring Clauses or more than one Coverage Section, the total applicable Retention or Deductible shall not exceed the single largest applicable Retention or Deductible. The largest applicable Retention or Deductible shall apply only once to such **Claim**.

D. WARRANTY

It is warranted that the particulars and statements contained in the **Application** are the basis of this **Policy** and are to be considered as incorporated into and constituting a part of this **Policy** and each Coverage Section.

By acceptance of this **Policy**, the **Insureds** agree that:

1. the statements in the **Application** are their representations, that such representations shall be deemed material to the acceptance of the risk or the hazard assumed by **Insurer** under this **Policy**, and that this **Policy** and each Coverage Section are issued in reliance upon the truth of such representations; and

2. In the event the **Application**, including materials submitted or required to be submitted therewith ,contains any misrepresentation or omission made with the intent to deceive, or contains any misrepresentation or omission which materially affects either the acceptance of the risk or the hazard assumed by **Insurer** under this **Policy**, this **Policy**, including each and all Coverage Sections, shall be void ab initio with respect to any **Insureds** who had knowledge of such misrepresentation or omission.

E. CANCELLATION

1. By acceptance of this **Policy**, the **Insureds** hereby confer to the **Parent Company** the exclusive power and authority to cancel this **Policy** on their behalf. The **Parent Company** may cancel this **Policy** in its entirety or any of the applicable Coverage Sections individually by surrender thereof to the **Insurer**, or by mailing written notice to the **Insurer** stating when thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation shall be the date the **Insurer** received such notice or any later date specified in the notice, and such effective date shall become the end of the **Policy** or applicable Coverage Section. Delivery of such written notice shall be equivalent to mailing.

2. This **Policy** may be cancelled by the **Insurer** only for nonpayment of premium, by mailing written notice to the **Parent Company** stating when such cancellation shall be effective, such date to be not less than ten (10) days from the date of the written notice. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice by the **Insurer** shall be equivalent to mailing. If the foregoing notice period is in conflict with any governing law or regulation, then the notice period shall be deemed to be the minimum notice period permitted under the governing law or regulation.

3. If this **Policy** or any Coverage Section is cancelled, the **Insurer** shall retain the pro rata proportion of the premium therefore. Payment or tender of any unearned premium by **Insurer** shall not be a condition precedent to the effectiveness of cancellation.

F. ESTATES, LEGAL REPRESENTATIVES, AND SPOUSES

The estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of natural persons who are **Insureds** shall be considered **Insureds** under this **Policy**; provided, however, coverage is afforded to such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** only for a **Claim** arising solely out of their status as such and, in the case of a spouse or **Domestic Partner**, where the **Claim** seeks damages from marital community property, jointly held property or property transferred from the natural person who is an **Insured** to the spouse or **Domestic Partner**. No coverage is provided for any **Wrongful Act** of an estate, heir, legal representative, assign, spouse or **Domestic Partner**. All of the terms and conditions of this **Policy** including, without limitation, the Retentions and Deductibles applicable to **Loss** incurred by natural persons who are **Insureds** shall also apply to **Loss** incurred by such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners**.

G. AUTHORIZATION CLAUSE

By acceptance of this **Policy**, the **Parent Company** agrees to act on behalf of all **Insureds**, and the **Insureds** agree that the **Parent Company** will act on their behalf, with respect to the giving of all notices to **Insurer**, the receiving of notices from **Insurer**, the agreement to and acceptance of endorsements, the payment of the premium and the receipt of any return premium.

H. DISCOVERY PERIOD

1. If this **Policy** or any Coverage Section is cancelled or is not renewed by the **Insurer**, for reasons other than non-payment of premium or if the **Parent Company** elects to cancel or not to renew this **Policy** or a Coverage Section, then the **Parent Company** shall have the right, upon payment of an additional premium calculated at that percentage shown in Item 5. of the Declarations of the total premium for this **Policy**, or the total premium for the cancelled or not renewed Coverage Section, whichever is applicable, to purchase an extension of the coverage granted by this **Policy** or the applicable cancelled or not renewed Coverage Section with respect to any **Claim** first made during the period of time set forth in Item 5. of the Declarations after the effective date of such cancellation or, in the event of a refusal to renew,

after the **Policy** expiration date, but only with respect to any **Wrongful Act** committed before such date. The **Parent Company** shall have the right to elect only one of the **Discovery Periods** set forth in Item 5. of the Declarations.

2. As a condition precedent to the right to purchase the **Discovery Period** set forth in subsection H.1. above, the total premium for the **Policy** must have been paid. Such right to purchase the **Discovery Period** shall terminate unless written notice, together with full payment of the premium for the **Discovery Period**, is received by **Insurer** within thirty (30) days after the effective date of cancellation, or, in the event of a refusal to renew, within thirty (30) days after the **Policy** expiration date. If such notice and premium payment is not so given to **Insurer**, there shall be no right to purchase the **Discovery Period**.

3. In the event of the purchase of the **Discovery Period**, the entire premium therefore shall be deemed earned at the commencement of the **Discovery Period**.

4. The exercise of the **Discovery Period** shall not in any way increase or reinstate the limit of **Insurer's** liability under any Coverage Section.

**I. RUN-OFF COVERAGE**

In the event of a **Takeover**:

1. The **Parent Company** shall have the right, upon payment of an additional premium calculated at the percentage of the total premium for this **Policy** set forth in Item 6. of the Declarations, to an extension of the coverage granted by this **Policy** with respect to any **Claim** first made during the **Run-Off Period**, as set forth in Item 6. of the Declarations, but only with respect to any **Wrongful Act** committed before the effective date of the **Takeover** (herein defined as "Run-Off Coverage"); provided, however, such additional premium shall be reduced by the amount of the unearned premium from the date of the **Takeover** or the date of notice of the election of the Run-Off Coverage, whichever is later, through the expiration date set forth in Item 2. of the Declarations.

2. The **Parent Company** shall have the right to elect only one of the periods designated in Item 6. of the Declarations. The election must be made prior to the expiration of the **Policy Period**. The right to purchase a **Run-Off Period** shall terminate on the expiration of the **Policy Period**.

3. If a **Run-off Period** is elected and purchased:

   a. Section E. above, is deleted in its entirety and neither the **Insureds** nor the **Insurer** may cancel this **Policy** or any Coverage Section thereof;

   b. Section H. above, is deleted in its entirety; and

   c. the maximum aggregate Limit of Liability of the **Insurer** for each Coverage Section purchased and set forth on the Declarations shall be twice the otherwise applicable maximum aggregate Limit of Liability set forth in Item 3. of the Declarations for such Coverage Section; provided, however, the maximum aggregate Limit of Liability of the **Insurer** in connection with any one **Claim** shall be amount originally shown as the maximum aggregate Limit of Liability for each Coverage Section purchased and set forth on the Declaration.

**J. ALTERNATIVE DISPUTE RESOLUTION**

The **Insureds** and the **Insurer** shall submit any dispute or controversy arising out of or relating to this **Policy** or the breach, termination or invalidity thereof to the alternative dispute resolution ("ADR") process described in this subsection.

Either an **Insured** or the **Insurer** may elect the type of ADR process discussed below; provided, however, that the **Insured** shall have the right to reject the choice by the **Insurer** of the type of ADR process at any time prior to its commencement, in which case the choice by the **Insured** of ADR process shall control.

There shall be two choices of ADR process: (1) non-binding mediation administered by any mediation facility to which the **Insurer** and the **Insured** mutually agree, in which the **Insured** and the **Insurer** shall try in good faith

to settle the dispute by mediation in accordance with the then-prevailing commercial mediation rules of the mediation facility; or (2) arbitration submitted to any arbitration facility to which the Insured and the Insurer mutually agree, in which the arbitration panel shall consist of three disinterested individuals. In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, and insurance issues relevant to the matters in dispute. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the award of the arbitrators shall not include attorneys' fees or other costs. In the event of mediation, either party shall have the right to commence arbitration in accordance with this section; provided, however, that no such arbitration shall be commenced until at least sixty (60) days after the date the mediation shall be deemed concluded or terminated. In all events, each party shall share equally the expenses of the ADR process.

Either ADR process may be commenced in New York, New York or in the state indicated in Item 1. of the Declarations as the principal address of the **Parent Company**. The **Parent Company** shall act on behalf of each and every **Insured** in connection with any ADR process under this section.

K. TERRITORY

Coverage under this **Policy** shall extend to **Wrongful Acts** taking place or **Claims** made anywhere in the world.

L. ASSISTANCE, COOPERATION AND SUBROGATION

The **Insureds** agree to provide **Insurer** with such information, assistance and cooperation as **Insurer** reasonably may request, and they further agree that they shall not take any action which in any way increases **Insurer's** exposure under this **Policy**. In the event of any payments under this **Policy**, **Insurer** shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery against any person or entity. The **Insureds** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights, including the execution of such documents as are necessary to enable **Insurer** effectively to bring suit or otherwise pursue subrogation in the name of the **Insureds**, and shall provide all other assistance and cooperation which **Insurer** may reasonably require.

M. ACTION AGAINST INSURER, ALTERATION AND ASSIGNMENT

Except as provided in Section J. above, Alternative Dispute Resolution, no action shall lie against **Insurer** unless, as a condition precedent thereto, there shall have been compliance with all of the terms of this **Policy**. No person or organization shall have any right under this **Policy** to join **Insurer** as a party to any action against the **Insureds** to determine their liability, nor shall **Insurer** be impleaded by the **Insureds** or their legal representative. No change in, modification of, or assignment of interest under this **Policy** shall be effective except when made by a written endorsement to this **Policy** which is signed by an authorized representative of the **Insurer**.

N. ENTIRE AGREEMENT

By acceptance of this **Policy**, the **Insureds** agree that this **Policy** embodies all agreements existing between them and **Insurer** or any of their agents relating to this insurance. Notice to any agent or knowledge possessed by any agent or other person acting on behalf of **Insurer** shall not effect a waiver or a change in any part of this **Policy** or estop **Insurer** from asserting any right under the terms of this **Policy** or otherwise, nor shall the terms be deemed waived or changed except by written endorsement or rider issued by **Insurer** to form part of this **Policy**.



SCOTTSDALE INSURANCE COMPANY®

A Stock Insurance Company, herein called the **Insurer**

## BUSINESS AND MANAGEMENT INDEMNITY POLICY

## DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION

In consideration of the payment of premium, in reliance on the **Application** and subject to the Declarations, and terms and conditions of this **Policy**, the **Insurer** and the **Insureds** agree as follows

A. **INSURING CLAUSES**

1. The **Insurer** shall pay the **Loss** of the **Directors and Officers** for which the **Directors and Officers** are not indemnified by the **Company** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

2. The **Insurer** shall pay the **Loss** of the **Company** for which the **Company** has indemnified the **Directors and Officers** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

3. The **Insurer** shall pay the **Loss** of the **Company** which the **Company** becomes legally obligated to pay by reason of a **Claim** first made against the **Company** during the **Policy Period** or, if applicable, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

B. **DEFINITIONS**

1. **Claim** means:

   a. a written demand against any **Insured** for monetary damages or non-monetary or injunctive relief;

   b. a written demand by one or more of the securities holders of the **Company** upon the board of directors or the management board of the **Company** to bring a civil proceeding against any of the **Directors and Officers** on behalf of the **Company**;

   c. a civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

   d. a criminal proceeding against any **Insured** commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges;

   e. an arbitration proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief; or

   f. a civil, administrative or regulatory proceeding, or a formal governmental investigation against any **Insured** commenced by the filing of a notice of charges, investigative order or similar document.

2. **Continuity Date** means the date set forth in Item 3. of the Declarations relating to this Coverage Section.

3. **Costs, Charges and Expenses** means:

a. reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in defending **Claims** and the premium for appeal, attachment or similar bonds arising out of covered judgments, but with no obligation to furnish such bonds and only for the amount of such judgment that is up to the applicable Limit of Liability; and

b. reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in investigating a written demand, by one or more of the securities holders of the **Company** upon the board of directors or the management board of the **Company**, to bring a civil proceeding against any of the **Directors and Officers** on behalf of the **Company**.

**Costs, Charges and Expenses** do not include salaries, wages, fees, overhead or benefit expenses of or associated with officers or employees of the **Company**.

4. **Directors and Officers** means any person who was, now is, or shall become:

   a. a duly elected or appointed director, officer, or similar executive of the **Company**, or any member of the management board of the **Company**;

   b. a person who was, is or shall become a full-time or part-time employee of the **Company**; and

   c. the functional equivalent of directors or officers of a **Company** incorporated or domiciled outside the United States of America.

5. **Insured** means the **Company** and the **Directors and Officers**.

6. **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of facts, circumstances, situations, events, transactions or causes.

7. **Loss** means damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and **Costs, Charges and Expenses** incurred by **Directors and Officers** under Insuring Clauses 1. or 2. or the **Company** under Insuring Clause 3. **Loss** does not include:

   a. taxes, fines or penalties;

   b. matters uninsurable under the laws pursuant to which this **Policy** is construed;

   c. punitive or exemplary damages, or the multiple portion of any multiplied damage award, except to the extent that such punitive or exemplary damages, or multiplied portion of any multiplied damage award are insurable under the internal laws of any jurisdiction which most favors coverage for such damages and which has a substantial relationship to the **Insureds**, **Insurer**, this **Policy** or the **Claim** giving rise to such damages;

   d. the cost of any remedial, preventative or other non-monetary relief, including without limitation any costs associated with compliance with any such relief of any kind or nature imposed by any judgment, settlement or governmental authority;

   e. any amount for which the **Insured** is not financially liable or legally obligated to pay;

   f. the costs to modify or adapt any building or property to be accessible or accommodating, or more accessible or accommodating, to any disabled person; or

   g. any amounts owed or paid to one or more securities holders of the **Company** under any written or express contract or agreement.

8. **Outside Entity** means:

   a. any non-profit company which is exempt from taxation under the Internal Revenue Code, as amended, in which any of the **Directors and Officers** is a director, officer, trustee, governor, executive director or similar position of such non-profit company; and

    b. any other company specifically identified by endorsement to this **Policy**.

9. **Wrongful Act** means any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act allegedly committed or attempted by:

   a. any of the **Directors and Officers**, while acting in their capacity as such, or any matter claimed against any **Director and Officer** solely by reason of his or her serving in such capacity;

   b. any of the **Directors and Officers**, while acting in their capacity as a director, officer, trustee, governor, executive director or similar position of any **Outside Entity** where such service is with the knowledge and consent of the **Company**; and

   c. the **Company**, but only with respect to Insuring Clause 3. of this Coverage Section.

C. **EXCLUSIONS**

1. Exclusions Applicable to All Insuring Clauses

**Insurer** shall not be liable for **Loss** under this Coverage Section on account of any **Claim**:

a. for actual or alleged bodily injury, sickness, disease, death, false imprisonment, assault, battery, mental anguish, emotional distress, invasion of privacy of any person, or damage to or destruction of any tangible or intangible property including loss of use thereof, whether or not such property is physically injured;

b. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

   i. any **Wrongful Act**, fact, circumstance or situation which has been the subject of any written notice given under any other policy of which this **Policy** is a renewal or replacement or which it succeeds in time; or

   ii. any other **Wrongful Act**, whenever occurring, which together with a **Wrongful Act** which has been the subject of such prior notice, would constitute **Interrelated Wrongful Acts**;

c. Alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

   i. the actual, alleged or threatened discharge, dispersal, release, escape, seepage, migration or disposal of **Pollutants**; or

   ii. any direction or request that any **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so;

provided, however, this exclusion shall not apply to any **Claim** brought directly, derivatively or otherwise by one or more securities holders of the **Company** in their capacity as such.

For purposes of this exclusion, **Pollutants** means any substance exhibiting any hazardous characteristics as defined by, or identified on, a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipal or local counterpart thereof or any foreign equivalent. Such substances shall include, without limitation, solids, liquids, gaseous, biological, bacterial or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials (including materials to be reconditioned, recycled or reclaimed). **Pollutants** shall also mean any other air emission or particulate, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, noise, fungus (including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi, but does not include any fungi intended by the **Insured** for consumption) and electric or magnetic or electromagnetic field;

d. for any actual or alleged violation of the responsibilities, obligations or duties imposed by Employee Retirement Income Security Act of 1974, as amended, or any rules or regulations promulgated thereunder, or similar provisions of any federal, state or local statutory or common law;

e. brought or maintained by, on behalf of, in the right of, or at the direction of any **Insured** in any capacity, any **Outside Entity** or any person or entity that is an owner of or joint venture participant in any **Subsidiary** in any respect and whether or not collusive, unless such **Claim:**

i. is brought derivatively by a securities holder of the **Parent Company** and is instigated and continued totally independent of, and totally without the solicitation, assistance, active participation of, or intervention of, any **Insured;**

ii. is brought or maintained by any **Insured** in the form of a cross-claim, third-party claim or other proceeding for contribution or indemnity which is part of, and directly results from a **Claim** that is covered by this Coverage Section;

iii. is brought or maintained by an employee of the **Company** who is not or was not a director or officer of the **Company;**

iv. is brought or maintained by any former director or officer of the **Company** solely in their capacity as a securities holder of the **Company** and where such **Claim** is solely based upon and arising out of **Wrongful Acts** committed subsequent to the date such director or officer ceased to be a director or officer of the **Company** and where such **Claim** is first made two (2) years subsequent to the date such director or officer ceased to be a director or officer of the **Company;** or

v. is brought or maintained by any bankruptcy trustee or bankruptcy appointed representative of the **Company;**

f. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

i. any dishonest, deliberately fraudulent or criminal act of an **Insured;** provided, however this exclusion f.i. shall not apply unless and until there is a final judgment against such **Insured** as to such conduct; or

ii. the gaining of any profit, remuneration or financial advantage to which any **Directors and Officers** were not legally entitled; provided, however this exclusion f.ii. shall not apply unless and until there is a final judgment against such **Directors and Officers** as to such conduct.

When f.i. or ii. apply, the **Insured** shall reimburse the **Insurer** for any **Costs, Charges or Expenses;**

g. for the return by any of the **Directors and Officers** of any remuneration paid to them without the previous approval of the appropriate governing body of the **Company** or **Outside Entity**, which payment without such previous approval shall be held to be in violation of law;

h. against any of the **Directors and Officers** of any **Subsidiary** or against any **Subsidiary** alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any **Wrongful Act** actually or allegedly committed or attempted by a **Subsidiary** or **Directors and Officers** thereof:

i. before the date such entity became a **Subsidiary** or after the date such entity ceased to be a **Subsidiary;** or

ii. occurring while such entity was a **Subsidiary** which, together with a **Wrongful Act** occurring before the date such entity became a **Subsidiary**, would constitute **Interrelated Wrongful Acts;**

i. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any **Wrongful Act** actually or allegedly committed subsequent to a **Takeover**;

j. for a **Wrongful Act** actually or allegedly committed or attempted by any of the **Directors and Officers** in his or her capacity as a director, officer, trustee, manager, member of the board of managers or equivalent executive of a limited liability company or employee of, or independent contractor for or in any other capacity or position with any entity other than the **Company**; provided, however, that this exclusion shall not apply to **Loss** resulting from any such **Claim** to the extent that:

i. such **Claim** is based on the service of any of the **Directors and Officers** as a director, officer, trustee, governor, executive director or similar position of any **Outside Entity** where such service is with the knowledge and consent of the **Company**; and

ii. such **Outside Entity** is not permitted or required by law to provide indemnification to such **Directors and Officers**; and

iii. such **Loss** is not covered by insurance provided by any of the **Outside Entity's** insurer(s);

k. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

i. any prior or pending litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental investigation or inquiry filed or pending on or before the **Continuity Date**; or

ii. any fact, circumstance, situation, transaction or event underlying or alleged in such litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental investigation or inquiry;

l. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, any **Wrongful Act**, fact, circumstance or situation which any of the **Insureds** had knowledge of prior to the **Continuity Date** where such **Insureds** had reason to believe at the time that such known **Wrongful Act** could reasonably be expected to give rise to such **Claim**;

m. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any employment or employment-related matters brought by or on behalf of or on the right of an applicant for employment with the **Company**, or any of the **Directors and Officers**, including any voluntary, seasonal, temporary, leased or independently-contracted employee of the **Company**;

n. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

i. any initial public offering of securities undertaken and consummated by the **Company**, including all activities in connection therewith;

ii. the actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934, any rules or regulations of the Securities Exchange Commission adopted thereunder, any federal, state or provincial statute or common law regulating securities similar to the foregoing, including any amendments thereto, any rules or regulations adopted pursuant thereto in connection with any **Wrongful Act** actually or allegedly committed subsequent to the consummation of an initial public offering of securities of the **Company**; or

iii. any equity or debt offering, solicitation, sale, distribution or issuance of securities of the **Company** in excess of $50 million where such issuance takes place during the **Policy Period** and is exempt from the registration requirements of the Securities and Exchange Commission pursuant to Section 3.b. of the Securities Act of 1933 and rules and regulations promulgated thereunder, or any activities or transactions dealing in any way

with such issuance of securities of the **Company**; provided, however, this exclusion shall not apply if the **Insurer** agrees in writing to extend coverage for **Wrongful Acts** in connection with such issuance of securities and the **Insureds** have paid the premium required by the **Insurer** for such coverage extension; or

o. for that portion of **Loss** which is covered under any other Coverage Section of this **Policy**.

2. Exclusions Applicable Only to Insuring Clause A.3.

**Insurer** shall not be liable for **Loss** on account of any **Claim**:

a. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the actual or alleged breach of any contract or agreement; except and to the extent the **Company** would have been liable in the absence of such contract or agreement; or

b. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

i. any actual or alleged infringement, misappropriation, or violation of copyright, patent, service marks, trademarks, trade secrets, title or other proprietary or licensing rights or intellectual property of any products, technologies or services; or

ii. any goods or products manufactured, produced, processed, packaged, sold, marketed, distributed, advertised or developed by the **Company**.

Provided, however, the exclusions in 2.a. and 2.b. above shall not apply to any such **Claim** brought or maintained, directly or indirectly, by one or more securities holders of the **Company** in their capacity as such.

No **Wrongful Act** of one or more **Insureds** shall be imputed to any other **Insureds** for the purpose of determining the applicability of any of the above exclusions.

D. LIMIT OF LIABILITY AND RETENTIONS

1. The liability of the **Insurer** shall apply only to that part of **Loss** which is excess of the Retention amounts applicable to this Coverage Section, as shown in Item 3. of the Declarations. Such Retentions shall be borne uninsured by the **Insureds** and at their own risk. If different parts of a single **Claim** are subject to different applicable Retentions under this Coverage Section, the applicable Retentions will be applied separately to each part of such **Loss**, but the sum of such Retentions shall not exceed the largest applicable Retention.

2. As shown in Item 3. of the Declarations relating to this Coverage Section, the following Limits of Liability of the **Insurer** shall apply:

a. The amount set forth in Item 3.1.a. relating to this Coverage Section shall be the aggregate limit of liability for the payment of **Loss** under all Insuring Clauses for this Coverage Section, subject to additional payments for **Loss** under Insuring Clause A.1. as further described in subsection b. immediately below.

b. The amount set forth in Item 3.1.b. relating to this Coverage Section shall be an aggregate limit of liability for the payment of **Loss** under Insuring Clause A.1. in addition to the limit described in subsection a. immediately above; provided, all payments for **Loss** under the additional limits described in this subsection b. shall be excess of the limit described in subsection a. above, and excess of any other available insurance that is specifically excess to this **Policy**. Such excess insurance must be completely and fully exhausted through the payment of loss, including but not limited to defense costs thereunder, before the **Insurer** shall have any obligations to make any payments under the additional limits described in this subsection b.

    c. The amount set forth in Item 3.1.c. of the Declarations relating to this Coverage Section shall be the maximum aggregate limit of liability for the payment of Loss under all Insuring Clauses for this Coverage Section. The Limit of Liability set forth in Items 3.1.a. and 3.1.b. relating to this Coverage Section shall be a part of and not in addition to the maximum aggregate limit of liability set forth in Item 3.1.c. for this Coverage Section.

3. All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the following times, regardless of whether such date is before or during the **Policy Period**:

   a. the time at which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Act** is first made; or

   b. the time at which the **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to have been made pursuant to Section E.2. below.

4. The **Retention** applicable to Insuring Clause 2. shall apply to **Loss** resulting from any **Claim** if indemnification for the **Claim** by the **Company** is required or permitted by applicable law, to the fullest extent so required or permitted, regardless of whether or not such actual indemnification by the **Company** is made, except and to the extent such indemnification is not made by the **Company** solely by reason of the **Company's** financial insolvency.

5. Payments of **Loss** by **Insurer** shall reduce the **Limit(s) of Liability** under this Coverage Section. **Costs, Charges and Expenses** are part of, and not in addition to, the **Limits of Liability** and payment of **Costs, Charges and Expenses** reduce the **Limits of Liability**. If such **Limit(s) of Liability** are exhausted by payment of **Loss**, the obligations of the **Insurer** under this Coverage Section are completely fulfilled and extinguished.

## E. NOTIFICATION

1. The **Insureds** shall, as a condition precedent to their rights to payment under this Coverage Section only, give **Insurer** written notice of any **Claim** as soon as practicable, but in no event later than sixty (60) days after the end of the **Policy Period**. If any **Claim** is first made against the **Insureds** during the **Extended Period**, if purchased, written notice to **Insurer** must be given as soon as practicable, but in no event later than sixty (60) days after the end of the **Extended Period**.

2. If, during the **Policy Period** or the **Discovery Period**, if purchased, any of the **Insureds** first becomes aware of a specific **Wrongful Act** which may reasonably give rise to a future **Claim** covered under this **Policy**, and if the **Insureds**, during the **Policy Period** or the **Discovery Period**, if purchased, give written notice to **Insurer** as soon as practicable of:

   a. a description of the **Wrongful Act** allegations anticipated;

   b. the identity of the potential claimants;

   c. the circumstances by which the **Insureds** first became aware of the **Wrongful Act**;

   d. the identity of the **Insureds** allegedly involved;

   e. the consequences which have resulted or may result; and

   f. the nature of the potential monetary damages and non-monetary relief;

   then any **Claim** made subsequently arising out of such **Wrongful Act** shall be deemed for the purposes of this Coverage Section to have been made at the time such notice was received by the **Insurer**. No coverage is provided for fees, expenses and other costs incurred prior to the time such **Wrongful Act** results in a **Claim**.

3. Notice to **Insurer** shall be given to the address shown under Item 8. of the Declarations for this **Policy**.

F. SETTLEMENT AND DEFENSE

1. It shall be the duty of the **Insurer** and not the duty of the **Insureds** to defend any **Claim**. Such duty shall exist even if any of the allegations are groundless, false or fraudulent. The **Insurer's** duty to defend any **Claim** shall cease when the Limits of Liability have been exhausted by the payment of **Loss** including **Costs, Charges and Expenses**.

2. The **Insurer** may make any investigation it deems necessary, and shall have the right to settle any **Claim**; provided, however, no settlement shall be made without the consent of the **Parent Company**, such consent not to be unreasonably withheld.

3. The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Costs, Charges and Expenses** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld. The **Insurer** shall not be liable for any settlement, **Costs, Charges and Expenses**, assumed obligation or admission to which it has not consented. The **Insureds** shall promptly send to the **Insurer** all settlement demands or offers received by any **Insured** from the claimant(s).

4. The **Insureds** agree to provide the **Insurer** with all information, assistance and cooperation which the **Insurer** reasonably requests and agree that, in the event of a **Claim**, the **Insureds** will do nothing that shall prejudice the position of the **Insurer** or its potential or actual rights of recovery.

G. OTHER INSURANCE

If any **Loss** covered under this Coverage Section is covered under any other valid and collectible insurance, then this **Policy** shall cover the **Loss**, subject to its terms and conditions, only to the extent that the amount of the **Loss** is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability for this Coverage Section.

H. PAYMENT PRIORITY

1. If the amount of any **Loss** which is otherwise due and owing by the **Insurer** exceeds the then remaining Limit of Liability applicable to the **Loss**, the **Insurer** shall pay the **Loss**, subject to such Limit of Liability, in the following priority:

   a. First, the **Insurer** shall pay any **Loss** covered under Insuring Clause A.1. in excess of any applicable Retention shown in Item 3. of the Declarations; and

   b. Second, only if and to the extent the payment under subsection 1. above does not exhaust the applicable Limit of Liability, the **Insurer** shall pay any **Loss** in excess of the Retention shown in Item 3. of the Declarations covered under any other applicable Insuring Clause.

   c. Subject to the foregoing subsection, the **Insurer** shall, upon receipt of a written request from the Chief Executive Officer of the **Parent Company**, delay any payment of **Loss** otherwise due and owing to or on behalf of the **Company** until such time as the Chief Executive Officer of the **Parent Company** designates, provided the liability of the **Insurer** with respect to any such delayed **Loss** payment shall not be increased, and shall not include any interest, on account of such delay.

06/18/2007 08:11 5107296179

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 1 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128631 | 6/7/2014 | Sunrise Specialty Company, Inc. | 29400 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**ALLOCATION PROVISION**

This endorsement modifies insurance provided under the following:

GENERAL TERMS AND CONDITIONS

The following Section O., **ALLOCATION**, is added to the General Terms and Conditions Section.

O. **ALLOCATION**

1. In the event the **Insurer** has the duty to defend a **Claim** under any Coverage Section in which both **Loss** that is covered by the applicable Coverage Section and loss which is not covered by the applicable Coverage Section is incurred, either because such **Claim** includes both covered and uncovered matters or because such **Claim** is made against both covered and uncovered parties, then:

   a. this **Policy** shall pay one hundred percent (100%) of **Costs, Charges and Expenses** incurred by such **Insured** on account of such **Claim**; and

   b. there shall be a fair and equitable allocation of any remaining loss incurred by such **Insured** on account of such **Claim** between covered **Loss** and uncovered loss based upon the relative legal and financial exposures and the relative benefits obtained.

2. In the event the **Insured** has the duty to defend a **Claim** under any Coverage Section in which both **Loss** that is covered by the applicable Coverage Section and loss which is not covered by the applicable Coverage Section is incurred, either because such **Claim** includes both covered and uncovered matters or because such **Claim** is made against both covered and uncovered parties, then the **Insured** and the **Insurer** shall use their best efforts to determine a fair and proper allocation as between such insured and uninsured loss, taking into account the relative legal and financial exposures and the relative benefits obtained.

All other terms and conditions of this **Policy** remain unchanged.

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 2 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128631 | 5/7/2014 | Sunrise Specialty Company, Inc. | 20409 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND DISCOVERY ELECTION-90 DAYS**

This endorsement modifies insurance provided under the following:

**GENERAL TERMS AND CONDITIONS**

Section H., **DISCOVERY PERIOD**, subsection 2., is replaced by:

2. As a condition precedent to the right to purchase the **Discovery Period** set forth in subsection H.1. above, the total premium for the **Policy** must have been paid. Such right to purchase the **Discovery Period** shall terminate unless written notice, together with full payment of the premium for the **Discovery Period**, is received by **Insurer** within ninety (90) days after the effective date of cancellation, or, in the event of a refusal to renew, within ninety (90) days after the **Policy** expiration date. If such notice and premium payment is not so given to **Insurer**, there shall be no right to purchase the **Discovery Period**.

All other terms and conditions of this **Policy** remain unchanged.

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 3 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128631 | 5/7/2014 | Sunrise Specialty Company, Inc. | 29408 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND NOTICE OF CIRCUMSTANCES**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

Section **E. NOTIFICATION**, subsection **2.** is replaced by:

2. If during the **Policy Period** or the **Discovery Period**, if purchased, any of the **Insureds** first become aware of specific facts or circumstances which may reasonably give rise to a future **Claim** covered under this **Policy**, and if the **Insureds**, during the **Policy Period** or the **Discovery Period**, if purchased, give written notice to **Insurer** as soon as practicable of:

   a. a description of the facts, circumstances, or allegations anticipated;

   b. the identity of potential claimants;

   c. the circumstances by which the **Insureds** first became aware of the facts or circumstances;

   d. the identity of the **Insureds** allegedly involved;

   e. the consequences which have resulted or may result; and

   f. the nature of the potential monetary damages and non-monetary relief;

   then any **Claim** made subsequently arising out of such facts or circumstances shall be deemed for the purposes of this Coverage Section to have been made at the time such notices was received by the **Insurer**. No coverage is provided for fees, expenses and other costs incurred prior to the time such facts or circumstances results in a **Claim**.

**All other terms and conditions of this Policy remain unchanged.**

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 4 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128831 | 5/7/2014 | Sunrise Specialty Company, Inc. | 29408 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

AMEND NOTICE PROVISION - D&O

This endorsement modifies insurance provided under the following:

DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION

The following is added to Section E. NOTIFICATION, subsection 1.:

A **Claim** shall be deemed to have been first made against the **Insureds** on the date an **Insured** who is an executive officer, director or general counsel becomes aware of such **Claim**.

All other terms and conditions of this **Policy** remain unchanged.

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 5 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3126891 | 6/7/2014 | Sunrise Specialty Company, Inc. | 29406 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND OTHER INSURANCE TO BE PRIMARY - D&O**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

Section G., **OTHER INSURANCE**, is replaced by:

G. **OTHER INSURANCE**

For any **Claim**, if any **Loss** covered under this Coverage Section is covered under any other valid and collectable insurance, then this **Policy** shall be primary insurance, unless expressly written to be excess over other applicable insurance.

All other terms and conditions of this **Policy** remain unchanged.

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 6 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128631 | 5/7/2014 | Sunrise Specialty Company, Inc. | 29409 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND OUTSIDE SERVICES EXCLUSION**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

Section C., **EXCLUSIONS**, subsection 1., paragraph j., subparagraph ii. is replaced by:

ii. such **Outside Entity** is not permitted or required by law to provide indemnification to such **Directors and Officers**, or is unable to indemnify such **Directors and Officers** as a result of **Financial Impairment**; and

For the purposes of this endorsement **Financial Impairment** means the status of the **Outside Entity** resulting from (1) the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Outside Entity**, or (2) in the event a bankruptcy proceeding shall be instituted by or against the **Outside Entity**, the **Outside Entity** becoming a debtor-in-possession.

All other terms and conditions of this **Policy** remain unchanged.

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 7 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128631 | 6/7/2014 | Sunrise Specialty Company, Inc. | 29406 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND POLLUTION EXCLUSION - SIDE A**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

It is agreed that Section C., **EXCLUSIONS**, subsection 1.c., is deleted in its entirety and replaced by the following:

c. Alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

i. the actual, alleged or threatened discharge, dispersal, release, escape, seepage, migration or disposal of **Pollutants**; or

ii. any direction or request that any **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so;

provided, however, this exclusion shall not apply to:

- **Loss** of the **Directors and Officers** for which the **Directors and Officers** are not indemnified by the **Company**; or
- any **Claim** brought directly, derivatively or otherwise by one or more securities holders of the **Company** in their capacity as such.

For purposes of this exclusion, **Pollutants** means any substance exhibiting any hazardous characteristics as defined by, or identified on, a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipal or local counterpart thereof or any foreign equivalent. Such substances shall include, without limitation, solids, liquids, gaseous, biological, bacterial or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials (including materials to be reconditioned, recycled or reclaimed). **Pollutants** shall also mean any other air emission or particulate, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, noise, fungus (including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi, but does not include any fungi intended by the **Insured** for consumption) and electric or magnetic or electromagnetic field.

All other terms and conditions of this **Policy** remain unchanged.

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 8 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128631 | 6/7/2014 | Sunrise Specialty Company, Inc. | 20406 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND SUBROGATION PROVISION - FINAL JUDGMENT**

This endorsement modifies insurance provided under the following:

**GENERAL TERMS AND CONDITIONS**

Section L., **ASSISTANCE, COOPERATION AND SUBROGATION**, is deleted in its entirety and replaced by the following:

L. **ASSISTANCE, COOPERATION AND SUBROGATION**

The **Insureds** agree to provide **Insurer** with such information, assistance and cooperation as **Insurer** reasonably may request, and they further agree that they shall not take any action which in any way increases **Insurer's** exposure under this **Policy**. In the event of any payments under this **Policy**, **Insurer** shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery against any person or entity. The **Insureds** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights, including the execution of such documents as are necessary to enable **Insurer** effectively to bring suit or otherwise pursue subrogation in the name of the **Insureds**, and shall provide all other assistance and cooperation which **Insurer** may reasonably require. In no event, however, shall the **Insurer** exercise its right of subrogation against an **Insured** under this **Policy** unless such **Insured** has been convicted of a deliberate criminal act; or has committed a deliberate fraudulent act, if a final judgment establishes that such deliberate fraudulent act was committed; or has obtained any profit or advantage to which a final judgment establishes the **Insured** was not legally entitled.

All other terms and conditions of this Policy remain unchanged.

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 9 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128631 | 5/7/2014 | Sunrise Specialty Company, Inc. | 29406 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND WARRANTY PROVISION.NON-RESCINDABLE COVERAGE**

This endorsement modifies insurance provided under the following:

GENERAL TERMS AND CONDITIONS

Section D., **WARRANTY**, subsection 2. is replaced by:

2. In the event the **Application**, including materials submitted or required to be submitted therewith, contains any misrepresentation or omission made with the intent to deceive, or contains any misrepresentation or omission which materially affects either the acceptance of the risk or the hazard assumed by the **Insurer** under this **Policy**, this **Policy**, including each and all Coverage Sections, shall not afford coverage to the following **Insureds** for any **Claim** alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, any untruthful or inaccurate statements, representations or information:

   a. any **Insured** who is a natural person and who knew the facts misrepresented or the omissions, whether or not such individual knew of the **Application**, such materials, or this **Policy**;

   b. any **Company** or **Sponsor Company** to the extent it indemnifies any **Insured** referred to in subsection a. above; and

   c. any **Company**, **Sponsor Company**, **Plan**, **Employee Benefit Plan**, or any other entity that is an **Insured**, if any past or present chief executive officer, chief financial officer, general counsel, risk manager or human resources director (or equivalent positions) of the **Parent Company** knew the facts misrepresented or the omissions, whether or not such individual knew of the **Application**, such materials, or this **Policy**.

   With respect to any statement, representation or information contained in the **Application**, or in the materials submitted or required to be submitted therewith, and solely with respect to the above exclusion, no knowledge possessed by any **Insured** who is a natural person shall be imputed to any other **Insured** who is a natural person.

The following condition is added:

**NON-RESCINDABLE**

The **Insurer** shall not be entitled under any circumstances to rescind any Coverage Section of the **Policy** with respect to any **Insured**. Nothing contained in this section shall limit or waive any other rights or remedies available to the **Insurer**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms and conditions of this **Policy** remain unchanged.

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 10 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128631 | 6/7/2014 | Sunrise Specialty Company, Inc. | 29406 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMENDATORY ENDORSEMENT - CALIFORNIA**

Whenever the term AUTHORIZED REPRESENTATIVE appears beneath a signature line in this policy, it is removed and replaced by the term COUNTERSIGNATURE.

For example:

DATE AUTHORIZED REPRESENTATIVE

Is replaced by:

DATE COUNTERSIGNATURE

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 11 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128631 | 5/7/2014 | Sunrise Specialty Company, Inc. | 29400 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMENDED DEFINITION OF DIRECTORS & OFFICERS - LEASED / CONTRACTED EMPLOYEES**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

The following is added to Section B. **DEFINITIONS**, subsection 4.:

**Directors and/or Officers** means any person who was, now is, or shall become:

any natural person who is a leased employee or is contracted to perform work for the **Company**, or is an independent contractor for the **Company**, but only to the extent such individual performs work or services for or on behalf of the **Company**.

**All other terms and conditions of this Policy remain unchanged.**

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 12 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128631 | 6/7/2014 | Sunrise Specialty Company, Inc. | 29408 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMENDED INSURED VERSUS INSURED EXCLUSION**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

Section C., **EXCLUSIONS**, subsection 1., paragraph e., subparagraph iii. is replaced by:

iii. is brought or maintained by an employee of the **Company** who is not or was not a director or officer of the **Company**, including any such **Claim** brought or maintained under the Federal False Claims Act or any similar federal, state, local or foreign "whistleblower" law or "whistle-blower" provision of any law.

All other terms and conditions of this Policy remain unchanged.

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 13 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128631 | 5/7/2014 | Sunrise Specialty Company, Inc. | 29406 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMENDED INSURED VERSUS INSURED EXCLUSION - FOREIGN JURISDICTION**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

Section C., **EXCLUSIONS**, subsection 1. is amended by adding the following to paragraph e.:

> is brought or maintained in a jurisdiction outside the United States of America, Canada or Australia by any Insured of the Company solely where such Company is domiciled or chartered in such foreign jurisdiction;

All other terms and conditions of this Policy remain unchanged.

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 14 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128691 | 5/7/2014 | Sunrise Specialty Company, Inc. | 29406 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMENDED INSURED VERSUS INSURED EXCLUSION WITH CREDITOR COMMITTEE CARVEBACK**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

Section C., **EXCLUSIONS**, subsection 1., paragraph e., subparagraph v. is deleted in its entirety and replaced by the following:

v. is brought or maintained by or on behalf of a bankruptcy or insolvency receiver, trustee, examiner, conservator, liquidator or rehabilitator for, or creditors' committee of, the Company, or any assignee thereof;

All other terms and conditions of this Policy remain unchanged.

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 15 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128831 | 6/7/2014 | Sunrise Specialty Company, Inc. | 29408 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**COST OF INVESTIGATIONS COVERAGE**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

It is agreed that:

The following is added to Section B., **DEFINITIONS**:

**Cost of Investigation** means reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in investigating a written demand, by one or more of the securities holders of the **Company** upon the board of directors, the management board of the **Company** or the **Company**, to bring a civil proceeding, including any derivative action, against any of the **Directors and Officers** on behalf of the **Company**.

Section B., **DEFINITIONS**, subsection 1., paragraph b. is deleted in its entirely and is replaced by:

b. a written demand, by one or more of the securities holders of the **Company** upon the board of directors, the management board of the **Company** or the **Company**, to bring a civil proceeding, including any derivative action, against any of the **Directors and Officers** on behalf of the **Company**;

Section B., **DEFINITIONS**, subsection 3., paragraph b. is deleted in its entirety and is replaced by:

b. cost of investigation.

All other terms and conditions of this Policy remain unchanged.

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 16 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128631 | 5/7/2014 | Sunrise Specialty Company, Inc. | 29408 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**DELETE PARAGRAPH III. FROM EXCLUSION N.**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

It is agreed that Section C., **EXCLUSIONS**, subsection 1., paragraph n. III. is deleted in its entirety.

All other terms and conditions of this Policy remain unchanged.

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 17 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128831 | 6/7/2014 | Sunrise Specialty Company, Inc. | 29406 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**EMPLOYED LAWYERS EXTENSION**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

The following is added to Section B.4.:

**Employed Lawyers** of the **Company**

The following definition is added to Section B.:

**Employed Lawyers** means:

employees of the **Company** who:

1. are admitted to practice law in one or more jurisdictions in the United States of America; and
2. are employed within the **Company's** office of the general counsel or its functional equivalent; and
3. acting solely in the capacity of providing professional legal services to the **Company**.

An individual shall not be deemed to be an **Employed Lawyer** to the extent such individual renders or rendered professional legal services to persons or entities other than the **Insureds**.

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 18 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128631 | 5/7/2014 | Sunrise Specialty Company, Inc. | 29406 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**EXTRADITION COVERAGE ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

The following is added to Section B., DEFINITIONS, subsection 1.:

**Claim** means:

- an official request for **Extradition** of any of the **Directors and Officers**; or the execution of a warrant for the arrest of any of the **Directors and Officers** where such execution is an element of **Extradition**.

The following is added to Section B., DEFINITIONS, subsection 3.:

**Costs, Charges and Expenses** means:

- reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** resulting from any of the **Directors and Officers** lawfully:

  i. opposing, challenging, resisting or defending against any request for or any effort to obtain the **Extradition** of any of such **Directors and Officers**; or

  ii. appealing any order or other grant of **Extradition** of any of such **Directors and Officers**.

The following is added to Section B., DEFINITIONS:

**Extradition** means any formal process by which any of the **Directors and Officers** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

All other terms and conditions of this Policy remain unchanged.

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 19 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128631 | 5/7/2014 | Sunrise Specialty Company, Inc. | 29408 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**PROFESSIONAL SERVICES EXCLUSION - SECURITIES HOLDER EXCEPTION**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

The following is added to Section C. **EXCLUSIONS**, paragraph **1.** Exclusions Applicable to All Insuring Clauses:

> Insurer shall not be liable for Loss under this Coverage Section on account of any **Claim** alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the rendering or failing to render professional services, provided, however, this exclusion shall not apply to any **Claim(s)** brought by a securities holder of the **Company** in their capacity as such.

**All other terms and conditions of this Policy remain unchanged.**

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 20 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128631 | 6/7/2014 | Sunrise Specialty Company, Inc. | 20406 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**REMOVAL OF ALTERNATIVE DISPUTE RESOLUTION PROVISION**

This endorsement modifies insurance provided under the following:

**GENERAL TERMS AND CONDITIONS**

Section J. **ALTERNATIVE DISPUTE RESOLUTION** is deleted in its entirety.

**All other terms and conditions of this Policy remain unchanged.**

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 21 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128631 | 5/7/2014 | Sunrise Specialty Company, Inc. | 29408 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

SCIENTIFIC AND ADVISORY BOARD EXTENSION

This endorsement modifies insurance provided under the following:

DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION

The following is added to Section B. DEFINITIONS, subsection 4.:

**Directors and/or Officers** means any person who was, now is, or shall become:

a natural person member of the Scientific or Advisory Board of the **Company** (collectively "**Advisory Board Members**") that is indemnified by the **Company** pursuant to a written indemnification agreement. The **Company** agrees to indemnify the **Advisory Board Members** to the fullest extent permitted by law, taking all steps necessary or advisable in furtherance thereof, including the making in good faith of any application for court approval, the passing of any resolution by the board of directors or shareholders of the **Company**, the amendment of any charter, bylaws, operating agreement or similar documents of the **Company** or the execution of any contract. The **Company** further agrees to advance **Costs, Charges and Expenses** actually and reasonably incurred by any **Advisory Board Member** in defending any threatened, pending or contemplated action, suit or proceeding prior to a final disposition of any such action, suit or proceeding and shall not require any determination or adjudication, interim or final, of the entitlement of the **Advisory Board Member** to indemnification, where permitted by law to do so. The financial ability of any **Advisory Board Member** to make repayment shall not be a prerequisite to the making of such an advance, and the right to receive advancement of **Costs, Charges and Expenses** herein is a contractual right. The agreements contained in this paragraph are binding upon the **Company** and enforceable by the **Insurer** or the **Advisory Board Member.**

**All other terms and conditions of this Policy remain unchanged.**

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 22 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128631 | 5/7/2014 | Sunrise Specialty Company, Inc. | 29408 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**SERVICE OF SUIT CLAUSE**

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court. In a suit instituted against any one of them under this contract, the Company agrees to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance).

The officer named below is authorized and directed to accept service of process on behalf of the Company:

Commissioner of Insurance<br>45 Fremont Street<br>23rd Floor<br>San Francisco, CA 94105

Having accepted service of process on behalf of the Company, the officer is authorized to mail the process or a true copy to:

Phyllis Thompson<br>Trans Cal Associates<br>3800 Watt Avenue, Suite 110<br>P. O. Box 214129<br>Sacramento, CA 95821

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 23 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128631 | 6/7/2014 | Sunrise Specialty Company, Inc. | 29406 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**SPECIFIED MATTER EXCLUSION - D&O**

Under Section C., **EXCLUSIONS**, paragraph 1., of the Directors and Officers and Company Coverage Section, the following is added:

alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

1. any **Wrongful Act**, fact, circumstance, or situation underlying or alleged in the following specified matter (s), or
2. any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** underlying or alleged in the following specified matter(s), would constitute **Interrelated Wrongful Acts**:

Specified Matter(s)

re: Chai Saephan Incident on 7/ 2/2012 AND
re: Glen Carter Incident reported 10/2/2012

All other terms and conditions of this **Policy** remain unchanged.

| SCOTTSDALE INSURANCE COMPANY® | | | ENDORSEMENT NO. 24 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3128631 | 5/7/2014 | Sunrise Specialty Company, Inc. | 29406 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**TOLLING OR WAIVING THE STATUTE OF LIMITATIONS**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

The following is added to Section B., **DEFINITIONS**, subsection 1.:

**Claim** means:

a written request received by the **Company** to toll or waive the statute of limitations regarding a potential **Claim**. Such **Claim** shall be commenced by the receipt of such request.

All other terms and conditions of this **Policy** remain unchanged.

*14091908*

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Alan L. Martini, SB No. 77316
SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN
A Professional Corporation
1033 Willow Street
San Jose, CA 95125
TELEPHONE NO.: 408.288.9700 FAX NO.: 408.295.9900
ATTORNEY FOR (Name): Plaintiffs

FOR COURT USE ONLY

FILED
ALAMEDA COUNTY
JAN 25 2016
CLERK OF THE SUPERIOR COURT
By [signature] Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, California 94612
BRANCH NAME: Renee C. Davidson Courthouse

CASE NAME: Sunrise v. Scottsdale

# CIVIL CASE COVER SHEET

[X] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less)

Complex Case Designation
[ ] Counter [ ] Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: RG16801461
JUDGE:
DEPT:

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[X] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (*not specified above*) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (*not specified above*) (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought (*check all that apply*): a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action (*specify*): Two
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015.*)

Date: January 25, 2016

Alan L. Martini, SB No. 77316
(TYPE OR PRINT NAME)

[signature]
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Legal Solutions Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10

BY FAX

 

CM-010

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)—Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach—Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case—Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief from Late Claim
  - Other Civil Petition

SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN
Attn: Martini, Alan L.
1033 Willow Street
San Jose, CA 95125

**Superior Court of California, County of Alameda**

| Sunrise Specialty Company, In<br>Plaintiff/Petitioner(s)<br>vs.<br>Scottsdale Insurance Compan<br>Defendant/Respondent(s)<br>(Abbreviated Title) | No. RG16801461<br>NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDER<br>Unlimited Jurisdiction |
|---|---|

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:
Notice is given that a Case Management Conference has been scheduled as follows:

| Date: 06/08/2016<br>Time: 09:00 AM | Department: 24<br>Location: Administration Building<br>Third Floor<br>1221 Oak Street, Oakland CA 94612<br>Internet: www.alameda.courts.ca.gov | Judge: Frank Roesch<br>Clerk: Adeline Kanae<br>Clerk telephone: (510) 267-6940<br>E-mail: Dept.24@alameda.courts.ca.gov<br>Fax: (510) 267-1509 |
|---|---|---|

**ORDERS**

1. **Plaintiff must:**
   a. **Serve** all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)); and
   b. **Give notice** of this conference to all other parties and file proof of service.
2. **Defendant must** respond as stated on the summons.
3. **All parties who have appeared before the date of the conference must:**
   a. **Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724;
   b. **File and serve** a completed *Case Management Statement* on Form CM-110 at least **15** days before the Case Management Conference (Cal. Rules of Court, rule 3.725); and
   c. **Post jury fees** as required by Code of Civil Procedure section 631.
4. **If** you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.
5. **You are further ordered to appear in person** or through your attorney of record at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed. **You may** be able to appear at Case Management Conferences by telephone. Contact CourtCall, an independent vendor, at least three business days before the scheduled conference. Call 1-888-882-6878, or fax a service request to (888) 882-2946. The vendor charges for this service.
6. You may file *Case Management Conference Statements* by E-Delivery. Submit them directly to the E-Delivery Fax Number (510) 267-5732. No fee is charged for this service. For further information, go to www.alameda.courts.ca.gov/ff.
7. The judge may place a *Tentative Case Management Order* in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the website of each assigned department for procedures regarding tentative case management orders at www.alameda.courts.ca.gov/dc.

**CLERK'S CERTIFICATE OF MAILING**

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice of Hearing by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 01/28/2016.

By Michelle Bank

Deputy Clerk

## *Superior Court of California, County of Alameda*

## *Notice of Assignment of Judge for All Purposes*

Case Number: RG16801461
Case Title: Sunrise Specialty Company, In VS Scottsdale Insurance Compan
Date of Filing: 01/25/2016

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:**

| | |
|---|---|
| **Judge:** | **Frank Roesch** |
| **Department:** | **24** |
| **Address:** | **Administration Building<br>1221 Oak Street<br>Oakland CA 94612** |
| **Phone Number:** | **(510) 267-6940** |
| **Fax Number:** | **(510) 267-1509** |
| **Email Address:** | **Dept.24@alameda.courts.ca.gov** |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

**Please note: In this case, any challenge pursuant to Code of Civil Procedure section 170.6 must be exercised within the time period provided by law. (See Code Civ. Proc. §§ 170.6, subd. (a)(2) and 1013.)**

**NOTICE OF NONAVAILABILITY OF COURT REPORTERS:** Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate). Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording.

Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available. For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

IT IS THE DUTY OF EACH PLAINTIFF AND CROSS COMPLAINANT TO SERVE A COPY OF THIS NOTICE IN ACCORDANCE WITH LOCAL RULES.

## General Procedures

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the René C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612 or the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

ASSIGNED FOR ALL PURPOSES TO
JUDGE Frank Roesch
DEPARTMENT 24

All parties are expected to know and comply with the Local Rules of this Court, which are available on the Court's website at: http://www.alameda.courts.ca.gov/courts/rules/index.shtml and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processes (ADR) prior to the Initial Case Management Conference. The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days". Plaintiff received that form in the ADR information package at the time the complaint was filed. The court's Web site also contains this form and other ADR information. If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

(1) Meet and Confer Requirements are strictly enforced in Discovery Disputes. Counsel are reminded of their duty to act professionally and respectfully. (2) An informal discovery resolution process is provided for represented parties. Contact the clerk for details. (3) Courtesy Copies delivered directly to Dept 24 are required for all motions and applications. If said filing collectively measures two or more inches, please deliver the Courtesy Copy in binders separated with tabs and indexed. (4) DATES: email is preferred for scheduling. Court is in session all day and cannot respond adequately to phone calls. (5) Other than for scheduling matters, parties MUST COPY all sides when communicating via email with the Court. Email is NOT a substitute for filing pleadings/documents. Further, parties are reminded that the Court Clerk is prohibited from giving legal advice. (6) Self-represented parties are encouraged to use the Self-Help Center at RCD.

## Schedule for Department 24

The following scheduling information is subject to change at any time, without notice. Please contact the department at the phone number or email address noted above if you have questions. Parties must confer on agreeable dates consistent with the court's schedules before contacting the clerk to reserve a date. Email request will result in a faster response.

- Trials generally are held: Mondays through Thursdays at 9 a.m. Trial Readiness Conference set about 10 days prior to trial on Fridays at 10 am. Compliance with Local Rule 3.35 and personal appearance of trial counsel required on that date.

- Case Management Conferences are held: Monday, Wednesday and Friday at 9 a.m. Tentative orders are generally posted in advance.

- Law and Motion matters are heard: Tues and Thurs at 3:45 p.m. Litigants must contact the clerk to reserve a date before filing any law and motion matters. The

court does issue tentative rulings. See Local Rule 3.30(c). To contest a ruling, call or e-mail Dept. 24 in a timely manner.

- Settlement Conferences are heard: MSC may be set, but court resources are limited. Counsel are encouraged to consider alternative dispute resolution options. MSC will be specially set when deemed appropriate.
- Ex Parte matters are heard: Monday through Thursday at 4 p.m. Litigants must contact the clerk to reserve a date and time before noticing any party.
- Collection trials, prove-up hearings, and orders of examination are set on Fridays at 2 pm.
- In all matters, Counsel are expected to be familiar with the Statement of Professionalism and Civility published by the Alameda County Bar Association (www.acbanet.org).

**Law and Motion Procedures**

To obtain a hearing date for a Law and Motion or ex parte matter, parties must contact the department as follows:

- Motion Reservations
  Email: Dept.24@alameda.courts.ca.gov
  Phone: 510 267-6940

  Requests for Law & Motion or Ex Parte hearing dates must include: (1) Case Name; (2) Case Number; (3) Title of Motion; (4) Moving Party.

- Ex Parte Matters
  Email: Dept.24@alameda.courts.ca.gov
  Phone: 510 267-6940

**Tentative Rulings**

The court may issue tentative rulings in accordance with the Local Rules. Tentative rulings will become the Court's order unless contested in accordance with the Local Rules. Tentative rulings will be available at:

- Website: www.alameda.courts.ca.gov/domainweb, Calendar Information for Dept. 24
- Phone: 1-866-223-2244

Dated: 01/27/2016

facsimile

Presiding Judge,
Superior Court of California, County of Alameda

**CLERK'S CERTIFICATE OF MAILING**

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice by placing copies in envelopes addressed as shown on the attached Notice of Initial Case Management Conference and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 01/28/2016

By Michelle Bank
Digital

Deputy Clerk

KAUFMAN DOLOWICH & VOLUCK, LLP
LOUIS H. CASTORIA (SBN 95768)
MARCUS DONG (SBN 251723)
425 California Street, Suite 2100
San Francisco, California 94104
Telephone: (415) 926-7600
Facsimile: (415) 926-7601

Attorneys for Defendant
SCOTTSDALE INSURANCE COMPANY

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| SUNRISE SPECIALTY COMPANY, INC., | Case No.: RG16801461 |
| Plaintiff, | Action Filed: January 25, 2016 |
| v. | **DEFENDANT SCOTTSDALE INSURANCE COMPANY'S ANSWER TO COMPLAINT** |
| SCOTTSDALE INSURANCE COMPANY | **JURY TRIAL DEMANDED** |
| Defendant. | |

Defendant Scottsdale Insurance Company ("Defendant"), for itself and no other Defendant, hereby answers the unverified Complaint for damages of Plaintiff Sunrise Specialty Company, Inc.:

1. Pursuant to the provisions of Section 431.30(d) of the Code of Civil Procedure, Defendant generally and specifically denies each and every allegation of the Complaint, and each and every part thereof, and further specifically denies that Plaintiff has been injured or damaged in the manner or in the amount alleged, or in any other manner or amount, as a result of any act or omission on the part of Defendant.

2. Defendant denies that Plaintiff was damaged in the manner or in the amounts alleged, or in any other manner or amount whatsoever, by reason of any act, omission, fault, conduct, or liability on the part of Defendant, whether alleged or otherwise.

///

FIRST AFFIRMATIVE DEFENSE

**(Failure to State a Cause of Action)**

1. Defendant alleges as a separate and distinct affirmative defense that the Complaint, and each purported cause of action therein alleged, fails to state facts sufficient to constitute any cause of action against Defendant.

**SECOND AFFIRMATIVE DEFENSE**

**(Insured v. Insured Exclusion)**

2. Defendant alleges that Plaintiff's claims are barred insofar as the lawsuit captioned *Timothy Lenz, et al. v. Robert Weinstein, et al.*, No. RG14744088 (Superior Ct., Alameda Cnty., Cal., filed Oct. 10, 2014) (the "Underlying Action") falls within the scope of the "insured v. insured exclusion" set forth in Section C.1.e. of the Scottsdale Policy's D&O Coverage Section, as amended by Endorsement Nos. 12, 13, and 14.

**THIRD AFFIRMATIVE DEFENSE**

**(Prior Knowledge Exclusion)**

3. Defendant alleges that Plaintiff's claims are barred insofar as the Underlying Action falls within the scope of the "prior knowledge exclusion" set forth in Section C.1.l. of the Scottsdale Policy's D&O Coverage Section.

**FOURTH AFFIRMATIVE DEFENSE**

**(Prior and Pending Litigation Exclusion)**

4. Defendant alleges that Plaintiff's claims are barred insofar as the Underlying Action falls within the scope of the "prior and pending litigation exclusion" set forth in Section C.1.k. of the Scottsdale Policy's D&O Coverage Section.

**FIFTH AFFIRMATIVE DEFENSE**

**("Claim" Made Prior to the inception of the Policy)**

5. Defendant alleges that Plaintiff's claims are barred in the event that the Underlying Action constitutes a "Claim" as defined in Section B.1. of the Scottsdale Policy's D&O Coverage Section, as amended by Endorsement Nos. 15, 18, and 24, that was made prior to the inception of the Policy.

SIXTH AFFIRMATIVE DEFENSE

(Prior Notice Exclusion)

6. Defendant alleges that Plaintiff's claims are barred insofar as the Underlying Action falls within the scope of the "prior notice exclusion" set forth in Section C.1.b. of the Scottsdale Policy's D&O Coverage Section.

SEVENTH AFFIRMATIVE DEFENSE

(Uninsurable/Uncovered Loss)

7. Defendant alleges that Plaintiff's claims are barred to the extent that they seek coverage for amounts that are not insurable under applicable law (including, but not limited to, disgorgement of ill-gotten gains and sums due under contract), that are barred or limited by public policy, or that do not constitute covered "Loss" as defined in the Policy.

EIGHTH AFFIRMATIVE DEFENSE

(Dishonesty/Personal Profit Exclusion)

8. Defendant alleges that Plaintiff's claims are barred insofar as the Underlying Action falls within the scope of the "dishonesty/personal profit exclusion" set forth in Section C.1.f. of the Scottsdale Policy's D&O Coverage Section.

NINTH AFFIRMATIVE DEFENSE

(Misrepresentation, Concealment)

9. Defendant alleges that the relief sought in the Complaint, and each and every claim and cause of action contained therein, is barred insofar as the Plaintiff made any misrepresentations and/or omitted material facts in the application for the Scottsdale Policy.

TENTH AFFIRMATIVE DEFENSE

(No coverage for Willful Acts)

10. Defendant alleges that coverage is precluded because to the extent insurers are not liable for the willful acts of their insureds under California Insurance Code § 533.

ELEVENTH AFFIRMATIVE DEFENSE

(Failure to Comply With the Scottsdale Policy's Terms and Conditions)

11. Defendant alleges that coverage under the Scottsdale Policy may be barred or limited,

in whole or in part. to the extent that Plaintiff failed to comply fully with the terms and conditions of the Scottsdale Policy or otherwise perform its obligations under the terms, conditions, definitions, exclusions, endorsements, and other provisions of the Scottsdale Policy and by applicable law.

TWELFTH AFFIRMATIVE DEFENSE

**(Laches, Waiver, or Equitable Estoppel)**

12. Defendant alleges that coverage under the Scottsdale Policy for the Underlying Action may be barred by the doctrine of laches, waiver, or equitable estoppel arising from Plaintiff's unreasonable delay in bringing these claims and such delay has caused prejudice to Defendant.

THIRTEENTH AFFIRMATIVE DEFENSE

**(Unclean Hands)**

13. Defendant alleges that coverage under the Scottsdale Policy for the Underlying Action may be barred as a result of Plaintiff's unclean hands.

FOURTEENTH AFFIRMATIVE DEFENSE

**(No Punitive Damages)**

14. The punitive damages sought by Plaintiff are precluded by provisions of the United States Constitution and California Constitution, including but not limited to, the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution and by the excessive fine clause of the Eighth Amendment to the United States Constitution and by Article I, Section 7 and/or Section 17 of the California Constitution.

FIFTEENTH AFFIRMATIVE DEFENSE

**(Performance of Duties)**

15. Plaintiff's causes of action and claims are barred in whole or in part because Defendant fully performed any and all contractual, statutory, and/or other duties Defendant may have owed to Plaintiff under the applicable law.

SIXTEENTH AFFIRMATIVE DEFENSE

**(Good Faith)**

16. Plaintiff's causes of action and claims are barred in whole or in part because Defendant at all times acted in good faith and did not directly or indirectly perform any act that could

constitute a violation of any right of Plaintiff or of any duty owed to Plaintiff.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Attorneys' Fees)**

17. Plaintiff's Complaint fails to state facts sufficient to constitute a claim for recovery of attorneys' fees.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(Reservation of Additional Defenses)**

18. Defendant reserves the right to raise any and all other available defenses as this litigation progresses and as additional facts are discovered.

**DEMAND FOR JURY TRIAL**

Defendant hereby demands a jury trial to the extent permitted by law.

**WHEREFORE,** Defendant prays for judgment as follows:

1. That Plaintiff takes nothing by way of his Complaint on file herein;
2. That judgment be entered in favor of Defendant;
3. That Defendant be awarded its attorneys' fees and costs of suit incurred herein; and
4. For such other and further relief as the Court may deem just and proper.

DATED: March 23, 2016

KAUFMAN DOLOWICH & VOLUCK, LLP

Louis H. Castoria
Marcus Dong
Attorneys for Defendant SCOTTSDALE INSURANCE COMPANY

4829-7558-1487, v. 1

PROOF OF SERVICE

*Sunrise Specialty Company, Inc. v. Scottsdale Insurance Company*

California Superior Court, County of Alameda, Action No. RG16801461

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to this action. My business address is 425 California Street, Suite 2100, San Francisco, California, 94104. On the execution date below and in the manner stated herein, I served the following documents:

**DEFENDANT SCOTTSDALE INSURANCE COMPANY'S ANSWER TO COMPLAINT**

on all interested parties in this action by placing [ ] the original or [X] a true copy of the original thereof enclosed in sealed envelopes addressed as follows:

Alan L. Martini, Esq.
SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN
1033 Willow Street
San Jose, CA 95125
Telephone.: (408) 288-9700
Facsimile: (408) 295-9900
E-mail: amartini@smtlaw.com

***Plaintiff's Attorney***

[X] BY MAIL I deposited such envelope(s) with postage thereon fully prepaid in the United States mail at a facility regularly maintained by the United States Postal Service at San Francisco, California. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under the practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing, pursuant to this affidavit.

[ ] WITH CERTIFICATE OF MAILING A certificate of mailing was obtained from the United States Post Office evidencing the mailing referenced above.

[ ] BY FED EX I caused such envelope(s) to be placed for FedEx collection and delivery at San Francisco, California. I am readily familiar with the firm's practice of collection and processing correspondence for FedEx mailing. Under that practice it would be deposited with the FedEx office on that same day with instructions for overnight delivery, fully prepaid, at San Francisco, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the FedEx delivery date is more than one day after date of deposit with the local FedEx office, pursuant to this affidavit.

[ ] BY FACSIMILE I caused the transmission of the foregoing document by facsimile to the offices of the addressee(s), and such transmission was reported as complete and without error.

[ ] BY PERSONAL SERVICE I caused such envelope(s) to be delivered by hand to the offices of the addressee(s) pursuant to CCP § 1011.

[X] (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 24, 2016, at San Francisco, California.

Sandra C. Marrujo

4824-4552-8111, v. 1

# Exhibit B



*14128419*

SHARTSIS FRIESE LLP
JAHAN P. RAISSI (Bar #168599)
ROEY Z. RAHMIL (Bar #273803)
jraissi@sflaw.com
One Maritime Plaza, Eighteenth Floor
San Francisco, CA 94111-3598
Telephone: (415) 421-6500
Facsimile: (415) 421-2922
jraissi@sflaw.com

Attorney for PLAINTIFFS TIMOTHY LENZ, MALCOLM SMITH, and MICHAEL BRADY, individuals

FILED
ALAMEDA COUNTY
JAN 07 2016
CLERK OF THE SUPERIOR COURT
By
Deputy

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| TIMOTHY LENZ, MALCOLM SMITH, and MICHAEL BRADY, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT WEINSTEIN, an individual, SUNRISE SPECIALTY CO., a California corporation, and DOES 1-20,<br><br>Defendants. | Case No. RG 14744033<br><br>**NOTICE OF MOTION AND MOTION TO ENFORCE STIPULATED SETTLEMENT [CAL. CODE CIV. PROC. § 664.6]**<br><br>Date: February 5, 2016<br>Time: 10:00 a.m.<br>Dept.: 21 [Assigned For All Purposes]<br>Judge: Hon. Winifred Y. Smith<br><br>Motion Reservation No. R-1700957<br><br>Complaint Filed: October 10, 2014<br>Trial Date: None |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 5, 2016, at 10:00 a.m., in Department 21 of the above noted Court, 1221 Oak Street, Oakland, CA 94612, Plaintiffs will and hereby does move for an Order enforcing the parties stipulated Settlement Agreement pursuant to California Code pf Civil Procedure § 664.6. Specifically, an Order requiring: (1) that any escrow instructions for the sale of Defendant Sunrise Specialty Co.'s real property include an instruction to pay $1.75 million to Plaintiffs out of the escrow, and (2) appointing a receiver to sell the real property of Sunrise Specialty Co., as provided by the terms of the parties Settlement Agreement.

This motion will be and is based upon this Notice, the accompanying Memorandum of

BY FAX

Points and Authorities, Declaration of Michael Brady, the Proposed Order, the Court's file, upon any matter the Court takes judicial notice of, and upon any further evidence submitted at the time of the hearing, as the Court permits.

Dated: January 7, 2016

SHARTSIS FRIESE LLP

By: JAHAN P. RAISSI

Attorney for PLAINTIFFS TIMOTHY LENZ, MALCOLM SMITH, and MICHAEL BRADY, individuals

09207\002\7674492.v1

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

*14128423*

SHARTSIS FRIESE LLP
JAHAN P. RAISSI (Bar #168599)
ROEY Z. RAHMIL (Bar #273803)
jraissi@sflaw.com
One Maritime Plaza, Eighteenth Floor
San Francisco, CA 94111-3598
Telephone: (415) 421-6500
Facsimile: (415) 421-2922
jraissi@sflaw.com

Attorney for PLAINTIFFS TIMOTHY LENZ, MALCOLM SMITH, and MICHAEL BRADY, individuals

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

TIMOTHY LENZ, MALCOLM SMITH, and MICHAEL BRADY, individuals,

Plaintiffs,

v.

ROBERT WEINSTEIN, an individual, SUNRISE SPECIALTY CO., a California corporation, and DOES 1-20,

Defendants.

Case No. RG 14744033

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO ENFORCE STIPULATED SETTLEMENT**

Date: February 5, 2016
Time: 10:00 a.m.
Dept.: 21 [Assigned For All Purposes]
Judge: Hon. Winifred Y. Smith

Motion Reservation No. R-1700957

Complaint Filed: October 10, 2014
Trial Date: None

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

Plaintiffs' Motion To Enforce Stipulated Settlement came on for hearing on February 5, 2016, at 10:00 a.m., the Honorable Winifred Y. Smith presiding. The Court, having read the papers filed, the pleadings in the case and the argument of counsel, and finding good cause, hereby GRANTS Plaintiffs' motion as follows:

1. Defendant Sunrise Specialty Co. is Ordered to include in any escrow instructions for the sale of any Sunrise real property now pending or entered into before the appointment of the receiver, the payment of $1.75 million out of the escrow to Plaintiffs as required by the Settlement Agreement entered into by the parties;

2. It is Ordered that a receiver be appointed to sell the real property of Defendant Sunrise Specialty Co. as set forth in the Settlement Agreement entered into by the parties.

JAN 07 2016
Received              

Within 10 days of entry of this order, Plaintiffs shall file and serve documents: (1) identifying the proposed receiver and the proposed receiver's qualifications, (2) the compensation the receiver is to receive, and (3) the form of an Order appointing the proposed receiver and setting forth the receiver's powers and duties. Any Opposition to Plaintiffs' submission by and Defendant shall be filed and served within 5 days of service of Plaintiff's submission. Any reply from Plaintiffs shall be filed and served within 2 days of service of any Defendant's Opposition. The Court shall thereafter hold a hearing on _______________, 2016, if and Defendant has filed a timely Opposition, or, if no Opposition is filed, issue an order appointing the receiver and setting forth the receiver's powers and duties.

IT IS SO ORDERED.

Dated: ____________________

______________________________
Hon. Winifred Y. Smith

09207\002\7674491.v1

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

*14128424*

SHARTSIS FRIESE LLP
JAHAN P. RAISSI (Bar #168599)
ROEY Z. RAHMIL (Bar #273803)
jraissi@sflaw.com
One Maritime Plaza, Eighteenth Floor
San Francisco, CA 94111-3598
Telephone: (415) 421-6500
Facsimile: (415) 421-2922
jraissi@sflaw.com

Attorney for PLAINTIFFS TIMOTHY LENZ, MALCOLM SMITH, and MICHAEL BRADY, individuals

FILED
ALAMEDA COUNTY
JAN 07 2016
CLERK OF THE SUPERIOR COURT
By ______ Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

TIMOTHY LENZ, MALCOLM SMITH, and MICHAEL BRADY, individuals,

Plaintiffs,

v.

ROBERT WEINSTEIN, an individual, SUNRISE SPECIALTY CO., a California corporation, and DOES 1-20,

Defendants.

Case No. RG 14744033

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO ENFORCE STIPULATED SETTLEMENT [CAL. CODE CIV. PROC. § 664.6]**

Date: February 5, 2016
Time: 10:00 a.m.
Dept.: 21 **[Assigned For All Purposes]**
Judge: Hon. Winifred Y. Smith

Motion Reservation No. **R-1700957**

Complaint Filed: October 10, 2014
Trial Date: None

Plaintiffs Timothy Lenz, Malcolm Smith and Michael Brady ("Plaintiffs") request that the Court enter an Order pursuant to California Code of Civil Procedure section 664.6 to enforce the settlement agreement in this case.

## I. BACKGROUND

### A. The Action

Since the mid-1970's, Sunrise Specialty Co. ("Sunrise") has been in the business of assembling and selling newly manufactured Victorian styled plumbing fixtures. Plaintiffs are

BY FAX

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

long time shareholders of Sunrise and were each members of Sunrise's board until late 2013. Defendant Weinstein has been and currently is the CEO and Chairman of Sunrise. Over the course of the last six years, Mr. Weinstein has taken a profitable multi-million dollar company and destroyed a vast amount of shareholder value. Plaintiff's brought an action on October 10, 2014, alleging Mr. Weinstein, due to his severe and chronic drug addiction, breached his fiduciary duties to Plaintiffs in numerous ways. *See* Complaint, and Declaration of Michael Brady, filed concurrently, ("Brady Decl."), ¶ 2.

**B. The Settlement**

On July 8, 2015, the parties mediated this matter before Judge Steven A. Brick of the Alameda County Superior Court. Brady Decl. ¶ 3. The mediation was successful and resulted in a Settlement Agreement ("Agreement"), typed by Judge Brick and signed by all parties. Brady Decl. ¶ 3, Exh. 1 (copy of the Settlement Agreement). The Agreement required Defendant Sunrise to purchase Plaintiffs' shares of the company for a total of $1.75 million. Settlement Agreement, ¶2. Sunrise was to raise the money for the payment to the Plaintiffs by selling real estate. *Id.* The Agreement expressly required that language concerning payment for the purchase of Plaintiffs' shares be included in the escrow instructions of the property sale. *Id.*, ¶4. The Agreement further provided that if the real estate transaction failed to close within 180 days after the agreement, the Court will appoint a receiver with the power to sell the real estate. *Id.*, ¶3. The parties specifically agreed that the Court would retain jurisdiction over this matter to enforce the Settlement Agreement pursuant to Cal. Code Civ. Proc. § 664.6. *Id.*, ¶9.

**C. Current Status**

On or about October 16, 2015, Sunrise entered into a tentative agreement to sell certain of its real estate ("October 16 Sale"). Brady Decl., ¶5. The escrow instructions for the sale of the Sunrise property did not include the payment of the $1.75 million (or any amount) to Plaintiffs as required by the Settlement Agreement. *Id.* However, sometime in November 2015 the buyer backed out of the October 16 Sale. *Id.*, ¶6. Sunrise is currently in discussions with one or possibly two buyers of the property. *Id.*, ¶8.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

D. Weinstein Attempts to Repudiate the Settlement Agreement

On November 20, 2015, Defendant Robert Weinstein told Plaintiff Michael Brady that he (on behalf of Sunrise) did not intend to abide by the Settlement Agreement and wished to renegotiate a new agreement. On November 30, 2015, Defendant Weinstein sent an email to the three Plaintiffs stating that he wanted to vacate the Settlement Agreement and renegotiate the agreement. Plaintiffs have no desire or intention to vacate or renegotiate the Settlement Agreement.

## II. ARGUMENT

The Court should enforce the Settlement Agreement according to its terms by entering an Order pursuant to section 664.4 of the Civil Procedure Code. That section provides,

> If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.

Code Civ. Proc. § 664.6.

All requirements of section 664.6 are present here. The parties were engaged in pending litigation when they stipulated to settle this action. The parties executed the typewritten agreement in the presence of Judge Brick. Brady Decl., Exh. 1. The parties specifically provided that the Court retained jurisdiction to enforce the Settlement Agreement pursuant to section 664.6. The proposed order enforces two specific terms of the Settlement Agreement. First, if Sunrise on its own enters into any transaction to sell the property prior to the hearing in this matter, then the proposed Order requires that the escrow instructions for the closing of that transaction include the payment of $1.75 million to Plaintiffs as required by the Settlement Agreement. *See*, Settlement Agreement, ¶4. Second, if no sale has been entered into, then the proposed Order requires the appointment of a receiver to sell the property pursuant to the terms of the Settlement Agreement. *Id.*, ¶3.

Aside from being what the parties agreed to and permissible under section 664.6, the Order is proper here since there is a real danger that without it Defendants will sell the property

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

and waste the assets without paying Plaintiffs the amount they are owed under the Settlement Agreement. First, Defendant Weinstein has already stated that he does not intend to abide by the Settlement Agreement. Second, he demonstrated that he does not intend to abide by the Settlement Agreement by failing to include the payment to Plaintiffs in the escrow instructions for the contemplated October 16 Sale. Finally, Defendant Weinstein has previously wasted the proceeds of a sale of Sunrise's property with no distribution to shareholders or proper accounting of the proceeds of the sale. Brady Decl., ¶11. Without the Court's intervention to enforce the Settlement Agreement, there is therefore a very real possibility that there will be no assets from which to satisfy the Settlement Agreement.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs request the Court grant this motion and enter an Order enforcing the Settlement Agreement.

Respectfully Submitted,

Dated: January 7, 2016

SHARTSIS FRIESE LLP

JAHAN P. RAISSI

Attorneys for Plaintiffs TIMOTHY LENZ, MALCOLM SMITH, and MICHAEL BRADY, individuals

09207\002\7674512.v1

*14128427*

SHARTSIS FRIESE LLP
JAHAN P. RAISSI (Bar #168599)
ROEY Z. RAHMIL (Bar #273803)
jraissi@sflaw.com
One Maritime Plaza, Eighteenth Floor
San Francisco, CA 94111-3598
Telephone: (415) 421-6500
Facsimile: (415) 421-2922
jraissi@sflaw.com

FILED
ALAMEDA COUNTY
JAN 07 2016
CLERK OF THE SUPERIOR COURT
By [signature] Deputy

Attorney for PLAINTIFFS TIMOTHY LENZ, MALCOLM SMITH, and MICHAEL BRADY, individuals

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

| | |
|---|---|
| TIMOTHY LENZ, MALCOLM SMITH, and MICHAEL BRADY, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT WEINSTEIN, an individual; SUNRISE SPECIALTY CO., a California corporation, and DOES 1-20,<br><br>Defendants. | Case No. RG 14744033<br><br>**DECLARATION OF MICHAEL BRADY IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE STIPULATED SETTLEMENT [CAL. CODE CIV. PROC. §664.6)**<br><br>Date: February 5, 2016<br>Time: 10:00 a.m.<br>Dept.: 21 [Assigned For All Purposes]<br>Judge: Hon. Winifred Y. Smith<br><br>Motion Reservation No. R-1700957<br>Complaint Filed: October 10, 2014<br>Trial Date: None |

I, MICHAEL BRADY, hereby declare as follows:

1. I am one of the Plaintiffs in this action (the "Action"). The matters stated herein are of my own personal knowledge and, if called upon to testify thereto, I could and would do so competently.

2. I and the other two Plaintiffs are minority shareholders of Defendant Sunrise Specialty Co. ("Sunrise"), and former Board members of Sunrise. We brought the Action on October 10, 2014, because Defendant Robert Weinstein, the majority owner, Chairman and CEO

BY FAX

of Sunrise, was in the process of destroying the company. In particular, we alleged that Weinstein is breaching his fiduciary duties to us by, among other things: (1) placing his own financial interests and drug addiction before the interests of Sunrise's minority shareholders, (2) paying himself an inflated salary, (3) failing to appear at Sunrise for work, (4) taking loans from Sunrise, (5) selling valuable real property to continue paying himself an inflated salary, (6) making financial decisions to benefit himself and with no business purpose, (7) making erratic employment and other decisions, (8) replacing Sunrise's independent Board of Directors with persons beholden to him, (9) taking action without proper shareholder or Board approval, (10) ignoring customers and suppliers, and (11) failing to provide the required access to a shareholder inspection demand. *See*, Complaint, ¶¶10-23.

3. On July 8, 2015, the parties mediated this matter before Judge Steven A. Brick of the Alameda County Superior Court. The mediation was successful and the parties reached a settlement agreement at the mediation. A Settlement Agreement was typed by Judge Brick and signed by the parties. A true and correct copy of the Settlement Agreement is attached as Exhibit 1.

4. The Settlement Agreement required Defendant Sunrise Specialty to purchase Plaintiffs' Sunrise shares for a total of $1.75 million. Settlement Agreement, ¶1. Sunrise was to raise the money for the payment to the Plaintiffs by selling real estate it owned. *Id.*, ¶2. The escrow instructions for the sale of Sunrise's real estate is to state that Plaintiffs will be paid the $1.75 million from escrow upon the closing of the real estate transaction. *Id.*, ¶4. If the real estate transaction did not close within 180 days after the Settlement Agreement, then the Court is to appoint a receiver with the power to sell the real estate. *Id.*, ¶3.

5. On or about October 16, 2015, Sunrise entered into a tentative agreement to sell certain of its real estate ("October 16 Sale"). The escrow instructions for the sale of the Sunrise property did not include the payment of the $1.75 million (or any amount) to Plaintiffs as required by the Settlement Agreement.

6. Sometime in November 2015 the buyer backed out of the October 16 Sale.

7. The time for Sunrise to have entered into a firm commitment to sell the real estate

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

(90 days from the Settlement Agreement) and to have closed a real estate transaction (180 days from the Settlement Agreement) have passed. *See*, Settlement Agreement, ¶3.

8. It is my understanding that Sunrise is currently in discussions with one or possibly two potential buyers of some or all of its real estate.

9. On November 20, 2015, Defendant Robert Weinstein told me that he did not intend to abide by the Settlement Agreement and wished to renegotiate a new agreement. On November 30, 2015, Defendant Weinstein sent an email to me and the other two Plaintiffs stating that he wanted to vacate the Settlement Agreement and renegotiate the agreement. I and the other two Plaintiffs have no desire or intention to vacate or renegotiate the Settlement Agreement.

10. It is my understanding that the conduct that was alleged in the Complaint to have been destroying Sunrise Specialty, and the breaches of fiduciary duty, are continuing and ongoing. In November, 2015, I learned that earlier in 2015 an Application for Emergency Psychiatric Detention was issued for Defendant Robert Weinstein, and that report stated that he was a danger to himself and a drug addict.

11. I believe that if Defendant Weinstein gains control of the proceeds of the sale of the Sunrise property, I and the other Plaintiffs will not receive any of the amounts due to us under the Settlement Agreement. In 2013 Defendant Weinstein sold a portion of Sunrise's property against the wishes of the other shareholders. The $775,000 of proceeds from that sale was never distributed to shareholders or accounted for properly. Since he has tried to vacate the Settlement Agreement and he has before improperly wasted the proceeds of a sale of Sunrise's property, I believe that the same thing will happen now if the terms of the Settlement Agreement are not followed.

//

//

//

//

//

//

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed this 5th day of January, 2016, at Oakland, California.

Michael Brady

09207\002\7673293.v1

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 4 -

Case No. RG14744033

DECLARATION OF MICHAEL BRADY ISO MOTION TO ENFORCE STIPULATED SETTLEMENT

*14128428*

SHARTSIS FRIESE LLP
JAHAN P. RAISSI (Bar #168599)
ROEY Z. RAHMIL (Bar #273803)
jraissi@sflaw.com
One Maritime Plaza, Eighteenth Floor
San Francisco, CA 94111-3598
Telephone: (415) 421-6500
Facsimile: (415) 421-2922
jraissi@sflaw.com

Attorney for PLAINTIFFS TIMOTHY LENZ, MALCOLM SMITH, and MICHAEL BRADY, individuals

FILED
ALAMEDA COUNTY
JAN 07 2016
CLERK OF THE SUPERIOR COURT
By [signature] Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| TIMOTHY LENZ, MALCOLM SMITH, and MICHAEL BRADY, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT WEINSTEIN, an individual, SUNRISE SPECIALTY CO., a California corporation, and DOES 1-20,<br><br>Defendants. | Case No. RG 14744033<br><br>**PROOF OF SERVICE**<br><br>Date: February 5, 2016<br>Time: 10:00 a.m.<br>Dept.: 21 [Assigned For All Purposes]<br>Judge: Hon. Winifred Y. Smith<br><br>Motion Reservation No. R-1700957<br><br>Complaint Filed: October 10, 2014<br>Trial Date: None |

BY FAX

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

**PROOF OF SERVICE**

I, Virginia A. Kiley, declare:

I am a citizen of the United States and employed in the City and County of San Francisco, California by Shartsis Friese LLP at One Maritime Plaza, Eighteenth Floor, San Francisco, California 94111. I am over the age of eighteen years and am not a party to the within-entitled action.

On January 7, 2016 at Shartsis Friese LLP located at the above-referenced address, and, pursuant to California Rules of Court, Federal Rules of Civil Procedure, Civil Code of Procedure, and local rules, I served on the interested parties in said cause a copy of the within document(s):

**NOTICE OF MOTION AND MOTION TO ENFORCE STIPULATED SETTLEMENT [CAL. CODE CIV. PROC. § 664.6]**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO ENFORCE STIPULATED SETTLEMENT [CAL. CODE CIV. PROC. § 664.6]**

**DECLARATION OF MICHAEL BRADY IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE STIPULATED SETTLEMENT [CAL. CODE CIV. PROC. § 664.6]**

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO ENFORCE STIPULATED SETTLEMENT**

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid in accordance with the firm's practice, of which I am familiar, of collection and processing correspondence for mailing on the same day to the person(s) at the address(es) set forth below:

☑ by consigning the document(s) listed above to an express delivery service for guaranteed delivery on the next business day to the person(s) at the address(es) set forth below:

☐ by personal delivery by messenger service of the document(s) above to the person(s) at the address(es) set forth below:

☐ by facsimile transmission on this date before 5:00 p.m. (PST) of the document(s) listed above from sending facsimile machine main telephone number (415) 421-2922, and which transmission was reported as complete and without error (copy of which is attached), to facsimile number(s) set forth below: (☐ by agreement / ☐ not by agreement)

☑ by electronically delivering the document(s) listed above on this date from electronic address sflaw.com, and after which transmission I did not receive within a reasonable time any electronic message or other indication that the transmission was unsuccessful, to electronic mail address(es) set forth below: (☐ by agreement / ☐ not by agreement)

☐ by E-Service in conjunction with E-Filing the document(s) listed above through an e-filing vendor approved by this Court. The name of the vendor and the transaction receipt I.D. are given in the vendor's emailed Notification of Service.

**SERVICE LIST**

Stephen Collins, Esq.
Tingley Law Group, PC
10 Almaden Boulevard, Suite 430
San Jose, CA 95113
Email: *scollins@tingleylawgroup.com*

Attorney for Robert Weinstein

Alan L. Martini, Esq.
Sheuerman, Martini, Tabari, Zenere & Garvin
1003 Willow Street
San Jose, CA 95125
Email: *amartini@smtlaw.com*

Attorney for Sunrise Specialty Co.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 7, 2016, at San Francisco, California.

Virginia A. Kiley

09207\002\7675550.v1

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

# Exhibit C



CURTIS R. TINGLEY (SBN 112322)
STEPHEN D. COLLINS (SBN 277482)
KEVIN W. ISAACSON (SBN 281067)
TINGLEY LAW GROUP, PC
10 Almaden Boulevard, Suite 960
San Jose, California 95113
Telephone: (408) 283-7000
Facsimile: (408) 283-7010

Attorneys for Defendant
ROBERT WEINSTEIN

FILED
ALAMEDA COUNTY
JAN 25 2016
CLERK OF THE SUPERIOR COURT
By [signature] Deputy

SUPERIOR COURT OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| TIMOTHY LENZ; MALCOLM SMITH; and MICHAEL BRADY, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT WEINSTEIN, an individual; SUNRISE SPECIALTY CO., a California corporation; and DOES 1-20,<br><br>Defendants. | CASE NO. RG14744033<br><br>**DEFENDANT'S OPPOSITION TO MOTION TO ENFORCE STIPULATED SETTLEMENT**<br><br>**Date: February 5, 2016**<br>**Time: 10:00 am**<br>**Dept.: 21**<br>**ASSIGNED FOR ALL PURPOSES Honorable Winifred Y. Smith**<br><br>**Motion Reservation No. R-1700957**<br><br>**Complaint Filed: October 10, 2014** |

Defendant Weinstein, despite numerous obstacles, is close to acquiring the financing requisite to successfully pay the $1.75 Million Settlement Amount ("Settlement Amount"), but needs additional time to conclude the difficult negotiations. ("Collins' Declaration"), ¶ 2)

The Settlement Agreement ("Agreement") negotiated between the Parties and all counsel called for "firm commitments within 90 days" and "cash deposited within escrow within 180 days from the date of this agreement". (Collins' Declaration, ¶ 3, Ex. A.) The Agreement called for the Board of Directors of Sunrise to approve the Agreement, which was accomplished at the next meeting of the Sunrise Board of Directors. (Collins' Declaration, ¶ 3, Ex. B).

Defendants secured a contract for the sale of real property owned by Sunrise at

BY FAX

9921 Medford Avenue, Oakland, California (the "Contract"). (Collins' Declaration, ¶ 4, Ex C). The Contract was signed by the buyer and seller on October 23, 2015, with the Close of Escrow set for between January 4 and January 8, 2016. (Collins' Declaration, ¶ 4, Ex C).

Defendants were then forced to secure new offers for the real property, which Defendants successfully accomplished. At present, Defendants have two open offers to sell its real property sufficient to satisfy the Settlement Amount. Defendants are currently negotiating the terms of those offers in an attempt to conclude a final sales contract. Defendants will include, in any real property sale, escrow instructions that the Settlement Amount shall be paid directly to counsel for the Plaintiffs. Defendants are also securing a loan commitment from the Rubicon Mortgage Fund for the Settlement Amount, in the event that the Defendants are unable to conclude a sale of its real property.

The appointment of a receiver, at this juncture, with the authority to sell Defendants' real property will greatly prejudice the Defendants efforts to obtain a fair market value for its real property and will likely cancel any of the outstanding offers that the Defendants have so tirelessly worked for to obtain.

Defendants need an additional 40 days to complete a sale of real property and/or finalize the loan with the Rubicon Mortgage Fund to pay the Settlement Amount. If, after the 40 days Defendants are unsuccessful in their attempts to fund the Settlement Amount, Defendants will not oppose the appointment of a receiver.

Dated: January 25, 2016

TINGLEY LAW GROUP, PC

By: [signature]
STEPHEN D. COLLINS
Attorneys for Defendant
Robert Weinstein



FILED
ALAMEDA COUNTY
JAN 2 5 2016
CLERK OF THE SUPERIOR COURT
By [signature] Deputy

CURTIS R. TINGLEY (SBN 112322)
STEPHEN D. COLLINS (SBN 277482)
KEVIN W. ISAACSON (SBN 281067)
TINGLEY LAW GROUP, PC
10 Almaden Boulevard, Suite 960
San Jose, California 95113
Telephone: (408) 283-7000
Facsimile: (408) 283-7010

Attorneys for Defendant
ROBERT WEINSTEIN

SUPERIOR COURT OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| TIMOTHY LENZ; MALCOLM SMITH; and MICHAEL BRADY, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT WEINSTEIN, an individual; SUNRISE SPECIALTY CO., a California corporation; and DOES 1-20,<br><br>Defendants. | CASE NO. RG14744033<br><br>**DECLARATION OF STEPHEN D. COLLINS IN SUPPORT OF DEFENDANT'S OPPOSITION TO MOTION TO ENFORCE STIPULATED SETTLEMENT**<br><br>**Date: February 5, 2016**<br>**Time: 10:00 am**<br>**Dept.: 21**<br>**ASSIGNED FOR ALL PURPOSES**<br>**Honorable Winifred Y. Smith**<br><br>**Motion Reservation No. R-1700957**<br><br>**Complaint Filed: October 10, 2014** |

I, Stephen D. Collins, declare:

1. I am an attorney licensed to practice law in all the courts of the State of California, and an attorney with the law firm of Tingley Law Group, PC, counsel of record for Defendant, Robert Weinstein, herein, on whose behalf I make this declaration. If called as a witness, I would competently testify to the following facts, all of which are within my personal knowledge, except those alleged on information and belief, and as to those facts, I believe them to be true. I submit this declaration in support of Defendant's Opposition to Motion to Enforce Stipulated Settlement.

TINGLEY LAW GROUP
ATTORNEYS AT LAW

736C24E8.doc

DECLARATION OF STEPHEN D. COLLINS IN SUPPORT OF DEFENDANT'S OPPOSITION TO MOTION TO ENFORCE STIPULATED SETTLEMENT

BY FAX

2. Defendant Weinstein, despite numerous obstacles, is close to acquiring the financing requisite to successfully pay the $1.75 Million Settlement Amount ("Settlement Amount"), but needs additional time to conclude the difficult negotiations.

3. The Settlement Agreement ("Agreement") negotiated between the Parties and all counsel called for "firm commitments within 90 days" and "cash deposited within escrow within 180 days from the date of this agreement". (Ex. A.) The Agreement called for the Board of Directors of Sunrise to approve the Agreement, which was accomplished at the next meeting of the Sunrise Board of Directors. (Ex. B)

4. Defendants secured a contract for the sale of real property owned by Sunrise at 9921 Medford Avenue, Oakland, California (the "Contract"). (Ex C). The Contract was signed by the buyer and seller on October 23, 2015, with the Close of Escrow set for between January 4 and January 8, 2016. (Ex C).

5. Defendants were then forced to secure new offers for the real property, which Defendants successfully accomplished. At present, Defendants have two open offers to sell its real property sufficient to satisfy the Settlement Amount. Defendants are currently negotiating the terms of those offers in an attempt to conclude a final sales contract. Defendants will include, in any real property sale, escrow instructions that the Settlement Amount shall be paid directly to counsel for the Plaintiffs. Defendants are also securing a loan commitment from the Rubicon Mortgage Fund for the Settlement Amount, in the event that the Defendants are unable to conclude a sale of its real property.

6. The appointment of a receiver, at this juncture, with the authority to sell Defendants' real property will greatly prejudice the Defendants efforts to obtain a fair market value for its real property and will likely cancel any of the outstanding offers that the Defendants have so tirelessly worked for to obtain.

7. Defendants need an additional 40 days to complete a sale of real property and/or finalize the loan with the Rubicon Mortgage Fund to pay the Settlement Amount. If, after the 40 days Defendants are unsuccessful in their attempts to fund the Settlement Amount, Defendants will not oppose the appointment of a receiver.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 25, 2016, at San Jose, California.

Stephen D. Collins

# Exhibit A

LENTZ ET AL., V. WEINSTEIN ET AL., CASE NO. RG14-744033

SETTLEMENT AGREEMENT

1. SUNRISE WILL BUY PLAINTIFFS' SHARES FOR $1.75 MILLION.

2. SUNRISE WILL RAISE THE MONEY TO BUY PLAINTIFFS' SHARES BY SELLING SOME OR ALL OF ITS REAL ESTATE OR THROUGH OTHER SOURCES. 90 DAYS FROM THE DATE OF THIS AGREEMENT SUNRISE MUST HAVE SUFFICIENT FIRM COMMITMENTS SO THAT SUNRISE CAN AND WILL PAY PLAINTIFFS $1.75 MILLION. SUNRISE SHALL CLOSE ESCROW WITHIN AN ADDITIONAL 90 DAYS FROM THE FIRM COMMITMENTS.

3. IF FIRM COMMITMENTS ARE NOT OBTAINED WITHIN 90 DAYS OR THE SALE DOES NOT CLOSE AND/OR SUFFICIENT CASH IS NOT DEPOSITED IN ESCROW WITHIN 180 DAYS FROM THE DATE OF THIS AGREEMENT THE COURT WILL APPOINT A RECEIVER WITH THE POWER ONLY TO SELL THE REAL ESTATE. THE RECEIVER SHALL OBTAIN A FIRM COMMITMENT WITHIN 90 DAYS OF APPOINTMENT AND SHALL CLOSE THE TRANSACTION WITHIN 180 DAYS OF APPOINTMENT. ANY SALE OF ALL OF THE REAL ESTATE SHALL BE FOR A GROSS AMOUNT OF NOT LESS THAN $ 5 MILLION AND SHALL PROVIDE THAT SUNRISE HAVE A LEASE OF THE PROPERTY FOR NINETY DAYS FROM THE CLOSE OF ESCROW.

4. PAYMENT FOR THE PURCHASE OF THE SHARES WILL BE PART OF THE THE ESCROW INSTRUCTIONS.

5. THE LAWSUIT WILL BE PLACED ON HOLD, EXCEPT THAT SUNRISE WILL PRODUCE THE DOCUMENTS ORDERED TO BE PRODUCED BY THIS FRIDAY.

6. UPON PERFORMANCE OF THE FOREGOING OBLIGATIONS THE LAWSUIT WILL BE DISMISSED WITH PREJUDICE, EACH SIDE TO PAY ITS OWN ATTORNEYS' FEES AND COSTS AND TO RELEASE ALL OPPOSING PARTIES OF ANY AND ALL LIABILITY ARISING FROM THE BUSINESS OF SUNRISE.

7. SUNRISE WILL NOT INCUR ANY FURTHER DEBTS OR ENCUMBRANCES EXCEPT IN THE ORDINARY COURSE OF BUSINESS WITHOUT PLAINTIFFS' CONSENT, WHICH CONSENT WILL NOT BE UNREASONABLY WITHHELD.

8. THE SETTLEMENT AND SHARE PURCHASE IS SUBJECT TO APPROVAL BY SUNRISE'S BOARD WITHIN TEN DAYS. ROBERT WEINSTEIN COMMITS TO IN FAVOR OF THIS SETTLEMENT.

9. THE PARTIES AGREE THAT A MORE FORMAL DOCUMENT WILL BE PREPARED BUT THAT IN THE EVENT NO SUCH DOCUMENT IS SIGNED BY ALL PARTIES, THIS TERM SHEET IS A BINDING, ENFORCEABLE CONTRACT WHICH MAY BE ENFORCED PURSUANT TO CCP SECTION 664.6.

TIMOTHY LENZ

MALCOLM SMITH

MICHAEL BRADY

ROBERT WEINSTEIN

SUNRISE SPECIALTY CO., BY ROBERT WEINSTEIN, PRESIDENT AND CEO

APPROVED AS TO FORM:

JAHAN P. RAISSI, COUNSEL FOR PLAINTIFFS

STEPHEN D. COLLINS, COUNSEL FOR ROBERT WEINSTEIN

ALAN L. MARTINI, COUNSEL FOR SUNRISE SPECIALTY CO.

# Exhibit B

Minutes of Sunrise Specialty Company Board of Directors Meeting

July 29, 2015

1) The meeting began at 4pm with directors Weinstein, Weinstein, Ward, Lee attending in person and AK attending via telephone.
2) The minutes of the last meeting were approoved unanimously
3) The board discussed the state of the business, with emphasis on the health and actions of Robert Weinstein.
4) The board unaminously approved the settlement agrement made by Weinstein to purchase the shares of the shareholders suing Sunrise and Weinstein for a price of $1,750,000.

Paul K. Ward
secretary

# Exhibit C

DocuSign Envelope ID: 3FE735B8-1D...-AA38-C050F75EA123

# COUNTER OFFER - SELLER

## AIR Commercial Real Estate Association

Dated: October 16, 2015
By and between (Seller): Sunrise Speciality
(Buyer): Menlo Management Capital, LLC
Address of Property: 9921 Medford Avenue, Oakland, CA

(APN 45-5229-10-4

This is a Counter Offer to the "Standard Offer and Agreement for Purchase of Real Estate" dated October 16, 2015, regarding the above-referenced Property and Parties (hereinafter the "Offer"). A full and complete copy of the Offer is attached hereto and incorporated herein by reference.

1. Seller hereby accepts the Offer provided the Buyer agrees to the following changes in the Offer:

(Please check the appropriate box or boxes)

- ☐ Initialed pen and ink changes have been made to the Offer.
- ☐ Seller shall be deemed to have initialed paragraph 21 regarding liquidated damages and paragraph 22 regarding arbitration of disputes
- ☐ The changes are detailed in the addendum attached hereto consisting of paragraphs ________ through ________.
- ☑ The changes are set forth below.

A. 1.1 Close of Escrow shall be between January 4, 2016 and January 8, 2016.

B. 9.1(a) Buyer shall have the option within 10 days after receipt of written notice of a loss up to $250,000 to repair, cure, or reduce Purchase Price. Buyer shall be entitled to any insurance proceeds applicable to such loss.

C. ________

D. ________

E. ________

NOTE: PARAGRAPHS IN THE OFFER WHICH REQUIRE INITIALS BY ALL PARTIES, BUT ARE NOT INITIALED BY ALL PARTIES, ARE EXCLUDED FROM THE FINAL AGREEMENT UNLESS SPECIFICALLY REFERENCED FOR INCLUSION IN THIS COUNTER OFFER.

2. REMAINING TERMS: All of the terms and conditions contained in the Offer which have not been specifically modified or deleted by this Counter Offer are hereby approved by Seller.

3. ☐ (Seller's Initials: RHW ) (If checked and initialed) MULTIPLE COUNTER OFFER: Concurrently herewith, Seller is also making a Counter Offer to another prospective buyer on terms which may or may not be the same as in this Counter Offer. Acceptance of this Counter Offer by Buyer shall not, therefore, be binding unless and until it is subsequently re-signed by Seller in paragraph 11 below.

4. RIGHT TO ACCEPT OTHER OFFERS: Seller reserves the right to continue to offer the Property for sale, and to accept any other offer at any time prior to actual receipt by Seller's authorized agent, Will Thomas, Newmark Cornish & Carey, of a copy of this Counter Offer duly accepted and signed by Buyer and, if applicable, the re-signing of this Counter Offer by Seller as provided in paragraph 3. Seller's acceptance of such a prior offer shall revoke this Counter Offer.

5. EXPIRATION: This Counter Offer shall expire and be revoked, without further notice, at 5:00 pm on October 23, 2015, unless it is accepted and signed by Buyer and a fully executed copy is actually received by Seller's agent (as specified in paragraph 4) prior to said time. Upon expiration, Buyer's Deposit, if any, shall be returned. This Counter Offer may be executed in counterparts.

6. TIME: Time is of the essence.

7. BINDING EFFECT: This Counter Offer, when fully executed by both Buyer and Seller, and delivered and received as specified above, shall be a binding contract. NO REPRESENTATION OR RECOMMENDATION IS MADE BY THE AIR COMMERCIAL REAL ESTATE ASSOCIATION OR BY ANY BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS AGREEMENT OR THE

RHW
INITIALS

DS
MR
INITIALS

©1998 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

DocuSign Envelope ID: 3FE735B8-1D7[illegible]9-AA38-C050F75EA123

TRANSACTION TO WHICH IT RELATES. THE PARTIES ARE ADVISED TO SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS AGREEMENT.

NOTE:

1. THIS FORM IS NOT FOR USE IN CONNECTION WITH THE SALE OF RESIDENTIAL PROPERTY.
2. IF EITHER PARTY IS A CORPORATION, IT IS RECOMMENDED THAT THIS AGREEMENT BE SIGNED BY TWO OF ITS CORPORATE OFFICERS.

8. The undersigned Seller agrees to sell the Property on the terms and conditions stated herein.

**BROKER:**
Newmark Cornish & Carey

Attn: Will Thomas
Title:

Address: 5980 Horton Street, Suite 100
Emeryville, CA 94608
Telephone: (510)923-9155
Facsimile: (510)923-6260
Email: wthomas@newmarkccarey.com
Federal ID No.:
Broker/Agent BRE License #: 01745655

**SELLER:**
Sunrise Speciality Company

By: Robert H Weinstein
Date: October 23, 2015
Name Printed: Robert H Weinstein
Title: president

By:
Date:
Name Printed:
Title:

Address:

Telephone: ( )
Facsimile: ( )
Federal ID No.:

9. **ACCEPTANCE:** Buyer accepts the foregoing Counter Offer and agrees to purchase the Property on the terms and conditions specified, and authorizes Brokers to deliver a signed copy to Seller.

**BROKER:**
TOLD Partners Inc.

Attn: Terry Adams
Title: Partner

Address: 5940 Variel Avenue
Woodland Hills, CA 91367
Telephone: (818)466-0223
Facsimile:(818)593-3850
Email: TerryA@TOLD.com
Federal ID No.: 95-4351047
Broker/Agent BRE License #: Terry - 01432125 / TOLD 01132455

**BUYER:**
Menlo Management Capital, LLC

By: Georgina Rodriguez
Date: 10/23/2015
Name Printed: Georgina Rodriguez
Title:

By:
Date:
Name Printed:
Title:

Address:

Telephone: ( )
Facsimile: ( )
Federal ID No.:

10. **ACKNOWLEDGMENT OF RECEIPT:** Seller's agent hereby acknowledges that a copy of the Counter Offer executed by Buyer was received on __________ at ______ am/pm.

By:

11. **MULTIPLE COUNTER OFFER SIGNATURE LINE:** (Applicable only if paragraph 3 is checked and initialed.) By signing below, Seller accepts this Multiple Counter Offer, and creates a binding contract. (Note to Seller: Do NOT sign in this paragraph until after Buyer has accepted the Counter Offer by signing in paragraph 9).

**SELLER:**

By:
Date:
Name Printed:
Title:

**SELLER:**

By:
Date:
Name Printed:
Title:

**NOTICE:** These forms are often modified to meet changing requirements of law and industry needs. Always write or call to make sure you are utilizing the most current form: AIR Commercial Real Estate Association, 500 N Brand Blvd, Suite 900, Glendale, CA 91203. Telephone No. (213) 687-8777. Fax No.: (213) 687-8616.

RHW
INITIALS

GR
INITIALS

©1998 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

DocuSign Envelope ID: BE3BBE31-FBD?-?551-A0B1-6703A1B09705

# STANDARD OFFER, AGREEMENT AND ESCROW INSTRUCTIONS FOR PURCHASE OF REAL ESTATE

*(Non-Residential)*

AIR Commercial Real Estate Association

October 16, 2015
(Date for Reference Purposes)

**1. Buyer.**

1.1 Menlo Management Capital, LLC, ("Buyer") hereby offers to purchase the real property, hereinafter described, from the owner thereof ("Seller") (collectively, the "Parties" or individually, a "Party"), through an escrow ("Escrow") to close ~~30 or~~ 15 days after the waiver or expiration of the Buyer's Contingencies, ("Expected Closing Date") to be held by American Trust Escrow - Charlene Sung ("Escrow Holder") whose address is 2334 Huntington Drive, San Marino, California 91108, Phone No. (626) 291-2232, Facsimile No. (626) 309-1584 upon the terms and conditions set forth in this agreement ("Agreement"). Buyer shall have the right to assign Buyer's rights hereunder, but any such assignment shall not relieve Buyer of Buyer's obligations herein unless Seller expressly releases Buyer.

1.2 The term "Date of Agreement" as used herein shall be the date when by execution and delivery (as defined in paragraph 20.2) of this document or a subsequent counteroffer thereto, Buyer and Seller have reached agreement in writing whereby Seller agrees to sell, and Buyer agrees to purchase, the Property upon terms accepted by both Parties.

**2. Property.**

2.1 The real property ("Property") that is the subject of this offer consists of (insert a brief physical description) an approximate 78,378 square foot industrial building is located in the City of Oakland, County of Alameda, State of California, is commonly known by the street address of 9921 Medford Avenue and is legally described as: to be determined (APN: 45-5229-10-4).

2.2 If the legal description of the Property is not complete or is inaccurate, this Agreement shall not be invalid and the legal description shall be completed or corrected to meet the requirements of American Trust Escrow ("Title Company"), which shall issue the title policy hereinafter described.

2.3 The Property includes, at no additional cost to Buyer, the permanent improvements thereon, including those items which pursuant to applicable law are a part of the property, as well as the following items, if any, owned by Seller and at present located on the Property: electrical distribution systems (power panel, bus ducting, conduits, disconnects, lighting fixtures); telephone distribution systems (lines, jacks and connections only); space heaters; heating, ventilating, air conditioning equipment ("HVAC"); air lines; fire sprinkler systems; security and fire detection systems; carpets; window coverings; wall coverings; and solar panels and system (collectively, the "Improvements").

2.4 The fire sprinkler monitor: ☐ is owned by Seller and included in the Purchase Price, ☐ is leased by Seller, and Buyer will need to negotiate a new lease with the fire monitoring company, ☑ ownership will be determined during Escrow, or ☐ there is no fire sprinkler monitor.

2.5 Except as provided in Paragraph 2.3, the Purchase Price does not include Seller's personal property, furniture and furnishings, and ______ all of which shall be removed by Seller prior to Closing.

**3. Purchase Price.**

3.1 The purchase price ("Purchase Price") to be paid by Buyer to Seller for the Property shall be $6,500,000.00, payable as follows:

(a) Cash down payment, including the Deposit as defined in paragraph 4.3 (or if an all cash transaction, the Purchase Price): $2,400,000.00

*(Strike if not applicable)* (b) Amount of "New Loan" as defined in paragraph 5.1, if any: $4,100,000.00

~~(c) Buyer shall take title to the Property subject to and/or assume the following existing deed(s) of trust ("Existing Deed(s) of Trust") securing the existing promissory note(s) ("Existing Note(s)"):~~

~~(i) An Existing Note ("First Note") with an unpaid principal balance as of the Closing of approximately: $______~~
~~Said First Note is payable at $______ per month, including interest at the rate of ______% per annum until paid (and/or the entire unpaid balance is due on ______).~~

~~*(Strike if not applicable)*~~

~~(ii) An Existing Note ("Second Note") with an unpaid principal balance as of the Closing of approximately: $______~~
~~Said Second Note is payable at $______ per month, including interest at the rate of ______% per annum until paid (and/or the entire unpaid balance is due on ______).~~

~~*(Strike if not applicable)* (d) Buyer shall give Seller a deed of trust ("Purchase Money Deed of Trust") on the property, to secure the promissory note of Buyer to Seller described in paragraph 6 ("Purchase Money Note") in the amount of: $______~~

Total Purchase Price: $6,500,000.00

RHW
INITIALS

DS
YR
INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

DocuSign Envelope ID: 3FE735B8-1D77-4A49-AA36-C050F75EA123

3.2. If Buyer is taking title to the Property subject to, or assuming, an Existing Deed of Trust and such deed of trust permits the beneficiary to demand payment of fees including, but not limited to, points, processing fees, and appraisal fees as a condition to the transfer of the Property, Buyer agrees to pay such fees up to a maximum of 1.5% of the unpaid principal balance of the applicable Existing Note.

4. **Deposits.**

4.1 ☐ Buyer has delivered to Broker a check in the sum of $____________________, payable to Escrow Holder, to be delivered by Broker to Escrow Holder within 2 or ____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder, or ☐ within 2 or ____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder Buyer shall deliver to Escrow Holder a check in the sum of $100,000.00 . If said check is not received by Escrow Holder within said time period then Seller may elect to unilaterally terminate this transaction by giving written notice of such election to Escrow Holder whereupon neither Party shall have any further liability to the other under this Agreement. Should Buyer and Seller not enter into an agreement for purchase and sale, Buyer's check or funds shall, upon request by Buyer, be promptly returned to Buyer.

4.2 Additional deposits:

(a) Within 5 business days after the Date of Agreement, Buyer shall deposit with Escrow Holder the additional sum of $____________________ to be applied to the Purchase Price at the Closing.

(b) Within 5 business days after the contingencies discussed in paragraph 9.1 (a) through (m) are approved or waived, Buyer shall deposit with Escrow Holder the additional sum of $____________________ to be applied to the Purchase Price at the Closing.

(c) If an Additional Deposit is not received by Escrow Holder within the time period provided then Seller may notify Buyer, Escrow Holder, and Brokers, in writing that, unless the Additional Deposit is received by Escrow Holder within 2 business days following said notice, the Escrow shall be deemed terminated without further notice or instructions.

4.3 Escrow Holder shall deposit the funds deposited with it by Buyer pursuant to paragraphs 4.1 and 4.2 (collectively the "Deposit"), in a State or Federally chartered bank in an interest bearing account whose term is appropriate and consistent with the timing requirements of this transaction. The interest therefrom shall accrue to the benefit of Buyer, who hereby acknowledges that there may be penalties or interest forfeitures if the applicable instrument is redeemed prior to its specified maturity. Buyer's Federal Tax Identification Number is ____________________ . NOTE: Such interest bearing account cannot be opened until Buyer's Federal Tax Identification Number is provided.

4.4 Notwithstanding the foregoing, within 5 days after Escrow Holder receives the monies described in paragraph 4.1 above, Escrow Holder shall release $100 of said monies to Seller as and for independent consideration for Seller's' execution of this Agreement and the granting of the contingency period to Buyer as herein provided. Such independent consideration is non-refundable to Buyer but shall be credited to the Purchase Price in the event that the purchase of the Property is completed.

5. **Financing Contingency.** *(Strike if not applicable)*

5.1 This offer is contingent upon Buyer obtaining from an insurance company, financial institution or other lender, a commitment to lend to Buyer a sum equal to at least 60 % of the Purchase Price, on terms reasonably acceptable to Buyer. Such loan ("New Loan") shall be secured by a first deed of trust or mortgage on the Property. If this Agreement provides for Seller to carry back junior financing, then Seller shall have the right to approve the terms of the New Loan. Seller shall have 7 days from receipt of the commitment setting forth the proposed terms of the New Loan to approve or disapprove of such proposed terms. If Seller fails to notify Escrow Holder, in writing, of the disapproval within said 7 days it shall be conclusively presumed that Seller has approved the terms of the New Loan.

5.2 Buyer hereby agrees to diligently pursue obtaining the New Loan. If Buyer shall fail to notify its Broker, Escrow Holder and Seller, in writing within 30 days following the Date of Agreement, that the New Loan has not been obtained, it shall be conclusively presumed that Buyer has either obtained said New Loan or has waived this New Loan contingency.

5.3 If, after due diligence, Buyer shall notify its Broker, Escrow Holder and Seller, in writing, within the time specified in paragraph 5.2 hereof, that Buyer has not obtained said New Loan, this Agreement shall be terminated, and Buyer shall be entitled to the prompt return of the Deposit, plus any interest earned thereon, less only Escrow Holder and Title Company cancellation fees and costs, which Buyer shall pay.

~~6. **Seller Financing.** (Purchase Money Note). *(Strike if not applicable)*~~

~~6.1 If Seller approves Buyer's financials (see paragraph 6.5) the Purchase Money Note shall provide for interest on unpaid principal at the rate of ________ % per annum, with principal and interest paid as follows:~~

~~The Purchase Money Note and Purchase Money Deed of Trust shall be on the current forms commonly used by Escrow Holder, and be junior and subordinate only to the Existing Note(s) and/or the New Loan expressly called for by this Agreement.~~

~~6.2 The Purchase Money Note and/or the Purchase Money Deed of Trust shall contain provisions regarding the following (see also paragraph 10.3 (b)):~~

~~(a) *Prepayment.* Principal may be prepaid in whole or in part at any time without penalty, at the option of the Buyer.~~

~~(b) *Late Charge.* A late charge of 6% shall be payable with respect to any payment of principal, interest, or other charges, not made within 10 days after it is due.~~

~~(c) *Due On Sale.* In the event the Buyer sells or transfers title to the Property or any portion thereof, then the Seller may, at Seller's option, require the entire unpaid balance of said Note to be paid in full.~~

~~6.3 If the Purchase Money Deed of Trust is to be subordinate to other financing, Escrow Holder shall, at Buyer's expense prepare and record on Seller's behalf a request for notice of default and/or sale with regard to each mortgage or deed of trust to which it will be subordinate.~~

~~6.4 WARNING: CALIFORNIA LAW DOES NOT ALLOW DEFICIENCY JUDGEMENTS ON SELLER FINANCING. IF BUYER ULTIMATELY DEFAULTS ON THE LOAN, SELLER'S SOLE REMEDY IS TO FORECLOSE ON THE PROPERTY.~~

~~6.5 Seller's obligation to provide financing is contingent upon Seller's reasonable approval of Buyer's financial condition. Buyer to provide a current financial statement and copies of its Federal tax returns for the last 3 years to Seller within 10 days following the Date of Agreement. Seller has 10 days following receipt of such documentation to satisfy itself with regard to Buyer's financial condition and to notify Escrow Holder as to whether or not Buyer's financial condition is acceptable. If Seller fails to notify Escrow Holder, in writing, of the disapproval of this contingency within said time period, it shall be conclusively presumed that Seller has approved Buyer's financial condition. If Seller is not satisfied with Buyer's financial condition or if Buyer fails to deliver the required documentation then Seller may notify Escrow Holder in writing that Seller Financing will not be available, and Buyer shall have the option, within 10 days of the receipt of such notice, to either terminate this transaction or to purchase the Property without Seller financing. If Buyer fails to notify Escrow Holder within said time period of its election to terminate this transaction then Buyer shall be conclusively presumed to have elected to purchase the Property without Seller financing. If Buyer elects to terminate, Buyer's Deposit shall be refunded less Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation.~~

7. **Real Estate Brokers.**

7.1 The following real estate broker(s) ("Brokers") and brokerage relationships exist in this transaction and are consented to by the Parties (check the applicable boxes):

☑ Newmark Cornish & Carey - Will Thomas represents Seller exclusively ("Seller's Broker");

☑ TOLD Partners Inc. - Terry Adams represents Buyer exclusively ("Buyer's Broker"); or

☐ ____________________ represents both Seller and Buyer ("Dual Agency").

The Parties acknowledge that other than the Brokers listed above, there are no other brokers representing the Parties or due any fees and/or commissions under this Agreement. See paragraph 24 regarding the nature of a real estate agency relationship. Buyer shall use the services of Buyer's Broker exclusively in connection with any and all negotiations and offers with respect to the Property for a period of 1 year from the date inserted for reference purposes at the top of page 1.

7.2 Buyer and Seller each represent and warrant to the other that he/she/it has had no dealings with any person, firm, broker or finder in connection with the negotiation of this Agreement and/or the consummation of the purchase and sale contemplated herein, other than the Brokers named in paragraph 7.1, and no broker or other person, firm or entity, other than said Brokers is/are entitled to any commission or finder's fee in connection with this transaction as the result of any dealings or acts of such Party. Buyer and Seller do each hereby agree to indemnify, defend, protect and hold the other harmless from and against any costs, expenses or liability for compensation, commission or charges which may be claimed by any broker, finder or other similar party, other than said named Brokers by reason of any dealings or act of the indemnifying Party.

8. **Escrow and Closing.**

8.1 Upon acceptance hereof by Seller, this Agreement, including any counteroffers incorporated herein by the Parties, shall constitute not only

RHW
INITIALS

DS
JR
INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

DocuSign Envelope ID: BE3BBE31-FBD[redacted]-A0B1-6703A1B09705

the agreement of purchase and sale between Buyer and Seller, but also instructions to Escrow Holder for the consummation of the Agreement through the Escrow. Escrow Holder shall not prepare any further escrow instructions restating or amending the Agreement unless specifically so instructed by the Parties or a Broker herein. Subject to the reasonable approval of the Parties, Escrow Holder may, however, include its standard general escrow provisions.

8.2 As soon as practical after the receipt of this Agreement and any relevant counteroffers, Escrow Holder shall ascertain the Date of Agreement as defined in paragraphs 1.2 and 20.2 and advise the Parties and Brokers, in writing, of the date ascertained.

8.3 Escrow Holder is hereby authorized and instructed to conduct the Escrow in accordance with this Agreement, applicable law and custom and practice of the community in which Escrow Holder is located, including any reporting requirements of the Internal Revenue Code. In the event of a conflict between the law of the state where the Property is located and the law of the state where the Escrow Holder is located, the law of the state where the Property is located shall prevail.

8.4 Subject to satisfaction of the contingencies herein described, Escrow Holder shall close this escrow (the "Closing") by recording a general warranty deed (a grant deed in California) and the other documents required to be recorded, and by disbursing the funds and documents in accordance with this Agreement.

8.5 Buyer and Seller shall each pay one-half of the Escrow Holder's charges and Seller shall pay the usual recording fees and any required documentary transfer taxes. Seller shall pay the premium for a standard coverage owner's or joint protection policy of title insurance. (See also paragraph 11)

8.6 Escrow Holder shall verify that all of Buyer's contingencies have been satisfied or waived prior to Closing. The matters contained in paragraphs 9.1 subparagraphs (b), (c), (d), (e), (g), (i), (n), and (o), 9.4, 9.5, 12, 13, 14, 16, 18, 20, 21, 22, and 24 are, however, matters of agreement between the Parties only and are not instructions to Escrow Holder.

8.7 If this transaction is terminated for non-satisfaction and non-waiver of a Buyer's Contingency, as defined in paragraph 9.2, then neither of the Parties shall thereafter have any liability to the other under this Agreement, except to the extent of a breach of any affirmative covenant or warranty in this Agreement. In the event of such termination, Buyer shall, subject to the provisions of paragraph 8.10, be promptly refunded all funds deposited by Buyer with Escrow Holder, less only the $100 provided for in paragraph 4.4 and the Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation. If this transaction is terminated as a result of Seller's breach of this Agreement then Seller shall pay the Title Company and Escrow Holder cancellation fees and costs.

8.8 The Closing shall occur on the Expected Closing Date, or as soon thereafter as the Escrow is in condition for Closing; provided, however, that if the Closing does not occur by the Expected Closing Date and said Date is not extended by mutual instructions of the Parties, a Party not then in default under this Agreement may notify the other Party, Escrow Holder, and Brokers, in writing that, unless the Closing occurs within 5 business days following said notice, the Escrow shall be deemed terminated without further notice or instructions.

8.9 Except as otherwise provided herein, the termination of Escrow shall not relieve or release either Party from any obligation to pay Escrow Holder's fees and costs or constitute a waiver, release or discharge of any breach or default that has occurred in the performance of the obligations, agreements, covenants or warranties contained therein.

8.10 If this sale of the Property is not consummated for any reason other than Seller's breach or default, then at Seller's request, and as a condition to any obligation to return Buyer's deposit (see paragraph 21), Buyer shall within 5 days after written request deliver to Seller, at no charge, copies of all surveys, engineering studies, soil reports, maps, master plans, feasibility studies and other similar items prepared by or for Buyer that pertain to the Property. Provided, however, that Buyer shall not be required to deliver any such report if the written contract which Buyer entered into with the consultant who prepared such report specifically forbids the dissemination of the report to others.

**9. Contingencies to Closing.**

9.1 The Closing of this transaction is contingent upon the satisfaction or waiver of the following contingencies. **IF BUYER FAILS TO NOTIFY ESCROW HOLDER, IN WRITING, OF THE DISAPPROVAL OF ANY OF SAID CONTINGENCIES WITHIN THE TIME SPECIFIED THEREIN, IT SHALL BE CONCLUSIVELY PRESUMED THAT BUYER HAS APPROVED SUCH ITEM, MATTER OR DOCUMENT.** Buyer's conditional approval shall constitute disapproval, unless provision is made by the Seller within the time specified therefore by the Buyer in such conditional approval or by this Agreement, whichever is later, for the satisfaction of the condition imposed by the Buyer. Escrow Holder shall promptly provide all Parties with copies of any written disapproval or conditional approval which it receives. With regard to subparagraphs (a) through (m) the pre-printed time periods shall control unless a different number of days is inserted in the spaces provided.

(a) *Disclosure.* Seller shall make to Buyer, through Escrow, all of the applicable disclosures required by law (See AIR Commercial Real Estate Association ("AIR") standard form entitled "Seller's Mandatory Disclosure Statement") and provide Buyer with a completed Property Information Sheet ("Property Information Sheet") concerning the Property, duly executed by or on behalf of Seller in the current form or equivalent to that published by the AIR within 10 or ________ days following the Date of Agreement. Buyer has ~~45~~ ~~40~~ 10 days from the receipt of said disclosures to approve or disapprove the matters disclosed. RHW

(b) *Physical Inspection.* Buyer has ~~10 or~~ 30 days from ~~the receipt of the Property Information Sheet or~~ the Date of Agreement, whichever is later, to satisfy itself with regard to the physical aspects and size of the Property. RHW

(c) *Hazardous Substance Conditions Report.* Buyer has 30 ~~or~~ ________ days from ~~the receipt of the Property Information Sheet or~~ the Date of Agreement, whichever is later, to satisfy itself with regard to the environmental aspects of the Property. Seller recommends that Buyer obtain a Hazardous Substance Conditions Report concerning the Property and relevant adjoining properties. Any such report shall be paid for by Buyer. A "Hazardous Substance" for purposes of this Agreement is defined as any substance whose nature and/or quantity of existence, use, manufacture, disposal or effect, render it subject to Federal, state or local regulation, investigation, remediation or removal as potentially injurious to public health or welfare. A "Hazardous Substance Condition" for purposes of this Agreement is defined as the existence on, under or relevantly adjacent to the Property of a Hazardous Substance that would require remediation and/or removal under applicable Federal, state or local law. RHW

(d) *Soil Inspection.* Buyer has 30 ~~or~~ ________ days from ~~the receipt of the Property Information Sheet or~~ the Date of Agreement, whichever is later, to satisfy itself with regard to the condition of the soils on the Property. Seller recommends that Buyer obtain a soil test report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any soils report that Seller may have within 10 days of the Date of Agreement.

(e) *Governmental Approvals.* Buyer has 30 ~~or~~ ________ days from the Date of Agreement to satisfy itself with regard to approvals and permits from governmental agencies or departments which have or may have jurisdiction over the Property and which Buyer deems necessary or desirable in connection with its intended use of the Property, including, but not limited to, permits and approvals required with respect to zoning, planning, building and safety, fire, police, handicapped and Americans with Disabilities Act requirements, transportation and environmental matters.

(f) *Conditions of Title.* Escrow Holder shall cause a current commitment for title insurance ("Title Commitment") concerning the Property issued by the Title Company, as well as legible copies of all documents referred to in the Title Commitment ("Underlying Documents"), and a scaled and dimensioned plot showing the location of any easements to be delivered to Buyer within 10 ~~or~~ ________ days following the Date of Agreement. Buyer has 10 days from the receipt of the Title Commitment, the Underlying Documents and the plot plan to satisfy itself with regard to the condition of title. The disapproval by Buyer of any monetary encumbrance, which by the terms of this Agreement is not to remain against the Property after the Closing, shall not be considered a failure of this contingency, as Seller shall have the obligation, at Seller's expense, to satisfy and remove such disapproved monetary encumbrance at or before the Closing.

(g) *Survey.* Buyer has 30 ~~or~~ ________ days from the receipt of the Title Commitment and Underlying Documents to satisfy itself with regard to any ALTA title supplement based upon a survey prepared to American Land Title Association ("ALTA") standards for an owner's policy by a licensed surveyor, showing the legal description and boundary lines of the Property, any easements of record, and any improvements, poles, structures and things located within 10 feet of either side of the Property boundary lines. Any such survey shall be prepared at Buyer's direction and expense. If Buyer has obtained a survey and approved the ALTA title supplement, Buyer may elect within the period allowed for Buyer's approval of a survey to have an ALTA extended coverage owner's form of title policy, in which event Buyer shall pay any additional premium attributable thereto.

(h) *Existing Leases and Tenancy Statements.* Seller shall within 10 ~~or~~ ________ days of the Date of Agreement provide both Buyer and Escrow Holder with legible copies of all leases, subleases or rental arrangements (collectively, "Existing Leases") affecting the Property, and with a tenancy statement ("Estoppel Certificate") in the latest form or equivalent to that published by the AIR, executed by Seller and/or each tenant and subtenant of the Property. Seller shall use its best efforts to have each tenant complete and execute an Estoppel Certificate. If any tenant fails or refuses to provide an Estoppel Certificate then Seller shall complete and execute an Estoppel Certificate for that tenancy. Buyer has 10 days from the receipt of said Existing Leases and Estoppel Certificates to satisfy itself with regard to the Existing Leases and any other tenancy issues.

(i) *Owner's Association.* Seller shall within 10 ~~or~~ ________ days of the Date of Agreement provide Buyer with a statement and transfer package from any owner's association servicing the Property. Such transfer package shall at a minimum include: copies of the association's bylaws, articles of incorporation, current budget and financial statement. Buyer has 10 days from the receipt of such documents to satisfy itself with regard to the association.

(j) *Other Agreements.* Seller shall within 10 ~~or~~ ________ days of the Date of Agreement provide Buyer with legible copies of all other agreements ("Other Agreements") known to Seller that will affect the Property after Closing. Buyer has 10 days from the receipt of said Other Agreements to satisfy itself with regard to such Agreements.

RHW
INITIALS

DS
JJR
INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

DocuSign Envelope ID: 3FE735B8-1D77-4A49-AA38-C050F75EA123

DocuSign Envelope ID: BE3BBE31-F[illegible]51-A0B1-B703A1B09705

(k) *Financing*. If paragraph 5 hereof dealing with a financing contingency has not been stricken, the satisfaction or waiver of such New Loan contingency.

(l) *Existing Notes*. If paragraph 3.1(c) has not been stricken, Seller shall within 10 or ______ days of the Date of Agreement provide Buyer with legible copies of the Existing Notes, Existing Deeds of Trust and related agreements (collectively, "Loan Documents") to which the Property will remain subject after the Closing. Escrow Holder shall promptly request from the holders of the Existing Notes a beneficiary statement ("Beneficiary Statement") confirming: (1) the amount of the unpaid principal balance, the current interest rate, and the date to which interest is paid, and (2) the nature and amount of any impounds held by the beneficiary in connection with such loan. Buyer has 10 or ______ days from the receipt of the Loan Documents and Beneficiary Statements to satisfy itself with regard to such financing. Buyer's obligation to close is conditioned upon Buyer being able to purchase the Property without acceleration or change in the terms of any Existing Notes or charges to Buyer except as otherwise provided in this Agreement or approved by Buyer, provided, however, Buyer shall pay the transfer fee referred to in paragraph 3.2 hereof. Likewise if Seller is to carry back a Purchase Money Note then Seller shall within 10 or ______ days of the Date of Agreement provide Buyer with a copy of the proposed Purchase Money Note and Purchase Money Deed of Trust. Buyer has 10 or ______ days from the receipt of such documents to satisfy itself with regard to the form and content thereof.

(m) *Personal Property*. In the event that any personal property is included in the Purchase Price, Buyer has ~~10 or~~ 30 days from the Date of Agreement to satisfy itself with regard to the title condition of such personal property. Seller recommends that Buyer obtain a UCC-1 report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any liens or encumbrances affecting such personal property that it is aware of within 10 or ______ days of the Date of Agreement.

(n) *Destruction, Damage or Loss*. Subsequent to the Date of Agreement and prior to Closing there shall not have occurred a destruction, or damage or loss to, the Property or any portion thereof, from any cause whatsoever, which would cost more than $10,000.00 to repair or cure. If the cost of repair or cure is $10,000.00 or less, Seller shall repair or cure the loss prior to the Closing. ~~Buyer shall have the option, within 45~~ 10 ~~days after receipt of written notice of a loss costing more than $10,000.00 to repair or cure, to either terminate this Agreement or to purchase the Property notwithstanding such loss, but without deduction or offset against the Purchase Price.~~ If the cost to repair or cure is more than $10,000.00, and Buyer does not elect to terminate this Agreement, Buyer shall be entitled to any insurance proceeds applicable to such loss. Unless otherwise notified in writing, Escrow Holder shall assume no such destruction, damage or loss has occurred prior to Closing. RHW

(o) *Material Change*. Buyer shall have ~~45~~ 10 days following receipt of written notice of a Material Change within which to satisfy itself with regard to such change. "Material Change" shall mean a substantial adverse change in the use, occupancy, tenants, title, or condition of the Property that occurs after the date of this offer and prior to the Closing. Unless otherwise notified in writing, Escrow Holder shall assume that no Material Change has occurred prior to the Closing.

(p) *Seller Performance*. The delivery of all documents and the due performance by Seller of each and every undertaking and agreement to be performed by Seller under this Agreement.

(q) *Brokerage Fee*. Payment at the Closing of such brokerage fee as is specified in this Agreement or later written instructions to Escrow Holder executed by Seller and Brokers ("Brokerage Fee"). It is agreed by the Parties and Escrow Holder that Brokers are a third party beneficiary of this Agreement insofar as the Brokerage Fee is concerned, and that no change shall be made with respect to the payment of the Brokerage Fee specified in this Agreement, without the written consent of Brokers.

9.2 All of the contingencies specified in subparagraphs (a) through (m) of paragraph 9.1 are for the benefit of, and may be waived by, Buyer, and may be elsewhere herein referred to as "Buyer's Contingencies."

9.3 If any of Buyer's Contingencies or any other matter subject to Buyer's approval is disapproved as provided for herein in a timely manner ("Disapproved Item"), Seller shall have the right within 10 days following the receipt of notice of Buyer's disapproval to elect to cure such Disapproved Item prior to the Expected Closing Date ("Seller's Election"). Seller's failure to give to Buyer within such period, written notice of Seller's commitment to cure such Disapproved Item on or before the Expected Closing Date shall be conclusively presumed to be Seller's Election not to cure such Disapproved Item. If Seller elects, either by written notice or failure to give written notice, not to cure a Disapproved Item, Buyer shall have the right, within 10 days after Seller's Election to either accept title to the Property subject to such Disapproved Item, or to terminate this Agreement. Buyer's failure to notify Seller in writing of Buyer's election to accept title to the Property subject to the Disapproved Item without deduction or offset shall constitute Buyer's election to terminate this Agreement. The above time periods only apply once for each Disapproved Item. Unless expressly provided otherwise herein, Seller's right to cure shall not apply to the remediation of Hazardous Substance Conditions or to the Financing Contingency. Unless the Parties mutually instruct otherwise, if the time periods for the satisfaction of contingencies or for Seller's and Buyer's elections would expire on a date after the Expected Closing Date, the Expected Closing Date shall be deemed extended for 3 business days following the expiration of: (a) the applicable contingency period(s), (b) the period within which the Seller may elect to cure the Disapproved Item, or (c) if Seller elects not to cure, the period within which Buyer may elect to proceed with this transaction, whichever is later.

9.4 The Parties acknowledge that extensive local, state and Federal legislation establish broad liability upon owners and/or users of real property for the investigation and remediation of Hazardous Substances. The determination of the existence of a Hazardous Substance Condition and the evaluation of the impact of such a condition are highly technical and beyond the expertise of Brokers. The Parties acknowledge that they have been advised by Brokers to consult their own technical and legal experts with respect to the possible presence of Hazardous Substances on the Property or adjoining properties, and Buyer and Seller are not relying upon any investigation by or statement of Brokers with respect thereto. The Parties hereby assume all responsibility for the impact of such Hazardous Substances upon their respective interests herein.

**10. Documents Required at or Before Closing:**

10.1 Five days prior to the Closing date Escrow Holder shall obtain an updated Title Commitment concerning the Property from the Title Company and provide copies thereof to each of the Parties.

10.2 Seller shall deliver to Escrow Holder in time for delivery to Buyer at the Closing:

(a) Grant or general warranty deed, duly executed and in recordable form, conveying fee title to the Property to Buyer.

(b) If applicable, the Beneficiary Statements concerning Existing Note(s).

(c) If applicable, the Existing Leases and Other Agreements together with duly executed assignments thereof by Seller and Buyer. The assignment of Existing Leases shall be on the most recent Assignment and Assumption of Lessor's Interest in Lease form published by the AIR or its equivalent.

(d) If applicable, Estoppel Certificates executed by Seller and/or the tenant(s) of the Property.

(e) An affidavit executed by Seller to the effect that Seller is not a "foreign person" within the meaning of Internal Revenue Code Section 1445 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Internal Revenue Service such sum as is required by applicable Federal law with respect to purchases from foreign sellers.

(f) If the Property is located in California, an affidavit executed by Seller to the effect that Seller is not a "nonresident" within the meaning of California Revenue and Tax Code Section 18662 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Franchise Tax Board such sum as is required by such statute.

(g) If applicable, a bill of sale, duly executed, conveying title to any included personal property to Buyer.

(h) If the Seller is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the sale of the Property.

10.3 Buyer shall deliver to Seller through Escrow:

(a) The cash portion of the Purchase Price and such additional sums as are required of Buyer under this Agreement shall be deposited by Buyer with Escrow Holder, by federal funds wire transfer, or any other method acceptable to Escrow Holder in immediately collectable funds, no later than 2:00 P.M. on the business day prior to the Expected Closing Date provided, however, that Buyer shall not be required to deposit such monies into Escrow if at the time set for the deposit of such monies Seller is in default or has indicated that it will not perform any of its obligations hereunder. Instead, in such circumstances in order to reserve its rights to proceed Buyer need only provide Escrow with evidence establishing that the required monies were available.

(b) If a Purchase Money Note and Purchase Money Deed of Trust are called for by this Agreement, the duly executed originals of those documents, the Purchase Money Deed of Trust being in recordable form, together with evidence of fire insurance on the improvements in the amount of the full replacement cost naming Seller as a mortgage loss payee, and a real estate tax service contract (at Buyer's expense), assuring Seller of notice of the status of payment of real property taxes during the life of the Purchase Money Note.

(c) The Assignment and Assumption of Lessor's Interest in Lease form specified in paragraph 10.2(c) above, duly executed by Buyer.

(d) Assumptions duly executed by Buyer of the obligations of Seller that accrue after Closing under any Other Agreements.

(e) If applicable, a written assumption duly executed by Buyer of the loan documents with respect to Existing Notes.

(f) If the Buyer is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the purchase of the Property.

RHW
INITIALS

INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

DocuSign Envelope ID: 3FE735B6-1D77-4A49-AA38-C050F75EA123

DocuSign Envelope ID: BE3BBE31-FB0[illegible]51-A0B1-6703A1B09705

10.4 At Closing, Escrow Holder shall cause to be issued to Buyer a standard coverage (or ALTA extended, if elected pursuant to 9.1(g)) owner's form policy of title insurance effective as of the Closing, issued by the Title Company in the full amount of the Purchase Price, insuring title to the Property vested in Buyer, subject only to the exceptions approved by Buyer. In the event there is a Purchase Money Deed of Trust in this transaction, the policy of title insurance shall be a joint protection policy insuring both Buyer and Seller.

**IMPORTANT: IN A PURCHASE OR EXCHANGE OF REAL PROPERTY, IT MAY BE ADVISABLE TO OBTAIN TITLE INSURANCE IN CONNECTION WITH THE CLOSE OF ESCROW SINCE THERE MAY BE PRIOR RECORDED LIENS AND ENCUMBRANCES WHICH AFFECT YOUR INTEREST IN THE PROPERTY BEING ACQUIRED. A NEW POLICY OF TITLE INSURANCE SHOULD BE OBTAINED IN ORDER TO ENSURE YOUR INTEREST IN THE PROPERTY THAT YOU ARE ACQUIRING.**

**11. Prorations and Adjustments.**

11.1 *Taxes.* Applicable real property taxes and special assessment bonds shall be prorated through Escrow as of the date of the Closing, based upon the latest tax bill available. The Parties agree to prorate as of the Closing any taxes assessed against the Property by supplemental bill levied by reason of events occurring prior to the Closing. Payment of the prorated amount shall be made promptly in cash upon receipt of a copy of any supplemental bill.

11.2 *Insurance.* WARNING: Any insurance which Seller may have maintained will terminate on the Closing. Buyer is advised to obtain appropriate insurance to cover the Property.

11.3 *Rentals, Interest and Expenses.* Scheduled rentals, interest on Existing Notes, utilities, and operating expenses shall be prorated as of the date of Closing. The Parties agree to promptly adjust between themselves outside of Escrow any rents received after the Closing.

11.4 *Security Deposit.* Security Deposits held by Seller shall be given to Buyer as a credit to the cash required of Buyer at the Closing.

11.5 *Post Closing Matters.* Any item to be prorated that is not determined or determinable at the Closing shall be promptly adjusted by the Parties by appropriate cash payment outside of the Escrow when the amount due is determined.

11.6 *Variations in Existing Note Balances.* In the event that Buyer is purchasing the Property subject to an Existing Deed of Trust(s), and in the event that a Beneficiary Statement as to the applicable Existing Note(s) discloses that the unpaid principal balance of such Existing Note(s) at the closing will be more or less than the amount set forth in paragraph 3.1(c) hereof ("Existing Note Variation"), then the Purchase Money Note(s) shall be reduced or increased by an amount equal to such Existing Note Variation. If there is to be no Purchase Money Note, the cash required at the Closing per paragraph 3.1(a) shall be reduced or increased by the amount of such Existing Note Variation.

11.7 *Variations in New Loan Balance.* In the event Buyer is obtaining a New Loan and the amount ultimately obtained exceeds the amount set forth in paragraph 5.1, then the amount of the Purchase Money Note, if any, shall be reduced by the amount of such excess.

11.8 *Owner's Association Fees.* Escrow Holder shall: (i) bring Seller's account with the association current and pay any delinquencies or transfer fees from Seller's proceeds, and (ii) pay any up front fees required by the association from Buyer's funds.

**12. Representations and Warranties of Seller and Disclaimers.**

12.1 Seller's warranties and representations shall survive the Closing and delivery of the deed for a period of 3 years, and any lawsuit or action based upon them must be commenced within such time period. Seller's warranties and representations are true, material and relied upon by Buyer and Brokers in all respects. Seller hereby makes the following warranties and representations to Buyer and Brokers:

(a) *Authority of Seller.* Seller is the owner of the Property and/or has the full right, power and authority to sell, convey and transfer the Property to Buyer as provided herein, and to perform Seller's obligations hereunder.

(b) *Maintenance During Escrow and Equipment Condition At Closing.* Except as otherwise provided in paragraph 9.1(n) hereof, Seller shall maintain the Property until the Closing in its present condition, ordinary wear and tear excepted.

(c) *Hazardous Substances/Storage Tanks.* Seller has no knowledge, except as otherwise disclosed to Buyer in writing, of the existence or prior existence on the Property of any Hazardous Substance, nor of the existence or prior existence of any above or below ground storage tank.

(d) *Compliance.* Seller has no knowledge of any aspect or condition of the Property which violates applicable laws, rules, regulations, codes or covenants, conditions or restrictions, or of improvements or alterations made to the Property without a permit where one was required, or of any unfulfilled order or directive of any applicable governmental agency or casualty insurance company requiring any investigation, remediation, repair, maintenance or improvement be performed on the Property.

(e) *Changes in Agreements.* Prior to the Closing, Seller will not violate or modify any Existing Lease or Other Agreement, or create any new leases or other agreements affecting the Property, without Buyer's written approval, which approval will not be unreasonably withheld.

(f) *Possessory Rights.* Seller has no knowledge that anyone will, at the Closing, have any right to possession of the Property, except as disclosed by this Agreement or otherwise in writing to Buyer.

(g) *Mechanics' Liens.* There are no unsatisfied mechanics' or materialmens' lien rights concerning the Property.

(h) *Actions, Suits or Proceedings.* Seller has no knowledge of any actions, suits or proceedings pending or threatened before any commission, board, bureau, agency, arbitrator, court or tribunal that would affect the Property or the right to occupy or utilize same.

(i) *Notice of Changes.* Seller will promptly notify Buyer and Brokers in writing of any Material Change (see paragraph 9.1(o)) affecting the Property that becomes known to Seller prior to the Closing.

(j) *No Tenant Bankruptcy Proceedings.* Seller has no notice or knowledge that any tenant of the Property is the subject of a bankruptcy or insolvency proceeding.

(k) *No Seller Bankruptcy Proceedings.* Seller is not the subject of a bankruptcy, insolvency or probate proceeding.

(l) *Personal Property.* Seller has no knowledge that anyone will, at the Closing, have any right to possession of any personal property included in the Purchase Price nor knowledge of any liens or encumbrances affecting such personal property, except as disclosed by this Agreement or otherwise in writing to Buyer.

12.2 Buyer hereby acknowledges that, except as otherwise stated in this Agreement, Buyer is purchasing the Property in its existing condition and will, by the time called for herein, make or have waived all inspections of the Property Buyer believes are necessary to protect its own interest in, and its contemplated use of, the Property. The Parties acknowledge that, except as otherwise stated in this Agreement, no representations, inducements, promises, agreements, assurances, oral or written, concerning the Property, or any aspect of the occupational safety and health laws, Hazardous Substance laws, or any other act, ordinance or law, have been made by either Party or Brokers, or relied upon by either Party hereto.

12.3 In the event that Buyer learns that a Seller representation or warranty might be untrue prior to the Closing, and Buyer elects to purchase the Property anyway then, and in that event, Buyer waives any right that it may have to bring an action or proceeding against Seller or Brokers regarding said representation or warranty.

12.4 Any environmental reports, soils reports, surveys, and other similar documents which were prepared by third party consultants and provided to Buyer by Seller or Seller's representatives, have been delivered as an accommodation to Buyer and without any representation or warranty as to the sufficiency, accuracy, completeness, and/or validity of said documents, all of which Buyer relies on at its own risk. Seller believes said documents to be accurate, but Buyer is advised to retain appropriate consultants to review said documents and investigate the Property.

**13. Possession.**

Possession of the Property shall be given to Buyer at the Closing subject to the rights of tenants under Existing Leases.

**14. Buyer's Entry.**

At any time during the Escrow period, Buyer, and its agents and representatives, shall have the right at reasonable times and subject to rights of tenants, to enter upon the Property for the purpose of making inspections and tests specified in this Agreement. No destructive testing shall be conducted, however, without Seller's prior approval which shall not be unreasonably withheld. Following any such entry or work, unless otherwise directed in writing by Seller, Buyer shall return the Property to the condition it was in prior to such entry or work, including the recompaction or removal of any disrupted soil or material as Seller may reasonably direct. All such inspections and tests and any other work conducted or materials furnished with respect to the Property by or for Buyer shall be paid for by Buyer as and when due and Buyer shall indemnify, defend, protect and hold harmless Seller and the Property of and from any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), damages, including those for injury to person or property, arising out of or relating to any such work or materials or the acts or omissions of Buyer, its agents or employees in connection therewith.

**15. Further Documents and Assurances.**

The Parties shall each, diligently and in good faith, undertake all actions and procedures reasonably required to place the Escrow in condition for Closing as and when required by this Agreement. The Parties agree to provide all further information, and to execute and deliver all further documents, reasonably required by Escrow Holder or the Title Company.

**16. Attorneys' Fees.**

If any Party or Broker brings an action or proceeding (including arbitration) involving the Property whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees. Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment. The term "Prevailing Party" shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred.

______ INITIALS

DS MR INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

DocuSign Envelope ID: 3FE73586-1D77-4A49-AA38-C050F75EA123

DocuSign Envelope ID: BE3BBE31-F8[illegible]51-A0B1-6703A1B09705

**17. Prior Agreements/Amendments.**

17.1 This Agreement supersedes any and all prior agreements between Seller and Buyer regarding the Property.

17.2 Amendments to this Agreement are effective only if made in writing and executed by Buyer and Seller.

**18. Broker's Rights.**

18.1 If this sale is not consummated due to the default of either the Buyer or Seller, the defaulting Party shall be liable to and shall pay to Brokers the Brokerage Fee that Brokers would have received had the sale been consummated. If Buyer is the defaulting party, payment of said Brokerage Fee is in addition to any obligation with respect to liquidated or other damages.

18.2 Upon the Closing, Brokers are authorized to publicize the facts of this transaction.

**19. Notices.**

19.1 Whenever any Party, Escrow Holder or Brokers herein shall desire to give or serve any notice, demand, request, approval, disapproval or other communication, each such communication shall be in writing and shall be delivered personally, by messenger, or by mail, postage prepaid, to the address set forth in this agreement or by facsimile transmission, electronic signature, digital signature, or email.

19.2 Service of any such communication shall be deemed made on the date of actual receipt if personally delivered, or transmitted by facsimile transmission, electronic signature, digital signature, or email. Any such communication sent by regular mail shall be deemed given 48 hours after the same is mailed. Communications sent by United States Express Mail or overnight courier that guarantee next day delivery shall be deemed delivered 24 hours after delivery of the same to the Postal Service or courier. If such communication is received on a Saturday, Sunday or legal holiday, it shall be deemed received on the next business day.

19.3 Any Party or Broker hereto may from time to time, by notice in writing, designate a different address to which, or a different person or additional persons to whom, all communications are thereafter to be made.

**20. Duration of Offer.**

20.1 If this offer is not accepted by Seller on or before 5:00 P.M. according to the time standard applicable to the city of Oakland on the date of Wednesday, October 21, 2015, it shall be deemed automatically revoked.

20.2 The acceptance of this offer, or of any subsequent counteroffer hereto, that creates an agreement between the Parties as described in paragraph 1.2, shall be deemed made upon delivery to the other Party or either Broker herein of a duly executed writing unconditionally accepting the last outstanding offer or counteroffer.

**21. LIQUIDATED DAMAGES.** (This Liquidated Damages paragraph is applicable only if initialed by both Parties).

THE PARTIES AGREE THAT IT WOULD BE IMPRACTICABLE OR EXTREMELY DIFFICULT TO FIX, PRIOR TO SIGNING THIS AGREEMENT, THE ACTUAL DAMAGES WHICH WOULD BE SUFFERED BY SELLER IF BUYER FAILS TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT. THEREFORE, IF, AFTER THE SATISFACTION OR WAIVER OF ALL CONTINGENCIES PROVIDED FOR THE BUYER'S BENEFIT, BUYER BREACHES THIS AGREEMENT, SELLER SHALL BE ENTITLED TO LIQUIDATED DAMAGES IN THE AMOUNT OF $100,000, the initial deposit. UPON PAYMENT OF SAID SUM TO SELLER, BUYER SHALL BE RELEASED FROM ANY FURTHER LIABILITY TO SELLER, AND ANY ESCROW CANCELLATION FEES AND TITLE COMPANY CHARGES SHALL BE PAID BY SELLER.

DS JBR — *Buyer Initials*    RHW — *Seller Initials*

**22. ARBITRATION OF DISPUTES.** *(This Arbitration of Disputes paragraph is applicable only if initialed by both Parties.)*

22.1 ANY CONTROVERSY AS TO WHETHER SELLER IS ENTITLED TO THE LIQUIDATED DAMAGES AND/OR BUYER IS ENTITLED TO THE RETURN OF DEPOSIT MONEY, SHALL BE DETERMINED BY BINDING ARBITRATION BY, AND UNDER THE COMMERCIAL RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("COMMERCIAL RULES"). ARBITRATION HEARINGS SHALL BE HELD IN THE COUNTY WHERE THE PROPERTY IS LOCATED. ANY SUCH CONTROVERSY SHALL BE ARBITRATED BY 3 ARBITRATORS WHO SHALL BE IMPARTIAL REAL ESTATE BROKERS WITH AT LEAST 5 YEARS OF FULL TIME EXPERIENCE IN BOTH THE AREA WHERE THE PROPERTY IS LOCATED AND THE TYPE OF REAL ESTATE THAT IS THE SUBJECT OF THIS AGREEMENT. THEY SHALL BE APPOINTED UNDER THE COMMERCIAL RULES. THE ARBITRATORS SHALL HEAR AND DETERMINE SAID CONTROVERSY IN ACCORDANCE WITH APPLICABLE LAW, THE INTENTION OF THE PARTIES AS EXPRESSED IN THIS AGREEMENT AND ANY AMENDMENTS THERETO, AND UPON THE EVIDENCE PRODUCED AT AN ARBITRATION HEARING. PRE-ARBITRATION DISCOVERY SHALL BE PERMITTED IN ACCORDANCE WITH THE COMMERCIAL RULES OR STATE LAW APPLICABLE TO ARBITRATION PROCEEDINGS. THE AWARD SHALL BE EXECUTED BY AT LEAST 2 OF THE 3 ARBITRATORS, BE RENDERED WITHIN 30 DAYS AFTER THE CONCLUSION OF THE HEARING, AND MAY INCLUDE ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY PER PARAGRAPH 16 HEREOF. JUDGMENT MAY BE ENTERED ON THE AWARD IN ANY COURT OF COMPETENT JURISDICTION NOTWITHSTANDING THE FAILURE OF A PARTY DULY NOTIFIED OF THE ARBITRATION HEARING TO APPEAR THEREAT.

22.2 BUYER'S RESORT TO OR PARTICIPATION IN SUCH ARBITRATION PROCEEDINGS SHALL NOT BAR SUIT IN A COURT OF COMPETENT JURISDICTION BY THE BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE UNLESS AND UNTIL THE ARBITRATION RESULTS IN AN AWARD TO THE SELLER OF LIQUIDATED DAMAGES, IN WHICH EVENT SUCH AWARD SHALL ACT AS A BAR AGAINST ANY ACTION BY BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE.

22.3 NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.

DS JBR — *Buyer Initials*    RHW — *Seller Initials*

**23. Miscellaneous.**

23.1 **Binding Effect.** This Agreement shall be binding on the Parties without regard to whether or not paragraphs 21 and 22 are initialed by both of the Parties. Paragraphs 21 and 22 are each incorporated into this Agreement only if initialed by both Parties at the time that the Agreement is executed.

23.2 **Applicable Law.** This Agreement shall be governed by, and paragraph 22.3 is amended to refer to, the laws of the state in which the Property is located. Any litigation or arbitration between the Parties hereto concerning this Agreement shall be initiated in the county in which the Property is located.

23.3 **Time of Essence.** Time is of the essence of this Agreement.

23.4 **Counterparts.** This Agreement may be executed by Buyer and Seller in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Escrow Holder, after verifying that the counterparts are identical except for the

DocuSign Envelope ID: 3FE735B8-1D77-4A49-AA38-C050F75EA123

DocuSign Envelope ID: BE3BBE31-FB... ...551-A0B1-6703A1B09705

signatures, is authorized and instructed to combine the signed signature pages on one of the counterparts, which shall then constitute the Agreement.

23.5 Walver of Jury Trial. THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING INVOLVING THE PROPERTY OR ARISING OUT OF THIS AGREEMENT.

23.6 Conflict. Any conflict between the printed provisions of this Agreement and the typewritten or handwritten provisions shall be controlled by the typewritten or handwritten provisions. Seller and Buyer must initial any and all handwritten provisions.

23.7 1031 Exchange. Both Seller and Buyer agree to cooperate with each other in the event that either or both wish to participate in a 1031 exchange. Any party initiating an exchange shall bear all costs of such exchange. The cooperating Party shall not have any liability (special or otherwise) for damages to the exchanging Party in the event that the sale is delayed and/or that the sale otherwise fails to qualify as a 1031 exchange.

23.8 Days. Unless otherwise specifically indicated to the contrary, the word "days" as used in this Agreement shall mean and refer to calendar days.

24. Disclosures Regarding The Nature of a Real Estate Agency Relationship.

24.1 The Parties and Brokers agree that their relationship(s) shall be governed by the principles set forth in the applicable sections of the California Civil Code, as summarized in paragraph 24.2.

24.2 When entering into a discussion with a real estate agent regarding a real estate transaction, a Buyer or Seller should from the outset understand what type of agency relationship or representation it has with the agent or agents in the transaction. Buyer and Seller acknowledge being advised by the Brokers in this transaction, as follows:

(a) *Seller's Agent*. A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or subagent has the following affirmative obligations: (1) *To the Seller*: A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Seller. (2) *To the Buyer and the Seller*: a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(b) *Buyer's Agent*. A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations. (1) *To the Buyer*: A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Buyer. (2) *To the Buyer and the Seller*: a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(c) *Agent Representing Both Seller and Buyer*. A real estate agent, either acting directly or through one or more associate licenses, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer. (1) In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer: a. A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either Seller or the Buyer. b. Other duties to the Seller and the Buyer as stated above in their respective sections (a) or (b) of this paragraph 24.2. (2) In representing both Seller and Buyer, the agent may not without the express permission of the respective Party, disclose to the other Party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered. (3) The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. Buyer and Seller should carefully read all agreements to assure that they adequately express their understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

(d) *Further Disclosures*. Throughout this transaction Buyer and Seller may receive more than one disclosure, depending upon the number of agents assisting in the transaction. Buyer and Seller should each read its contents each time it is presented, considering the relationship between them and the real estate agent in this transaction and that disclosure. Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer representation agreement or separate document. Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties that may be of interest to this Buyer. Brokers have no responsibility with respect to any default or breach hereof by either Party. The Parties agree that no lawsuit or other legal proceeding involving any breach of duty, error or omission relating to this transaction may be brought against Broker more than one year after the Date of Agreement and that the liability (including court costs and attorneys' fees), of any Broker with respect to any breach of duty, error or omission relating to this Agreement shall not exceed the fee received by such Broker pursuant to this Agreement; provided, however, that the foregoing limitation on each Broker's liability shall not be applicable to any gross negligence or willful misconduct of such Broker.

24.3 *Confidential Information*: Buyer and Seller agree to identify to Brokers as "Confidential" any communication or information given Brokers that is considered by such Party to be confidential.

25. Construction of Agreement. In construing this Agreement, all headings and titles are for the convenience of the Parties only and shall not be considered a part of this Agreement. Whenever required by the context, the singular shall include the plural and vice versa. This Agreement shall not be construed as if prepared by one of the Parties, but rather according to its fair meaning as a whole, as if both Parties had prepared it.

26 Additional Provisions:

Additional provisions of this offer, if any, are as follows or are attached hereto by an addendum consisting of paragraphs 26.a through 27 .

(If there are no additional provisions write "NONE".)

☐ a energy disclosure addendum is attached;

26.a Attorney Review: Seller and Buyer hereby acknowledge and agree that this contract has been prepared by Broker and is hereby submitted to Seller and Buyer by Broker for review by independent attorney for the respective parties.

Broker makes no representation as to the legal sufficiency, tax consequences, ADA compliance, environmental condition or suitability of the Premises for the purposes of Buyer's use.

Furthermore, Seller and Buyer hereby acknowledge and agree that they have been strongly advised by Broker to obtain legal advice, financial advice and other professional advice as required with regard to this contract and are not relying upon any representation(s) as such may have been made by Broker as reason(s) for executing this contract.

27. Upon close of escrow, Buyer shall lease approximately 25,000 square feet of warehouse space to Sunrise Specialty for a term of twenty-four (24) months at $0.45/SF, with an option to extend for thirty (30) months at $0.55/SF. Lease to commence thirty (30) days after close of escrow. See attached site plan for lease premises.

ATTENTION: NO REPRESENTATION OR RECOMMENDATION IS MADE BY THE AIR COMMERCIAL REAL ESTATE ASSOCIATION OR BY ANY BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS AGREEMENT OR THE TRANSACTION TO WHICH IT RELATES. THE PARTIES ARE URGED TO:

1. SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS AGREEMENT.
2. RETAIN APPROPRIATE CONSULTANTS TO REVIEW AND INVESTIGATE THE CONDITION OF THE PROPERTY. SAID INVESTIGATION SHOULD INCLUDE BUT NOT BE LIMITED TO: THE POSSIBLE PRESENCE OF HAZARDOUS SUBSTANCES, THE ZONING OF THE PROPERTY, THE INTEGRITY AND CONDITION OF ANY STRUCTURES AND OPERATING SYSTEMS, AND THE SUITABILITY OF THE

RHW
INITIALS

DS
JR
INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

DocuSign Envelope ID: 3FE735B8-1D77-4A49-AA38-C050F75EA123

DocuSign Envelope ID: BE3BBE31-FB[illegible]4551-A0B1-5703A1B09705

PROPERTY FOR BUYER'S INTENDED USE.

WARNING: IF THE PROPERTY IS LOCATED IN A STATE OTHER THAN CALIFORNIA, CERTAIN PROVISIONS OF THIS AGREEMENT MAY NEED TO BE REVISED TO COMPLY WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED.

NOTE:
1. THIS FORM IS NOT FOR USE IN CONNECTION WITH THE SALE OF RESIDENTIAL PROPERTY.
2. IF EITHER PARTY IS A CORPORATION, IT IS RECOMMENDED THAT THIS AGREEMENT BE SIGNED BY TWO CORPORATE OFFICERS.

The undersigned Buyer offers and agrees to buy the Property on the terms and conditions stated and acknowledges receipt of a copy hereof.

**BROKER:**

TOLD Partners Inc.

Attn: Terry Adams
Title: Partner
Address: 5940 Variel Avenue
Woodland Hills, CA 91367
Telephone: (818) 466-0223
Facsimile: (818) 593-3050
Email: TerryA@TOLD.com
Federal ID No. 95-4351047

Broker/Agent BRE License #: Terry - 01432125 / TOLD - 01132455

**BUYER:**

Menlo Management Capital, LLC

DocuSigned by:
By: Georgina Rodriguez
Date: 10/28/2015
Name Printed: Georgina Rodriguez
Title:
Telephone: ( )
Facsimile: ( )
Email:

By:
Date:
Name Printed:
Title:
Address:

Telephone: ( )
Facsimile: ( )
Email:
Federal ID No.

27. Acceptance.

27.1 Seller accepts the foregoing offer to purchase the Property and hereby agrees to sell the Property to Buyer on the terms and conditions therein specified.

27.2 Seller acknowledges that Brokers have been retained to locate a Buyer and are the procuring cause of the purchase and sale of the Property set forth in this Agreement. In consideration of real estate brokerage service rendered by Brokers, Seller agrees to pay Brokers a real estate Brokerage Fee in a sum equal to 5 % of the Purchase Price to be divided between the Brokers as follows: Seller's Broker 3 % and Buyer's Broker 2 %. This Agreement shall serve as an irrevocable instruction to Escrow Holder to pay such Brokerage Fee to Brokers out of the proceeds accruing to the account of Seller at the Closing.

27.3 Seller acknowledges receipt of a copy hereof and authorizes Brokers to deliver a signed copy to Buyer.

NOTE: A PROPERTY INFORMATION SHEET IS REQUIRED TO BE DELIVERED TO BUYER BY SELLER UNDER THIS AGREEMENT.

**BROKER:**

Newmark Cornish & Carey

Attn: Will Thomas
Title:
Address: 5980 Horton Street, Suite 100
Emeryville, CA 94608
Telephone: (510) 923-9155
Facsimile: (510) 923-6260
Email: wthomas@newmarkccarey.com
Federal ID No.:

Broker/Agent BRE License #: 01745655

**SELLER:**

Sunrise Speciality Company

By: Robert H Weinstein
Date: October 23, 2015
Name Printed: Robert H Weinstein
Title: President
Telephone: ( )
Facsimile: ( )
Email:

By:
Date:
Name Printed:
Title:
Address:

Telephone: ( )
Facsimile: ( )
Email:
Federal ID No.:

NOTICE: These forms are often modified to meet changing requirements of law and industry needs. Always write or call to make sure you are utilizing the most current form: AIR Commercial Real Estate Association, 800 N Brand Blvd, Suite 900, Glendale, CA 91203. Telephone No. (213) 687-8777. Fax No.: (213) 687-8616.

© Copyright 2003 By AIR Commercial Real Estate Association.
All rights reserved.
No part of these works may be reproduced in any form without permission in writing.

RHW
INITIALS

DS
GR
INITIALS

DocuSign Envelope ID: 3FE73596-1D77-4A49-AA38-C050F75EA123



CURTIS R. TINGLEY (SBN 112322)
STEPHEN D. COLLINS (SBN 277482)
KEVIN W. ISAACSON (SBN 281067)
TINGLEY LAW GROUP, PC
10 Almaden Boulevard, Suite 960
San Jose, California 95113
Telephone: (408) 283-7000
Facsimile: (408) 283-7010

Attorneys for Defendant
ROBERT WEINSTEIN

FILED
ALAMEDA COUNTY
JAN 25 2016
CLERK OF THE SUPERIOR COURT
By Cheryl Clark Deputy

SUPERIOR COURT OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| TIMOTHY LENZ; MALCOLM SMITH; and MICHAEL BRADY, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT WEINSTEIN, an individual; SUNRISE SPECIALTY CO., a California corporation; and DOES 1-20,<br><br>Defendants. | CASE NO. RG14744033<br><br>**PROOF OF SERVICE** |

BY FAX

**CASE NAME:** LENZ, et al. v. WEINSTEIN, et al. **CASE NO.: RG14744033**

**PROOF OF SERVICE**

I am a citizen of the United States. My business address is 10 Almaden Boulevard, Suite 960, San Jose, California 95113. I am employed in the County of Santa Clara where this service occurs. I am over the age of 18 years, and not a party to the within cause. I am readily familiar with my employer's normal business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business.

On the date set forth below, following ordinary business practice, I served ***a true copy*** of the foregoing document(s) described as:

1. **DEFENDANT'S OPPOSITION TO MOTION TO ENFORCE STIPULATED SETTLEMENT;**

2. **DECLARATION OF STEPHEN D. COLLINS IN SUPPORT OF DEFENDANT'S OPPOSITION TO MOTION TO ENFORCE STIPULATED SETTLEMENT**

☐ (BY FAX) by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below, or as stated on the attached service list, on this date before 5:00 p.m.

☐ (BY MAIL) I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at San Jose, California.

☐ (BY PERSONAL SERVICE) I caused such document(s) to be delivered by hand this date to the office of the addressee(s).

☒ (BY OVERNIGHT DELIVERY) I caused such envelope(s) to be delivered to an overnight delivery carrier with delivery fees provided for, addressed to the person(s) on whom it is to be served.

Jahan P. Raissi
SHARTSIS FRIESE LLP
One Maritime Plaza, 18th Floor
San Francisco, California 94111-3598
**[Attorneys for Plaintiffs]**
**Facsimile: 415/421-2922**

Alan L. Martini
SHEUERMAN, MARTINI, TABARI, et al.
1033 Willow Street
San Jose, California 95125
**[Attorneys for Sunrise Specialty Co.]**
**Facsimile: 408/295-9900**

☒ *(State)* I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 25, 2016, at San Jose, California.

MONIQUE DAVALOS