UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNRISE SPECIALTY COMPANY, INC., et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>SCOTTSDALE INSURANCE COMPANY,<br><br>　　　　　　Defendant. | Case No. 16-cv-01461-HSG<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 23, 24 |

Pending before the Court are the parties' cross-motions for summary judgment regarding Defendant Scottsdale Insurance Company's duty to defend. Dkt. Nos. 23, 24. Having considered the parties' motions and all related papers, the Court finds the matter appropriate for decision without oral argument. *See* Civil L.R. 7-1(b). For the reasons articulated below, Plaintiffs' motion for partial summary judgment is DENIED, and Defendant's motion for summary judgment is GRANTED.

**I.　BACKGROUND**

　　**A.　The Scottsdale Policy**

On or about May 7, 2014, Plaintiff Sunrise Specialty Co. ("Sunrise") purchased a "Business and Management Indemnity Policy" (the "Policy") from Defendant Scottsdale Insurance Company ("Scottsdale"). Dkt. No. 1-1 ("Compl.") ¶ 6. The Policy, which was in effect from May 7, 2014, until May 7, 2015, provides that:

> 1. The **Insurer** shall pay the **Loss** of the **Directors and Officers** for which the **Directors and Officers** are not indemnified by the **Company** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** . . . and reported to the **Insurer** . . . for any **Wrongful Act** taking place prior to the end of the **Policy**

> **Period**.
>
> 2. The **Insurer** shall pay the **Loss** of the **Company** for which the **Company** has indemnified the **Directors and Officers** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** . . . and reported to the **Insurer** . . . for any **Wrongful Act** taking place prior to the end of the **Policy Period**.
>
> 3. The **Insurer** shall pay the **Loss** of the **Company** for which the **Company** becomes legally obligated to pay by reason of a **Claim** first made against the **Company** during the **Policy Period** . . . and reported to the **Insurer** . . . for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

Dkt. No. 23-1, Ex. A (the "Scottsdale Policy") at 16 (emphasis in original). The Policy further declares that "[i]t shall be the duty of the **Insurer** and not the duty of the **Insureds** to defend any **Claim.** Such duty shall exist even if any of the allegations are groundless, false or fraudulent." *Id.* at 23 (emphasis in original).

The Policy contains an "insured-versus-insured" exclusion, which exempts from coverage any loss resulting from a claim "brought or maintained by, on behalf of, in the right of, or at the direction of any **Insured** in any capacity." *Id.* at 19. There are six exceptions to the "insured-versus-insured" exclusion, the most relevant of which requires Scottsdale to cover a claim if it:

> i.  is brought derivatively by a securities holder of the **Parent Company** and is instigated and continued totally independent of, and totally without the solicitation, assistance, active participation of, or intervention of, any **Insured**.

*Id.* (the "Derivative Claim Exception").

The Policy defines "Insured" as "the Company and the Directors and Officers." *Id.* at 18. The "Company" is defined as "the Parent Company" — Sunrise — and "any subsidiary." *Id.* at 11. "Directors and Officers" means "any person who was, now is, or shall become . . . a duly elected or appointed director, officer, or similar executive of the Company, or any member of the management board of the Company." *Id.* at 18.

### B.   The Underlying Lawsuit

The current insurance coverage dispute arises from *Lenz et. al. v. Weinstein et. al.*, Case No. RG14744022, filed on October 10, 2014, against Plaintiffs Robert Weinstein and Sunrise in

2

Alameda County Superior Court (the "Underlying Action"). Dkt. No. 23-2.[1] The following facts were alleged in the Underlying Action's verified complaint:

Sunrise is a California corporation engaged in the manufacture of antique-styled plumbing fixtures. *Id.* ¶ 6. Weinstein is the Chief Executive Officer and Chairman of Sunrise, and owns approximately 52.24% of Sunrise's common stock. *Id.* ¶ 5. Although Sunrise was a "thriving and profitable business" for years, it is now losing money, failing to pay shareholder dividends, and shedding employees "squarely due to Weinstein's substance abuse problem, breaches of fiduciary duty[,] and gross mismanagement." *Id.* ¶¶ 6, 10. For example, Weinstein has become a recluse, sold Sunrise's valuable real estate without proper board approval or apparent business purpose, failed to pay suppliers, replaced board members with individuals unfit to serve on the board, and refused shareholders their inspection rights. *Id.* ¶¶ 12-23.

Consequently, Timothy Lenz, Malcolm Smith, and Michael Brady (together, the "Underlying Plaintiffs"), each of whom owns a minority share of Sunrise's common stock, brought the Underlying Action for (1) breach of fiduciary duty of a majority shareholder; (2) removal of Weinstein as a director; (3) inspection of accounting books and records; and (4) involuntary dissolution of Sunrise. *Id.* ¶¶ 24-36.

### C. The Instant Action

On October 16, 2014, Plaintiffs tendered the Underlying Action to Scottsdale. Dkt. No. 23-1 ("Walder Decl.") ¶ 4; Walder Decl., Ex. B. On or about October 21, 2014, Michael Walder, the Technical Director responsible for handling and processing claims submitted to Scottsdale, spoke with Weinstein to obtain information about the relationships of the Underlying Plaintiffs to Sunrise. Walder Decl. ¶ 5. Weinstein informed Walder that each of the Underlying Plaintiffs had been a director of Sunrise until November 18, 2013. *Id.*; Walder Decl., Ex. D. On October 23, 2014, Weinstein forwarded several emails to Walder that further confirmed that the Underlying Plaintiffs had served as directors of Sunrise. Walder Decl. ¶ 6.

---

[1] The Court takes judicial notice of the complaint in the Underlying Action under the incorporation by reference doctrine. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

On November 20, 2014, Walder sent a letter to Plaintiffs on behalf of Scottsdale, denying coverage for the Underlying Action under the insured-versus-insured exclusion because each of the Underlying Plaintiffs had previously served as a Sunrise director. Walder Decl., Ex. D; Dkt. No. 25 ("Martini Decl."), Ex. C. Scottsdale's denial letter invited Plaintiffs to submit any additional evidence that might affect Scottsdale's coverage determination. *Id.*

Plaintiffs' counsel responded to Scottsdale on February 18, 2015, asserting that the Derivative Claim Exception to the insured-versus-insured exclusion potentially applied. Walder Decl., Ex. E; Martini Decl., Ex. D. Specifically, Plaintiffs' counsel contended that given the broad duty to defend under California law, Scottsdale had a duty to defend the Underlying Action due to the potential applicability of the Derivative Claim Exception. *Id.*

On August 14, 2015, Scottsdale sent another letter reaffirming its denial of coverage for the Underlying Action. Walder Decl., Ex. F; Martini Decl., Ex. E. Scottsdale explained that the Derivative Claim Exception did not apply because (1) the Underlying Action was not brought derivatively and (2) the Underlying Plaintiffs were former Sunrise directors, and thus the Underlying Action was not instigated and continued totally independent of, and totally without the solicitation, assistance, active participation of, or intervention of any Insured. *Id.* Scottsdale again invited Plaintiffs to submit any additional information that might affect its coverage analysis. *Id.*

On January 25, 2016, Plaintiffs filed the instant action against Scottsdale, asserting claims for (1) breach of the Policy/breach of the duty to defend; and (2) breach of the covenant of good faith and fair dealing. *See* Compl. The parties have stipulated that Plaintiffs' case is limited to the issue of whether Scottsdale had a duty to defend Plaintiffs in the Underlying Action. Dkt. No. 23-5. In other words, Plaintiffs are not seeking damages related to Scottsdale's decision not to indemnify Plaintiffs in connection with the Underlying Action. *Id.*

**II.     DISCUSSION**

In their cross-motions for summary judgment, the parties dispute whether Scottsdale properly refused to defend Plaintiffs in the Underlying Action because there was no potential coverage under the Derivative Claim Exception. Dkt. No. 23 ("Scottsdale MSJ"); Dkt. No. 24 ("Pls. MSJ"). Scottsdale also moves for judgment that, because there was no duty to defend,

Scottsdale could not have breached the covenant of good faith and fair dealing as a matter of law. Scottsdale MSJ at 16.

### A. Legal Standard

#### i. Motion for Summary Judgment

Summary judgment is proper where the pleadings and evidence demonstrate "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323. To satisfy this burden, the moving party must demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322. To survive a motion for summary judgment, the non-moving party must then show that there are genuine factual issues that can only be resolved by the trier of fact. *Reese v. Jefferson Sch. Dist.*, No. 14J, 208 F.3d 736, 738 (9th Cir. 2000). To do so, the non-moving party must present specific facts creating a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997).

The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.* Moreover, the court is not required "to scour the record in search of a genuine issue of triable fact," *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citations omitted), but rather may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*,

237 F.3d 1026, 1030 (9th Cir. 2001).

### ii. Duty to Defend

The Court begins with first principles. California law controls this dispute in diversity. *See Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir. 2001). Under California law, "interpretation of an insurance policy is a question of law that is decided under settled rules of contract interpretation." *State v. Continental Ins. Co.*, 55 Cal. 4th 186, 195 (2012). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1264 (1992). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *AIU Ins. Co. v. Super. Ct.*, 51 Cal. 3d 807, 822 (1990). "If contractual language is clear and explicit, it governs." *Bank of the West*, 2 Cal. 4th at 1264. "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage,' controls judicial interpretation." *Waller v. Track Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995) (quoting Cal. Civ. Code § 1644).

In the context of the duty to defend, "[a]n insurer must defend its insured against claims that create a *potential* for indemnity under the policy." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005) (emphasis in original); *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276-77 (1966). "The duty to defend is broader than the duty to indemnify, and it may apply even in an action where no damages are ultimately awarded." *Scottsdale Ins. Co.*, 36 Cal. 4th at 654. In determining whether a duty to defend exists, courts look not only to the "pleaded word but the potential liability created by the suit." *Gray*, 65 Cal. 2d at 276. This is because "current pleading rules liberally allow amendment," and "the third party plaintiff cannot be the arbiter of coverage." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 296 (1993). However, "[j]ust as a third party complainant is not the arbiter of the coverage of an insurance policy, so is it also the rule that insureds themselves may not manufacture coverage by speculating about unpled third party claims." *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1117 (Cal. Ct. App. 1995); *Travelers Prop. Cas. Co. of Am. v. KFx Med. Corp.*, No. 13-17301, 2016 WL 145996, at *1 (9th Cir. Jan. 8, 2016). "An insured may not trigger the duty to defend by speculating about extraneous

1  'facts' regarding potential liability or ways in which the third party claimant might amend its
2  complaint at some future date." *Gunderson*, 37 Cal. App. 4th at 1114.  Moreover, "[i]f any of the
3  claims in the underlying complaint are covered, the insurer has a duty to defend the entire action."
4  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

5  The insurer bears a heavy burden to show that it does not have a duty to defend.  While the
6  "insured need only show that the underlying claim *may* fall within policy coverage[,] the insurer
7  must prove it *cannot*." *Montrose Chem.*, 6 Cal. 4th at 300.  Insurance coverage is "interpreted
8  broadly so as to afford the greatest possible protection to the insured, whereas exclusionary
9  clauses are interpreted narrowly against the insurer." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th
10  635, 648 (2003), *as modified on denial of reh'g* (Sept. 17, 2003) (internal notations omitted).
11  "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in
12  the insured's favor." *Montrose Chem. Corp.*, 6 Cal. 4th at 300.  An insurer's duty to defend can
13  generally be resolved at the summary judgment stage. *Butler v. Clarendon Am. Ins. Co.*, 494 F.
14  Supp. 2d 1112, 1122 (N.D. Cal. 2007).

### B. Analysis

16  Scottsdale asserts that it is entitled to summary judgment because (1) the insured-versus-
17  insured exclusion unambiguously covers the Underlying Action; (2) the Derivative Claim
18  Exception does not apply because the Underlying Action was not a derivative action and was not
19  brought "totally independent of" or "totally without the solicitation, assistance, active participation
20  of, or intervention of" any "Insured"; and (3) there can be not breach of the covenant of good faith
21  and fair dealing if there was no duty to defend.  Scottsdale MSJ at 10-16.  In their cross-motion for
22  summary judgment, Plaintiffs contend that Scottsdale had a duty to defend under the Derivative
23  Claim Exception because (1) the Underlying Action was properly a derivative action and (2)
24  Scottsdale lacked conclusive evidence at the time of tender that the Underlying Action was not
25  brought "totally without the solicitation, assistance, active participation of, or intervention of" any
26  "Insured."  Pls. MSJ at 11-15.

27  The Court finds that, at the time of tender, there was no potential that the Underlying
28  Action fell under the Derivative Claim Exception.  Accordingly, there was no duty to defend and

no breach of the covenant of good faith and fair dealing.  The Court GRANTS Scottsdale's motion for summary judgment in full.

### i. The Underlying Action Falls Under the Insured-Versus-Insured Exclusion

The Policy's "insured-versus-insured" exclusion exempts from coverage any loss resulting from a claim "brought or maintained by, on behalf of, in the right of, or at the direction of any **Insured** in any capacity."  Scottsdale Policy at 19 (emphasis in original).  The Policy defines "Insured" as "the Company and the Directors and Officers."  *Id.* at 18.  The "Company" is defined as "the Parent Company" — Sunrise — and "any subsidiary."  *Id.* at 11.  Finally, "Directors and Officers" means "any person who was, now is, or shall become . . . a duly elected or appointed director, officer, or similar executive of the Company, or any member of the management board of the Company."  *Id.* at 18.

It is undisputed that the Underlying Plaintiffs each previously served as directors of Scottsdale.  Walder Decl. ¶¶ 5-6; Walder Decl., Ex. D; *see also* Dkt. No. 13 at 11-13.  Thus, the Underlying Plaintiffs were both "Directors and Officers" and "Insureds" under the Policy.  *See* Scottsdale Policy at 11, 18.  Accordingly, the Court finds that the clear and explicit language of the insured-versus-insured exclusion applied to the Underlying Action because it was "brought or maintained by, on behalf of, in the right of, or at the direction of any Insured in any capacity."  *See id.* at 19.  Because the insured-versus-insured exclusion applied to the Underlying Action, Scottsdale had no duty to defend Plaintiffs in the Underlying Action unless an exception to the insured-versus-insured exclusion potentially applied.

### ii. The Derivative Claim Exception Did Not Apply to the Underlying Action

Although the Policy contains six exceptions to the insured-versus-insured exclusion, Plaintiffs limit their argument to the applicability of the Derivative Claim Exception.  *See* Pls. MSJ at 11-15; Dkt. No. 26 ("Pls. Opp'n") at 5-13.  The Derivative Claim Exception requires Scottsdale to cover a claim that:

> i. is brought derivatively by a securities holder of the **Parent Company** and is instigated and continued totally independent of, and totally without the solicitation, assistance, active participation of, or intervention of, any **Insured**.

Scottsdale Policy at 19 (emphasis in original).

At its core, the parties' dispute over whether the Derivative Claim Exception applied to the Underlying Action is an issue of contract interpretation. Scottsdale asserts that the Derivative Claim Exception requires the Underlying Action to be (i) a derivative action; (ii) brought by a non-Insured securities holder; and (iii) prosecuted without receiving the "solicitation, assistance, active participation of, or intervention of any Insured." Dkt. No. 29 at 2-5. Plaintiffs argue that the principles of contract interpretation mandate that the phrase "totally independent of" be qualified by the subsequent phrase "and totally without the solicitation, assistance, active participation of, or intervention of, any Insured." Pls. Opp'n at 12. Accordingly, Plaintiffs argue that the Derivative Claim Exception only has two requirements — that the Underlying Action is (i) a derivative action; and (ii) continued without the "solicitation, assistance, active participation of, or intervention of any Insured." *See id.* at 5-12. The Court finds that even assuming *arguendo* that Plaintiffs' interpretation of the Policy's language is correct, the Underlying Action did not potentially fall under the Derivative Claim Exception. Accordingly, the Court need not address whether the Underlying Action potentially states a derivative claim.

As established above, Plaintiff Weinstein informed Scottsdale at the time of tender that each of the Underlying Plaintiffs had been a director of Sunrise until November 18, 2013. Walder Decl. ¶¶ 5-6; Walder Decl., Ex. D. Consequently, each of the named plaintiffs in the Underlying Action was an Insured under the Policy, so it would be nonsensical to conclude that the Underlying Action was being continued "totally without the solicitation, assistance, active participation of, or intervention of, any Insured." Accordingly, the Court finds that even under Plaintiffs' contract interpretation, there was no potential for the Underlying Action to fall under the Derivative Claim Exception at the time of tender, and Scottsdale thus had no duty to defend.

Plaintiffs vigorously assert that the Underlying Plaintiffs could have been "mere[] nominal parties with no active role or participation" in the Underlying Action despite being the sole named plaintiffs. Pls. Opp'n at 13. However, the only authorities that Plaintiffs cite for this contention are cases that distinguish between "active" and "nominal" participation of attorneys in effecting a settlement. *See* Dkt. No. 28 at 9 (collecting cases). The Court is unpersuaded by these cases

involving an entirely distinct and unrelated context. While one could envision an attorney participating nominally in a settlement agreement actively negotiated by other attorneys, that possibility does not in any way bolster Plaintiffs' argument that a lawsuit can be brought without the "active participation" of each of its individual named plaintiffs.

Accordingly, the Court holds that Scottsdale did not have a duty to defend the Underlying Action because it had conclusive evidence at the time of tender that the Derivative Claim Exception did not apply.

### iii. Scottsdale Did Not Breach the Covenant of Good Faith and Faith Dealing as a Matter of Law

"California law is clear, that without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing." *Manzarek*, 519 F.3d at 1034 (citing *Waller v. Truck Ins. Exch., Inc.,* 11 Cal.4th 1 (1995)). Because the Court found above that Scottsdale did not have a duty to defend Plaintiffs in the Underlying Action, Scottsdale did not breach its contract and could not have breached the covenant of good faith and fair dealing as a matter of law.

## III. CONCLUSION

For the aforementioned reasons, the Court holds that Scottsdale did not have a duty to defend Plaintiffs in the Underlying Action and did not breach the covenant of good faith and fair dealing. As such, the Court GRANTS Scottsdale's motion for summary judgment in its entirety and DENIES Plaintiffs' motion for partial summary judgment.

The clerk is directed to enter judgment in favor of Defendant Scottsdale and close the case. Both parties shall bear their own costs of suit.

**IT IS SO ORDERED.**

Dated: September 26, 2016

HAYWOOD S. GILLIAM, JR.
United States District Judge